## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SHANSHAN SHAO, HONGLIANG    : | |
|   CHU, QIAN LIU, SONG LU,    : | |
|   AND XINSHAN KANG,    : | |
|   Plaintiffs,    : | |
|     : | Civil Action No. 3:14CV01177 (CSH) |
|   v.    : | |
|     : | |
| BETA PHARMA, INC., AND    : | |
|   DON ZHANG,    : | |
|   Defendants.    : | |
|     : | OCTOBER 14, 2014 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISQUALIFY OPPOSING COUNSEL

Pursuant to Rule 7(a)(1) of the Local Rules of this Court, defendants Beta Pharma, Inc. ("Beta Pharma") and Don Zhang ("Zhang") hereby file this Memorandum of Law in support of their Motion to Disqualify Opposing Counsel, filed herewith.  In that Motion, Beta Pharma and Zhang move to disqualify Jonathan Katz, Esq. ("Katz") from representing plaintiffs Shanshan Shao, Hongliang Chu, Qian Lu, Song Lu, and Xinshan Kang ("Plaintiffs"), because Katz has teamed up with Defendants' former lawyer to represent Plaintiffs, creating the opportunity for disclosure of Defendants' confidential and privileged information and its use against Defendants.

## I.   STATEMENT OF THE CASE

This matter presents the question of "whether private counsel in a civil law suit and his firm should be disqualified for his having consulted with an attorney who changed sides . . . [in] the litigation." *Goldenberg v. Corporate Air, Inc.*, 189 Conn. 504, 506 (1983), *overruled in part*

*on other grounds Burger & Burger, Inc. v. Murren*, 202 Conn. 660 (1987).  The Supreme Court of Connecticut already answered that question in the affirmative in *Goldenberg*.[1]

Lance Liu, Esq. ("Liu") previously provided Beta Pharma with comprehensive legal representation, had unfettered access to confidential information, and even counseled Defendants about stock transactions with Plaintiffs.  After terminating the attorney-client relationship with Defendants, Liu switched teams.  He began representing Plaintiffs (and the plaintiff in a separate state-court action against Defendants), consulting with Plaintiffs' lawyer, Katz, and forming a joint representation with Katz to represent Plaintiffs.  Liu formed these relationships in this matter, thereby taking adverse actions directly against his former clients (Defendants).

Federal and Connecticut law dictates that, by forming these relationships with Katz, Liu "infected" Katz.  That is, Liu created an opportunity for disclosure of Defendants' confidential and privileged information to Katz.  As a result of that opportunity for disclosure, federal and Connecticut law require that Katz be disqualified from representing Plaintiffs in this action.  Liu poisoned the well, and this Court can remove Liu's taint only by removing Katz.  This Court should, therefore, disqualify Katz.

## II.     STATEMENT OF FACTS

### A.     <u>Background of Defendants.</u>

Beta Pharma is a drug discovery company focusing on oncological drugs.  (Affidavit of Don Zhang (copy attached as **Exhibit A**) ("Zhang Aff."), at ¶ 4.)  Zhang is Beta Pharma's CEO, President and shareholder.  (*Id.* at ¶ 3.)

---

[1]  As discussed below, this Court has adopted the State of Connecticut's Rules of Professional Conduct as the relevant standard of conduct, and Connecticut state-court caselaw as well as federal caselaw is pertinent to the interpretation of those Rules.

On July 18, 2006, the United States Patent & Trademark Office ("USPTO") issued Patent No. 7,078,409 (the "409 Patent") to Beta Pharma.  (*Id.* at ¶ 5.)  The 409 Patent claims a class of anticancer agents, including Icotinib, a drug that was approved for the treatment of non-small cell lung cancer in the People's Republic of China ("China") in June 2011.  (*Id.* at ¶ 6.)  Beta Pharma contributed the Chinese rights to the corresponding Chinese Patent Application of the 409 Patent to Zhejiang Beta Pharma Co., Ltd. ("ZJBP"), a Chinese company organized under the laws of China.  (*Id.* at ¶ 7.)  In exchange for those patent rights, Beta Pharma received an ownership interest in ZJBP.  ZJBP has announced that it intends to make an initial public offering of its stock in China. (*Id.* at ¶ 8.)

**B.     Liu's Representation of Defendants.**

Liu is an attorney who is licensed to practice law in New Jersey.  (*Id.* at ¶ 9.)  He is not licensed, and has never been licensed, to practice in Connecticut.  Liu represented Beta Pharma from approximately July, 2011, until approximately November, 2012.  (*Id.* at ¶ 10.)

In July, 2011, when Liu formed an attorney-client relationship with Beta Pharma, Liu also entered into a "Mutual Non-Disclosure and Non-Use Agreement" with Beta Pharma, which provides that Liu would not disclose Beta Pharma's Confidential Information.  (*Id.* at ¶ 11; Mutual Non-Disclosure and Non-Use Agreement (copy attached as Exhibit **A-1**).)  Liu never provided Beta Pharma with a written retainer agreement; nor did Liu provide any other documents setting forth the scope of the representation or how he intended to charge for his legal services.  (*Id.* at ¶ 13.)

Liu provided comprehensive legal services to Beta Pharma; these included rendering legal advice regarding intellectual property issues, real estate leases, taxation issues, employment

issues, contract issues and corporate and stock transfer issues.[2]  (*Id.* at ¶ 14.)  Liu had a Beta Pharma email address and billed Beta Pharma in excess of $126,000.00 for legal services provided between July, 2011, and December, 2012,[3] which Beta Pharma paid.  (*Id.* at ¶ 16.)

During the representation, Liu received unfettered access to Beta Pharma's corporate information, including highly confidential and proprietary business information such as research projects, business contracts, investor information, financial information, tax filings and related information, employee information and settlements and proposed stock valuations.  (*Id.* at ¶ 17.) Liu also received confidential and privileged requests for legal advice from Beta Pharma, and rendered confidential and privileged legal advice on intellectual property issues, corporate issues, employment issues, stock sale issues, tax issues, and real estate issues.  (*Id.*)

## C.   Liu Represented Beta Pharma in Connection with ZJBP Stock Transactions.

During the representation, Liu provided Beta Pharma with legal advice and counsel in connection with Beta Pharma's transactions regarding ZJBP stock.   (*Id.* at ¶ 18.)  Specifically, Beta Pharma had entered into transactions to sell ZJBP stock to certain buyers ("Buyers").  (*Id.* at ¶ 19.)  Plaintiffs were among the Buyers.  Without disclosing the specific advice given,[4] Liu advised Beta Pharma on the tax consequences of these transactions, what Beta Pharma should do

---

[2]  The details of much of the work Liu performed for Beta Pharma are confidential and protected from disclosure by the Rules of Professional Conduct, *see* Conn. R. Prof. Conduct 1.6, and by the attorney-client privilege and/or work product doctrines.  The Second Circuit has held that the court need not inquire whether confidential information was in fact used, but rather, where it can reasonably be said that an attorney might have acquired such information, it is the court's duty to disqualify the attorney.  *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975);  *see also Goldenberg*, 189 Conn. at 512 ("[C]ourts will not inquire whether the lawyer has, in fact, used confidential information to the client's detriment because such inquiry would require the revelation of the very information the canon is designed to protect.")

[3]  Liu purported to terminate the attorney-client relationship in November, 2012, but continued to be involved in Beta Pharma's legal matters.  (Zhang Aff. (Exh. A), at ¶ 10.)

[4]  In order to avoid waiving privilege as to these communications, Defendants are not disclosing the contents of the communications, only their broad subject matter.  Should the Court deem it necessary, Defendants are willing to provide documentation of these communications for *in camera* review.

4

about the transactions going forward, and subsequent agreements entered into with Buyers to repurchase ZJBP stock.  (*Id.* at ¶ 19.)

In addition, in September 2012, Liu traveled to China to attend ZJBP board meetings as Beta Pharma's lawyer and representative.   (*Id.* at ¶ 20.)   At those ZJBP board meetings, decisions were made concerning ZJBP's initial public offering and Beta Pharma's right to transfer ZJBP stock to Buyers with whom Beta Pharma had entered or intended to enter into stock purchase agreements.  (*Id.* at ¶ 21.)  Liu voted Zhang's proxy in at least one of these ZJBP board meetings. (*Id.* at ¶ 22.)  Put simply, during and as a part of the representation of Beta Pharma, Liu had confidential attorney-client communications with Beta Pharma about ZJBP stock, transactions with third parties, including Buyers, regarding that stock, tax consequences of those transactions, the valuation of that stock, ZJBP board meetings at which the transactions were discussed, and ZJBP's planned initial public offering. (*Id.* at ¶ 23.)

### D.     Liu Threatens Beta Pharma and Zhang.

During his representation of Beta Pharma, Liu proposed that Beta Pharma enter into a business relationship with him to start a generic drug business.  (*Id.* at ¶ 24.)  Beta Pharma considered Liu's proposals, but ultimately declined them.  (*Id.* at ¶ 25.)  During November, 2012, Liu purported to terminate his attorney-client relationship with Beta Pharma by e-mail, but continued to involve himself in Defendants' legal issues.  (See *id.* at ¶ 10.)

Thereafter, Liu engaged in a campaign to destroy Beta Pharma and Zhang because they refused to enter into a business deal with him.  (See *id.* at ¶¶ 26-28.)  Liu threatened Zhang with criminal prosecution by the United States Attorney's office if Zhang did not, among other things, pay Liu money and give Liu shares of ZJBP stock owned by Beta Pharma.  (*Id.* at ¶ 26.)  Liu

also made written statements to business associates of Beta Pharma accusing Zhang of criminal activity.  (*Id.* at ¶ 27.)

E.   **Liu Switches Sides and Jointly Represents Plaintiffs With Katz in Suing Beta Pharma and Zhang.**

Plaintiffs filed this action in the Superior Court on July 10, 2014, and Beta Pharma and Zhang subsequently removed it to this Court [Doc. 1].  Plaintiffs' allegations go directly to the issues on which Liu advised Beta Pharma.  Plaintiffs allege, among other things, that Beta Pharma and Zhang breached agreements to sell ZJBP stock to them, breached agreements to repurchase the ZJBP stock, undervalued the stock in light of ZJBP's impending public offering, and improperly charged Plaintiffs with tax consequences from the transactions.  (*See, e.g.,* Complaint First Count ¶¶ 9-19, Second Count ¶ 20, Third Count ¶¶ 17-19.)

Counsel of record for Plaintiffs in this case is Katz and the law firm of Jacobs & Dow, P.C.  Although Liu is not admitted to practice law in Connecticut (or this Court *pro hac vice*), and has not entered an appearance as an attorney of record in this action, Defendants learned recently that Liu is jointly representing Plaintiffs in this action with Katz, and is consulting with Katz and Plaintiffs regarding this action. In addition, Defendants learned that Liu is jointly representing Guojian Xie ("Xie"), a former employee of Beta Pharma, with Katz in an action Xie has filed against, *inter alia*, Beta Pharma and Zhang, in Connecticut Superior Court, *Xie v. Beta Pharma, Inc.*, No. NNH-CV-13-6035116 (the "Xie Action").  Liu had also previously provided legal services to Beta Pharma with respect to its employment relationship with Xie.  (See Liu Motion to Quash dated August 20, 2014 (D.E. 155) (copy attached as **Exhibit B**), at p. 9.)

Defendants had previously become suspicious that Liu was sharing confidential and/or privileged information with Plaintiffs and Xie.  (Zhang Aff. (Exh. A), at ¶ 29.)  Accordingly, Defendants served a subpoena (the "Subpoena") on Liu in the Xie Action, seeking to learn,

among other things, what he had disclosed to Plaintiffs, Xie, and Katz.  (See Defendants'
Subpoena to Liu (copy attached as **Exhibit C**).)   On or about August 20, 2014, Liu filed a
Motion to Quash the Subpoena and revealed for the first time that he: (i) has an attorney-client
relationship with Plaintiffs relating to the claims in this action; (ii) with Katz, is jointly
representing Plaintiffs in this action; and (iii) is represented by Katz.  (See Liu Motion to Quash
(Exh. B), at pp. 8–9.)[5]

Based on Liu's asserted joint representation of Plaintiffs against Defendants (his former
clients), Liu sought to quash the Subpoena on grounds of attorney-client privilege and work
product immunity.  (*See id.*)  Specifically, in his Motion to Quash, Liu asserted that certain
documents and information "***relate to Attorney Liu's consultation with a Connecticut attorney,
Jonathan Katz, Esq.*** with whom Attorney Liu consulted as an attorney with respect to his own
potential claims against Beta Pharma and ***in joint representation with respect to the claims
asserted by Attorney Liu's clients***," elsewhere specifically identifying those clients as Plaintiffs
and Xie.  (*Id.* at pp. 8–9, 11 (emphasis added).)   In other words, Liu—Defendants' former
counsel—and Katz consulted about Plaintiffs' claims, each having an attorney-client relationship
with Plaintiffs and in a joint representation together.

Before Defendants issued the Subpoena, neither Liu nor Katz ever disclosed to
Defendants that Liu was working with Katz to jointly represent Plaintiffs in this action.  (Zhang
Aff. (Exh. A), at ¶ 31.)  Further, neither Liu nor Katz ever disclosed to Defendants that Liu was
consulting with Katz and Plaintiffs regarding this action.  (*Id.*)

Neither Liu nor Katz ever requested a conflict waiver, and none of the Defendants have
consented to Liu's joint representation with Katz of Plaintiffs in this action.  (*Id.*)  Nor have

---

[5] Liu also represented to this court that he has an attorney-client relationship with Xie and is in a joint representation
with Katz in that case.  Defendants have filed a motion in the Xie Action to disqualify Katz and his law firm from
that representation.

Defendants consented to Liu's disclosure of confidential information to Plaintiffs or their counsel. (*Id.*) Once again, Liu is representing Plaintiffs jointly with Katz, and is advising Plaintiffs and Katz in a lawsuit adverse to Defendants while in possession of privileged and/or confidential information Liu obtained during his representation of Defendants.

**F.    Katz and Liu Concede that They Have Had Communications Regarding the Actions.**

The relationship between Liu and Katz was further revealed when, on October 1, 2014, Katz sent an e-mail to Connecticut counsel for Defendants in the Xie Action, wherein he stated: "***Lance Liu has nonprivileged, discoverable information material to [Xie's] case in Connecticut.***" (J. Katz email to G. Duhl dated October 1, 2014) (copy attached as **Exhibit D**) (emphasis added).) Thus, Katz himself established that he has communicated with Liu about the subject matter of the Xie Action. (*See* Exh. D.) In addition, Liu has admitted that Katz is representing Liu and that Liu consulted with Katz regarding Plaintiffs' case. (*See* Liu Motion to Quash (Exh. B), at pp. 8–9, 11.) There can be no question but that Liu and Katz have discussed this action.

**G.    The Superior Court of New Jersey has Enjoined Liu From Taking Part or Representing Plaintiffs in this Matter.**

As a result of Liu's conduct, Defendants brought an action[6] in the Superior Court of New Jersey, Law Division, Mercer County, Docket No. MER-L-2040-14, seeking to recover damages. Defendants also sought to enjoin Liu from, *inter alia*, continuing to disclose

---

[6]   This was the second time Liu's misconduct necessitated the filing of a lawsuit. Previously, Defendants had requested that Liu return all client files. Liu refused. Thus, Defendants commenced an Order to Show Cause on June 27, 2014 directing Liu to turn over the client files. Liu then provided *some* (but not all) of his files, yet represented that he had turned over all of his files. Based on that representation, Defendants dismissed that Order to Show Cause on July 30, 2014. Subsequently, Defendants and their counsel confirmed that Liu had withheld documents, as Defendants provided documents to their counsel related to the representation that Liu had not turned over. In particular, Liu withheld communications with Beta Pharma that demonstrate that he had conflicts of interest that precluded him from having an adverse relationship with Defendants. Further, Liu has admitted deleting emails related to his representation of Defendants.

confidential information to Plaintiffs or their counsel (Katz), from representing Plaintiffs in this case, and from communicating with Plaintiffs or their counsel (Katz) regarding this case.  (See Order to Show Cause filing of September 16, 2014 (copy attached as **Exhibit E**).)

On September 26, 2014,[7] ten days after Defendants applied for a temporary restraining order, the Honorable Paul Innes, P.J.Ch., held a hearing and entered an Order to Show Cause with Temporary Restraints (the "Restraining Order") against Liu, enjoining Liu from continuing to represent Plaintiffs.  (See Order to Show Cause entered on September 26, 2014 (copy attached as **Exhibit F**); transcript of September 26, 2014 hearing (copy attached as **Exhibit G**) ("Hr'g Tr.").)  The Restraining Order enjoins Liu from communicating with Plaintiffs or their counsel regarding this case.  (See Exh. F.)

In entering the Restraining Order, Judge Innes found that Liu had represented Beta Pharma, and that Liu subsequently had disclosed its confidential information.  (See Hr'g Tr. (Exh. G), at p. 33 ("Mr. Liu was the attorney for Beta Pharma, Incorporated and Beta Pharma Scientific, Incorporated and now finds himself in an adversarial relationship with those entities and ***there has been a showing to the Court that Mr. Liu has used privileged and confidential information in connection with his representation in other matters and in connection with his controversies with [Defendants]***." [emphasis added]).)

Liu was present at the hearing, and thereat consented to the restraints imposed by the New Jersey Court, barring Liu from communicating with either Katz or Plaintiffs.  (See Hr'g Tr. (Exh. G), at pp. 26–27.)

---

[7]  After Judge Innes scheduled a hearing for September 26, 2014, Liu, without providing prompt notice, removed the New Jersey attorney misconduct case to the United States District Court for the District of New Jersey on September 23, 2014.   U.S. District Court Judge Joel Pisano summarily remanded the matter to the New Jersey state court on September 25, 2014, as there was no diversity jurisdiction on the face of the complaint.

### H.    Katz Invites Liu to Violate the New Jersey Restraining Order.

Defendants served Katz with a copy of the New Jersey Restraining Order on September 26, 2014.  (See J. Orticelli email to J. Katz dated September 26, 2014 (copy attached as **Exhibit H**).)  Despite this, Katz, on October 2, 2014, issued a subpoena to Liu to depose him in the Xie Action.  (See Subpoena to Liu dated October 2, 2014 (copy attached as **Exhibit I**).)

Based on this act in defiance of the New Jersey Restraining Order, and the opportunity for disclosure of Defendants' confidential and privileged information created by Liu's consultation with Katz, Defendants submit this Motion to Disqualify and respectfully move that the Court disqualify Katz from representing Plaintiffs in this matter.

## III.    LEGAL ARGUMENT

"Every client has a right to expect that his lawyer will not disclose his secrets." *Goldenberg*, 189 Conn. at 512.   Here, Liu had access to Defendants' secrets, including information concerning their transactions with Plaintiffs regarding ZJBP stock and related matters and advised Defendants on those matters.  Liu now has switched sides and is assisting Katz in representing Plaintiffs in bringing claims against Defendants related to the ZJBP stock. In such circumstances, the opportunity for disclosure of Defendants' confidential and privileged information is overwhelming.  Disqualification of Katz is required in order to preserve and protect confidential, attorney-client privileged and/or attorney work product confidences, and in accordance with the Rules of Professional Conduct.

### A.    Disqualification of Katz is Required to Preserve Confidences.

Federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court.  *In re Snyder*, 472 U.S. 634, 645 n.6 (1985); *Board of Educ. of the City of N.Y. v. Nyquist*, 590 F.2d 1241 (2d Cir.

1979) (power to disqualify).  The District Court has adopted the Rules of Professional Conduct of the State of Connecticut ("RPC") as the relevant standard of conduct.  L.R. 83.2(a). Connecticut state-court caselaw as well as federal caselaw is pertinent to such issues. *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712, 721 (D. Conn. 1991) (citing *Goldenberg* in favor of disqualifying an attorney).

"Disqualification of counsel is a remedy that serves to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975); *American Heritage Agency, Inc. v. Gelinas*, 62 Conn. App. 711, 725 (2001)  (quotations omitted).  If the asserted course of conduct threatens to affect the integrity of the adversarial process, the court should take appropriate measures, including disqualification, to eliminate such taint.  *MMR/Wallace Power*, 764 F. Supp. at 718.  The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount.  *Hull*, 513 F.2d at 572 (2d Cir. 1975).  Thus, although a party's right to counsel of his or her choice is important, that consideration must yield to considerations of ethics which run to the very integrity of the judicial process.  *Id.*  Accordingly, "any doubt is to be resolved in favor of disqualification."  *Id.* at 571.

### B.   Liu's Joint Representation with Katz Violates Rules of Professional Conduct 1.6 and 1.9.

Under Connecticut Rule of Professional Conduct 1.6, Liu has a duty to maintain Defendants' confidences.  Rule 1.6(a) provides, in relevant part:  "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by subsection (b), (c), or (d)."  RPC 1.6(a).

To make sure confidences are preserved, Rule 1.9(a) specifically prohibits attorneys, such as Liu, from representing parties adverse to former clients, such as Defendants, in the same or a substantially related matter. *See* RPC 1.9(a). Likewise, Rule 1.9(c) prohibits Liu from using confidential information relating to his representation of Defendants against Defendants. The relevant sections of Rule 1.9 provide:

> (a)   A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. . . .

> (c)   A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2)   reveal information relating to the representation except as these Rules would permit or require with respect to a client. . . .

RPC 1.9.

Accordingly, "an attorney should be disqualified if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior representation." *American Heritage*, 62 Conn. App. at 726. Matters are substantially related where the relationship between the issues in the prior and present cases is patently clear or when the issues are identical or essentially the same. *Id.* Once a substantial relationship between the matters is demonstrated, the receipt of confidential information that would potentially disadvantage the former client is presumed, and there is no need to show that confidential information actually changed hands. *Goldenberg*, 189 Conn. at 512.

RPC 1.9 precludes Liu's representation of Plaintiffs here.  Plaintiffs' claims in this action arise from alleged breaches of agreements by Beta Pharma and/or Zhang to sell ZJBP stock to Plaintiffs, and agreements to repurchase that stock from Plaintiffs in advance of ZJBP's initial public offering.  (*See, e.g.,* Complaint, First Count ¶¶ 9-19.)  The Complaint specifically raises issues regarding the tax consequences of those transactions, the proper valuation of the stock, and the proper valuation of the stock in light of ZJBP's impending public offering.  (*See, e.g.*, Complaint Second Count ¶ 20, Third Count ¶¶ 17-19.)

Liu advised Beta Pharma regarding these very issues: what it should do about those transactions, the tax consequences of the transactions, and the valuation of ZJBP stock.  He also represented Beta Pharma and Zhang at ZJBP board meetings at which the Board discussed ZJBP's initial public offering and whether Beta Pharma could transfer ZJBP stock to Buyers. Therefore, he represented Beta Pharma on the same matter as – or one which is substantially related to – the matter at issue in this action and cannot be adverse to Beta Pharma in this action. In addition, he cannot use information relating to his representation of Beta Pharma to Beta Pharma's disadvantage.  RPC 1.9(c)(1).   If Liu were permitted to continue representing Plaintiffs, he would presumptively be using his confidential knowledge of Defendants (his former clients) regarding their dealings with Plaintiffs against Defendants.  This is precisely what the Rules of Professional Conduct prohibit.  Not surprisingly, courts have upheld disqualification in similar circumstances.  *See*, *e.g.*, *Emle Indus., Inc. v. Patenax, Inc.*, 478 F.2d 562 (2d Cir. 1973) (disqualifying counsel for plaintiff who previously represented part owner of defendant on identical issue); *American Heritage*, 62 Conn. App. at 724–27 (disqualifying defense attorney who previously represented plaintiff in related matters).

**C.**     **Katz's Joint Representation of Plaintiffs with Liu, and Katz's Consulting Relationship with Liu, Require Katz's Disqualification.**

Katz's joint representation of Plaintiffs with Liu, and Katz's consulting relationship with Liu, requires Katz's disqualification.  Of course, Liu is not admitted in this Court, and has neither entered an appearance nor filed an application to participate in this case *pro hac vice*.  Instead, Liu is working with Katz, jointly representing Plaintiffs behind the scenes.  Katz cannot avoid disqualification of counsel through this subterfuge.  Liu has confidential, privileged information from Beta Pharma and Zhang relating to this action.  It would completely defeat the purpose of the rules if Katz were permitted to affiliate with Liu and use Liu's confidential knowledge in representing Plaintiffs against Beta Pharma and Zhang.  Moreover, attorneys have an ethical obligation to protect client confidential information and should not participate in assisting another lawyer in the breach of that obligation.  *See* RPC 8.4 (1), (4).  Accordingly, Katz cannot assist Liu in breaching his obligations to Beta Pharma and Zhang.

The Connecticut Supreme Court's decision in *Goldenberg* shows the necessity for disqualification in this case.  In *Goldenberg*, the Court addressed the issue of "whether private counsel in a civil law suit and his firm should be disqualified for his having consulted with an attorney who changed sides during the pendency of the litigation."  189 Conn. at 506.  The case involved an airplane accident; "[m]ultiple suits followed against various defendants [including] [Corporate Air], lessee and operator of the aircraft involved in the accident, and [Avco], manufacturer of the two engines which powered the plane."  *Id.*  There was an adverse interest between Corporate Air and Avco because Avco contend[ed] that the accident resulted from operational or pilot error while Corporate Air contend[ed] that defective equipment manufactured by Avco caused the accident."  *Id.*

Joseph Flaherty worked for Avco's insurer as a staff attorney; Flaherty "represented Avco in regard to its defense of any tort claims arising out of the crash" and "was given total access to all Avco records, documents, tests, correspondence and personnel to assist him in formulating that defense." *Id.* Subsequently, Flaherty left Avco's insurer and began working for an insurance adjusting firm that represented the insurance underwriting company for Corporate Air. *Id.* at 507. William Moller, the attorney for Corporate Air, consulted with Flaherty about the accident. *Id.*

Upon motion by Avco, the trial court disqualified Moller and his office from representing Corporate Air and "rendered a further order designed to insulate Flaherty and his information from successor counsel." *Id.* The Supreme Court affirmed the trial court's disqualification of Moller based upon his consultation with Flaherty. *Id.* at 512.

In its analysis of the motion to disqualify, the Court explained that the first step was to determine whether an attorney-client relationship existed between Flaherty and Avco. *Id.* at 508–509. The Court concluded that Flaherty "participated in discussions designed to formulate Avco's trial plan and played an active role in structuring its defenses. [Flaherty's] intimate knowledge of Avco's affairs received in the course of the attorney-client relationship subjected him to a fiduciary responsibility." *Id.* at 509.

The Supreme Court then determined that, because Moller (counsel for Corporate Air) consulted with Flaherty (former counsel for Avco), Moller was in a position to receive confidences concerning Avco and thereby become "infected." *Id.* at 512. The Court held expressly: "This possibility is sufficient to disqualify Moller"; *id.* at 512–513, and that it was "immaterial" that Moller had acted properly at all times and was unaware of Flaherty's past relationships. *Id.* at 513. The Supreme Court stated: "No person is immune from the spread of

infection by reason of his good conduct or pure heart.  Although it is unfortunate that Moller, through no fault of his own, must be precluded from representing Corporate Air . . . in the present litigation, no other result consistent with the [rules of professional conduct] is appropriate."  *Id.* at 513.

The Court emphasized that there need *not* be a showing that the attorney (Moller in *Goldenberg*; Katz in the present case) actually received the confidential/privileged information in order to disqualify him.  *Id.* at 512–13.  To the contrary, "where the opportunity for disclosure of confidential information to an adversary is shown, the breach of confidence . . . is presumed in order to preserve the spirit of the [Rules of Professional Conduct]."  *Id.* at 512.  The Court stated:

> Every client has a right to expect that his lawyer will not disclose his secrets. To protect this right, courts will not inquire whether the lawyer has, in fact, used confidential information to the client's detriment because such inquiry would require the revelation of the very information the [rule] is designed to protect. . . .  ***Where the opportunity for disclosure of confidential information to an adversary is shown, the breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of the [rules of professional conduct].***

*Id.* at 512 (citations omitted) (emphasis added).  Because the consultations between Flaherty (former counsel for Avco) and Moller (counsel for Corporate Air) concerning the airplane accident put Moller "in a position to receive relevant confidences concerning Avco," the Court concluded that disqualification of Moller was required.  *Id.* at 512–13.

Just as Flaherty represented Avco, Liu had an attorney-client relationship with Beta Pharma.  (See Zhang Aff. (Exh A), ¶ 6; Hr'g Tr. (Exh. G), at p. 20.)  And, just as Moller (representing Corporate Air, adverse to Avco) consulted with Flaherty (former counsel for Avco) in *Goldenberg*, Katz (representing Plaintiffs, adverse to Defendants) has consulted with Liu (former counsel for Defendants).  As a result, Katz was and is in a position to receive attorney-client confidences regarding Defendants.  This is true even if Katz has acted at all times with the

utmost propriety; where, as here, "the opportunity for disclosure of confidential information to an adversary is shown, the breach of confidence . . . is presumed in order to preserve the spirit of the rules." *Goldenberg*, 189 Conn. at 512. Just as it was necessary to disqualify Moller from representing Corporate Air, Katz must be disqualified from representing Plaintiffs in the present case. *See id.* at 512–13.

A state court disqualified a law firm under similar circumstances in *ARJ Trucking, Inc. v. Emery Worldwide and Consolidated Freightways, Inc.*, 7 Conn. L. Rptr. 167, 1992 WL 189367 (Conn. Super. Ct. Jul. 29, 1992) (copy attached as **Exhibit J**). In *ARJ Trucking*, ARJ's counsel, Cohen and Wolf, secured an affidavit from Emery's former general counsel wherein he revealed, *inter alia*, facts relating to a contract between ARJ and Emery that was at issue in the lawsuit and that he had negotiated as Emery's general counsel. The court disqualified Cohen and Wolf because there was an opportunity for disclosure of Emery's confidential information when Cohen and Wolf took that affidavit. The disclosure of such confidential information was presumed under *Goldenberg*. *Id.* Much the same opportunity for disclosure of confidential information arose when Liu consulted with Katz about their joint representation and Liu's projected claims against Beta Pharma.

Former Chief Judge Burns reached the same conclusion in *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712 (D. Conn. 1991). In *MMR/Wallace*, the defendant's attorney hired as a trial consultant a former office manager for the plaintiff; the office manager had assisted the plaintiff's attorneys, set up the plaintiff's document control system and reviewed, indexed, and digested discovery materials. 764 F. Supp. at 714–17. Therefore, the office manager had access to the plaintiff's confidential information. *Id.* at 724–25. After reviewing the relevant case law, including *Goldenberg*, Chief Judge Burns ruled that

disqualification of the defendant's attorney was required to prevent disclosure of confidences and the taint resulting from the defendant's attorney having access to the plaintiff's confidential information. *Id.* at 723–28. Likewise, here, Katz's disqualification is necessary because Katz, through Liu, has had access to Defendants' confidential information. *See id.*

A recent case from the Eastern District of New York confirms this analysis. In *Gerffert Co., Inc. v. Dean*, 2011 WL 683963 (E.D.N.Y. Feb. 16, 2011) (attached as **Exhibit K**), Attorney Horowitz had previously represented Gerffert and the Bonellas. He obtained a waiver from the Bonellas to represent Gerffert in a business transaction with the Bonellas. *Id.* at * 1. The waiver was limited, however, and explicitly stated that Horowitz would not represent either side in the event a dispute arose between them. *Id.* at *2. Gerffert, represented by separate counsel, Attorney Magnotti, ultimately sued the Bonellas. *Id.* at *4. Unbeknownost to the Bonellas, however, Horowitz was involved in the case behind the scenes before ultimately entering a notice of appearance on behalf of Gerferrt. *Id.* at *9. The Court disqualified both Horowitz and Magnotti, noting that "the risk that confidential information has already passed between them would remain and taint the fairness of the proceedings." *Id.* at *10. In making its ruling, the Court particularly emphasized the failure to disclose that Horowitz had been working on the matter. *Id.* at *11.

Under *Gerffert*, Katz must be disqualified. Just as in *Gerffert*, Katz has affiliated with former counsel for his adversary. Just as in *Gerffert*, this joint representation was not immediately disclosed; instead, Beta Pharma discovered the joint representation only when it subpoenaed Liu. Just as in *Gerffert*, the risk that Liu has shared Beta Pharm's confidences with Katz taints the proceeding and requires disqualification.

Katz became "infected" when he and Liu began working together in this case and otherwise, because Liu was privy to confidential information regarding Beta Pharma, his former client.   Specifically, Katz became "infected": (i) when Liu and Katz entered a joint representation to sue Defendants; (ii) when Liu consulted Katz regarding this case; and (iii) when Liu approached Katz about bringing his own lawsuit.  (See Liu Motion to Quash (Exh. B), at p. 9.)

Furthermore, Katz has indicated that he communicated with Liu about the Xie Action. (See J. Katz email (Exh. D) ("Lance Liu has nonprivileged, discoverable information material to [Xie's] case in Connecticut").)  Katz could only know that Liu has "nonprivileged, discoverable information material to [that] case" if (1) Liu communicated with Katz about that case, and/or (2) Liu turned information about that case over to Katz.   Liu could only have acquired such information while working for and on behalf of Beta Pharma.  Because Katz has consulted with Liu (who previously represented Defendants with respect to facts and issues in controversy in this action), Katz was in a position to receive confidences concerning Defendants regarding the subject matters of both actions.   As this opportunity for disclosure of confidential information exists, a breach of confidence is presumed and disqualification is required.  *Goldenberg*, 189 Conn. at 512; *ARJ Trucking*, 1992 WL 189367 (Exh. J), at *3.

**D.**      **Katz Also Must Be Disqualified Because He Has Willfully Invited Liu to Violate the New Jersey Restraining Order and the Rules of Professional Conduct.**

Katz is using the Connecticut discovery process to (a) blatantly violate a New Jersey Restraining Order and (b) induce Liu (his client) to disclose attorney-client privileged information in violation of the Rules of Professional Conduct.  Katz must, therefore, be disqualified.

Despite the fact that Defendants served Katz with a copy of the New Jersey Restraining Order barring Liu from communicating with either Katz or Plaintiffs (Exh. H), on October 2, 2014, Katz issued a subpoena to Liu to depose him.[8]   (*See* Exh. I.)   In so doing, Katz has willfully invited Liu to violate the New Jersey Restraining Order by communicating directly with him at the deposition.   Katz's conduct is improper and independently mandates that he be disqualified from this action.  *See* RPC 1.6 and 8.4(1).

The New Jersey Court made a preliminary finding that Liu had improperly disclosed Defendants' attorney-client privileged information and, therefore, entered a Restraining Order barring Liu from communicating with Plaintiffs, Katz or Xie about the present action or the Xie Action.  (See Restraining Order (Exh. F); Hr'g Tr. (Exh. G), at p. 33 ("Mr. Liu was the attorney for Beta Pharma, Incorporated and Beta Pharma Scientific, Incorporated and now finds himself in an adversarial relationship with those entities and ***there has been a showing to the Court that Mr. Liu has used privileged and confidential information in connection with his representation in other matters and in connection with his controversies with plaintiffs here***" [emphasis added]).)

By issuing the subpoena to Liu (Exh. I), Katz has disrespected the New Jersey Court's important preliminary finding that Liu engaged in misconduct and disclosed privileged information to others, *including Katz*.  Further, Katz has disrespected the New Jersey Court's Restraining Order (Exh. F).  Rather than following the dictates of the Restraining Order and ceasing contact with Liu, an attorney who has repeatedly engaged in misconduct, Katz

---

[8]   Some of the subpoena's document requests underscore Katz's role as Liu's attorney by seeking documents relevant to Liu's own purported claims against Defendants.  For example, the eighth request asks for "documents and records concerning promises made by Beta Pharma and Don Zhang to invest in the deponent [Liu]'s generic drug business, and breaches of those promises."  (*See* Exh. I.)  The ninth request asks for "documents and records concerning promises made by Beta Pharma or Don Zhang to compensate the deponent [Liu] with stock of ZJBP, and breaches of those promises."  (*Id.*)

encourages—and, in fact, compels by and through the subpoena—Liu to communicate with him. Importantly, by the subpoena to Liu, Katz specifically seeks documents and communications about the present action (and the Xie Action).  (See Exh. I.)

The subpoena to Liu is improper not only because it blatantly defies the New Jersey Court's Restraining Order, but also because *the subpoena induces Liu to violate the Rules of Professional Conduct by revealing confidential information*.[9]  For example, the fifth document request asks for production of "all documents and records pertaining to any and all Board meetings including the September, 2012 meeting during which ZJBP confirmed it would not permit Beta Pharma to transfer ZJBP stock to certain investors including 'the plaintiffs in the [Shao] Action' Shanshan Shao, Hongliang Chu, Qian Lu, Song Lu and Xinshan Kang, as stated at Page 14 of Beta Pharma's Brief in Support of Plaintiff's Application for an Order to Show Cause with Temporary Restraints filed in <u>Beta Pharma, Inc., Beta Pharma Scientific, Inc. and Don Zhang v. Lance Liu</u>, Superior Court of New Jersey Law Division—Mercer County, Docket Number L-2040-14."[10]  (See Exh. I.)  The third, sixth and fifteenth requests likewise seek documents and information for use against Defendants in the Shao Action.  (See *id.*)  Liu could only have obtained such information while working as Defendants' attorney.  Thus, Katz is asking Liu to turn over Defendants' attorney-client privileged information so that Katz can use that information against Defendants in this case.

Other document requests in the subpoena ask Liu to turn over Defendants' confidential information for use against Defendants in the Xie Action.  For example, the subpoena's seventh

---

[9]  The set of circumstances in which Liu is permitted to reveal Defendants' confidential information does not include responding to a subpoena.  *See*  Conn. R. Prof. Conduct 1.6(b)–(d).

[10]  The reference to a brief filed in the New Jersey action further illustrates Katz's familiarity with the New Jersey Restraining Order.

document request asks for production of "[a]ll documents and records concerning compensation from Beta Pharma, Beta Pharma Scientific, or ZJBP paid to, payable to, or claimed due and owing by [Xie], whether in cash, BP stock, ZJBP stock, or other form." (Exh. I.)  In other words, Katz seeks information from Liu about the issue of whether Xie received all compensation and stock allegedly owed to him, which is the subject matter of the Xie Action. (See *id.*)  Again, Liu could only have obtained such information while working as Defendants' attorney.

Katz's issuance of the subpoena violates the Rules of Professional Conduct.  If Liu responds to these requests (or other ones) and provides attorney-client privileged information, he will have violated Rule 1.6.  See RPC 1.6.  By inducing Liu to violate Rule 1.6, Katz is violating Rule 8.4, which states, in relevant part:  "It is professional misconduct for a lawyer to:  (1) Violate or attempt to violate the Rules of Professional Conduct, ***knowingly assist or induce another to do so***, or do so through the acts of another."  RPC 8.4(1) (emphasis added).  See also discussion in Sec. III.B, *supra*.  Thus, Katz must be disqualified.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants respectfully move that the Court grant their Motion to Disqualify and order the following relief:

1.  Disqualification of Katz from representing plaintiffs Shanshan Shao, Hongliang Chu, Qian Lu, Song Lu, and Xinshan Kang in this case; and

2.  An injunction precluding Katz from turning over his file(s) associated with this matter to any other lawyer or law firm.

DEFENDANTS BETA PHARMA, INC. AND
DON ZHANG,

By:_____/s/_____
     Richard W. Bowerman, ct04181
     Michael G. Caldwell, ct26561
     LeClairRyan, A Professional Corporation
     545 Long Wharf Drive, 9th Floor
     New Haven CT 06511
     Ph. (203) 672-1636
     Fax (203) 672-1656
     Email: michael.caldwell@leclairryan.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.


/s/_____
Michael G. Caldwell (ct 26561)