## <u>MOTION TO DISQUALIFY OPPOSING COUNSEL—LIST OF EXHIBITS</u>

**A.** Affidavit of Don Zhang.

**A-1.** Mutual Non-Disclosure and Non-Use Agreement.

**B.** Liu Motion to Quash dated August 20, 2014 (D.E. 155) (without exhibits).

**C.** Defendants' Subpoena to Liu dated August 1, 2014 (without exhibits).

**D.** J. Katz email to G. Duhl dated October 1, 2014.

**E.** Order to Show Cause filing of September 16, 2014.

**F.** Order to Show Cause entered on September 26, 2014.

**G.** Transcript of September 26, 2014 hearing.

**H.** J. Orticelli email to J. Katz dated September 26, 2014.

**I.** Plaintiff's Subpoena to Liu dated October 2, 2014.

**J.** *ARJ Trucking, Inc. v. Emery Worldwide and Consolidated Freightways, Inc.*, 7 Conn. L. Rptr. 167, 1992 WL 189367 (Conn. Sup. Jul. 29, 1992).

**K.** *Gerffert Co., Inc. v. Dean*, 2011 WL 683963 (E.D.N.Y. Feb. 16, 2011).

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHANSHAN SHAO, HONGLIANG CHU, QIAN LIU, SONG LU, AND XINSHAN KANG, Plaintiffs, | : | |
| v. | : | Civil Action No. 3:14CV01177 (CSH) |
| BETA PHARMA, INC., AND DON ZHANG, Defendants. | : | OCTOBER 14, 2014 |

### AFFIDAVIT OF DON ZHANG

The undersigned, being duly sworn, deposes and says:

1. I am above eighteen years of age and believe in the obligations of an oath.

2. I have personal knowledge of the facts set forth in this Affidavit, and they are true and accurate to the best of my knowledge and belief.

3. I am the CEO, president, and shareholder of Beta Pharma, Inc. ("Beta Pharma"). I refer to Beta Pharma and myself as "Defendants" in this Affidavit.

4. Beta Pharma is a drug discovery company focusing on oncological drugs.

***The 409 Patent and Icotinib***

5. On July 18, 2006, the United States Patent & Trademark Office ("USPTO") issued Patent No. 7,078,409 (the "409 Patent") to Beta Pharma.

6. The 409 Patent claims a class of anticancer agents, including Icotinib, a drug that was approved for the treatment of non-small cell lung cancer in the People's Republic of China ("China") in June 2011.

1

7.     Beta Pharma contributed the Chinese rights to the corresponding Chinese Patent Application of the 409 Patent to Zhejiang Beta Pharma Co., Ltd. ("ZJBP"), a Chinese company organized under the laws of China.

8.     In exchange for those patent rights, Beta Pharma received an ownership interest in ZJBP.  ZJBP has announced that it intends to make an initial public offering of its stock in China.

*Lance Liu, Esq.'s representation of Defendants*

9.     Lance Liu, Esq. ("Liu") is an attorney who is licensed to practice law in New Jersey.

10.     Liu represented both Beta Pharma and Beta Pharma Scientific, Inc., a related company, from approximately July 2011 until approximately December 2012.   During November 2012, Liu purported to terminate his attorney-client relationship with Beta Pharma by e-mail but continued to involve himself in Defendants' legal issues through at least December 2012.

11.     During July 2011, when Liu formed an attorney-client relationship with Beta Pharma, Liu also entered into a "Mutual Non-Disclosure and Non-Use Agreement" with Beta Pharma, which provides that Liu would not disclose Beta Pharma's Confidential Information.

12.     A true and correct copy of the Mutual Non-Disclosure and Non-Use Agreement is attached hereto as Exhibit 1.

13.     Liu never provided Beta Pharma with a written retainer agreement or other documents setting forth the scope of the representation or how he intended to charge for legal services.

14.     Liu provided comprehensive legal services to Beta Pharma, including rendering legal advice regarding intellectual property, real estate leases, taxation issues, employment issues, contract issues, and corporate and stock transfer issues.

15.     I had regular contact and communications with him about business and legal issues impacting my companies.

16.     Liu had a Beta Pharma email address (Lance.Liu@betapharma.com) and billed Beta Pharma in excess of $126,000 for legal services provided between July 2011 and December 2012, which Beta Pharma paid.

17.     During the representation, Liu received unfettered access to Beta Pharma's corporate information, including highly confidential and proprietary business information such as research projects, business contracts, investor information, financial information, tax filings and related information, employee information and settlements, and proposed stock valuations. Liu also received confidential and privileged requests for legal advice from Beta Pharma and Scientific, and rendered confidential and privileged legal advice on intellectual property issues, corporate issues, employment issues, stock sale issues, tax issues, and real estate issues.

### Liu provides legal services in connection with ZJBP Stock Transactions

18.     During the representation, Liu provided Beta Pharma with legal advice and counsel in connection with Beta Pharma's transactions regarding ZJBP stock.

19.     Specifically, Beta Pharma had entered into transactions to sell ZJBP stock to certain buyers. Plaintiffs were among the Buyers. Without disclosing the specific advice given, Liu advised Beta Pharma on the tax consequences of these transactions, what Beta Pharma should do about the transactions going forward, and subsequent agreements entered into with Buyers to repurchase ZJBP stock.

3

20.     In addition, in September 2012, Liu traveled to China to attend ZJBP board meetings as Beta Pharma's lawyer and representative.

21.     At those ZJBP board meetings, decisions were made concerning Beta Pharma's right to transfer ZJBP stock to Buyers with whom Beta Pharma had entered or intended to enter into stock purchase agreements, and ZJBP's initial public offering.

22.     Liu voted my proxy in at least one of these ZJBP board meetings.

23.     During and as a part of the representation of Beta Pharma, Liu had confidential attorney-client communications with Beta Pharma about ZJBP stock, transactions with third parties, including Buyers, regarding that stock, tax consequences of those transactions, the valuation of that stock, ZJBP board meetings at which the transactions were discussed, and ZJBP's planned initial public offering.

### Liu threatens Beta Pharma and me

24.     During his representation of Defendants, Liu proposed that Beta Pharma enter into a business relationship with him to start a generic drug business.

25.     While Beta Pharma and I considered Liu's proposals, we ultimately declined them.

26.     After purporting to terminate his attorney-client relationship with Defendants in November 2012, Liu subsequently threatened me with criminal prosecution by the U.S. Attorney's office if I did not, among other things, pay Liu money and give Liu shares of Zhejiang Beta Pharma Co., Ltd. stock owned by Beta Pharma.

27.     During June 2013, Liu informed third parties with whom Beta Pharma had an ongoing business relationship that Liu was actively preparing a federal lawsuit against Beta

4

Pharma. Liu also made written statements to business associates of Beta Pharma, accusing me of criminal activity.

28.     Liu engaged in a campaign to destroy Beta Pharma and me because we refused to enter into a business deal with him.

### *Liu switches sides, discloses attorney-client confidential and privileged information, and sues Defendants, his former clients*

29.     Defendants became suspicious that Liu was sharing privileged information with the Plaintiffs in this case, and with the plaintiff in another case which attorney Jonathan Katz, Esq. ("Katz") filed against Beta Pharma and me, captioned Xie v. Beta Pharma, Inc., et al., *NNH-CV-13-6035116-S*, pending in the Superior Court of Connecticut (the "Xie Action").

30.     Accordingly, Defendants served a subpoena ("Subpoena") on Liu in the Xie Action, seeking to find out, among other things, what Liu had disclosed to Plaintiffs in this case and to Xie and Katz.

31.     Before the Subpoena was issued, neither Liu nor Katz ever disclosed to Defendants that Liu was working with Katz to jointly represent Plaintiffs in this action. Further, neither Liu nor Katz ever disclosed to Defendants that Liu was consulting with Katz and Plaintiffs regarding the Xie Action. Neither Liu nor Katz ever requested a conflict waiver, and no consent was ever provided. Nor have Defendants consented to Liu's disclosure of confidential information to the Plaintiffs or their counsel, Jonathan Katz.


_____
⸝Don Zhang

5

STATE OF NEW JERSEY     )

     )    ss.:  October 14, 2014

COUNTY OF MERCER     )


     Before me personally appeared Don Zhang, signer of the foregoing instrument, and he acknowledged the same to be his free act and deed, for the purposes contained herein.

> GARY J. WOOD
> Commission # 2402597
> Notary Public, State of New Jersey
> My Commission Expires
> November 24, 2015

My commission expires *November 24, 2015*

6

# Exhibit A-1

<u>MUTUAL NON-DISCLOSURE AND NON-USE AGREEMENT</u>

This AGREEMENT is made by and between Beta Pharma, Inc. at 31 Business Park Drive, Branford, CT06405 (hereinafter "BetaPharma") and Lance Liu at 4 Colonial Court, Middlebury, CT 06762 (hereinafter "Lance Liu").

<u>WITNESSETH</u>

WHEREAS, BetaPharma and Lance Liu are interested in evaluating their respective interests in entering into a possible mutually beneficial business arrangement; and

WHEREAS, it will be necessary for BetaPharma and Lance Liu to exchange certain confidential and proprietary information relating to certain of their respective research and development programs, in order for them to carry out the above-described evaluation;

WHEREAS both PARTIES believe that the execution and delivery of this AGREEMENT is in their best interests;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the PARTIES do agree as follows:

Preamble: The preamble forms an integral part of this AGREEMENT

2.   Definitions

(a)   As used herein, the term "PARTIES" shall mean BetaPharma and Lance Liu, and the term "PARTY" shall mean either of them, as the context shall indicate.

(b)   As used herein, the term "AFFILIATED COMPANIES" shall mean

(i) a business entity which owns, directly or indirectly, a controlling interest in a PARTY, by stock ownership or otherwise; or

(ii) a business entity in which the controlling interest is owned by a PARTY, either directly or indirectly, by stock ownership or otherwise; or,

(iii) a business entity in which ownership of the controlling interest is directly or indirectly common to that of a PARTY.

(c)   As used herein, the term "Confidential Information" shall mean any and all information, data, know-how, or samples, relating to the research, development, sales or marketing programs of a PARTY, and, or its AFFILIATED COMPANIES, which is (are) disclosed or given by that



PARTY, or on its behalf, to the other PARTY, or to an agent of the other PARTY disclosed hereunder in a writing, marked "Confidential", or, if initially disclosed orally, visually and/or in another intangible form, and identified as "Confidential" at the time of disclosure. Confidential Information shall not, however, include:

(i)     Information which is now generally available to the public or which after disclosure Hereunder becomes generally available to the public, through no fault attributable to the RECEIVING PARTY; or,

(ii)    information which was known by a PARTY prior to receipt hereunder, as evidenced by competent proof, or which is subsequently generated by that PARTY or an AFFILIATED COMPANY by persons who have not had access to or knowledge of the information disclosed hereunder; or,

         information which is lawfully received by a PARTY after the Effective Date from any party other than the DISCLOSING PARTY or the DISCLOSING PARTY's AFFILIATED COMPANIES, their employees or agents; or,

         Information which is expressly released in writing from the obligation of confidentiality imposed by this AGREEMENT; or

(v)     Information which is disclosed pursuant to a formal request of a government body, agency or a court of law but the RECEIVING PARTY shall inform the DISCLOSING PARTY of such request immediately and prior to disclosure in order to allow the DISCLOSING PARTY to take the appropriate measures.

3       Both PARTIES warrant that they have the full and unconditional right to disclose to each other the Confidential Information covered by this AGREEMENT. Each PARTY gives no warranty as to the accuracy or completeness of any Confidential Information, and is under no obligation to disclose any particular information under this AGREEMENT.

4.      After the execution of this AGREEMENT, the PARTIES may disclose to each other Confidential Information pertaining to the topics listed in Schedule A, which is attached hereto and made a part hereof. Such disclosures shall be made and received for the sole purpose of enabling the PARTIES to evaluate their respective interests in entering into the contemplated relationship. During the term of this AGREEMENT and for a period of five (5) years thereafter, a PARTY receiving Confidential Information from the other agrees;

a)      not to use the Confidential Information which it receives for any purposes other than those specified above; and

b)      to take all reasonable precautions to prevent the disclosure of the Confidential Information which it receives to any third party, other than AFFILIATED COMPANIES and agents which agree to be bound by the terms of this AGREEMENT. Without limiting the foregoing, RECEIVING

PARTY shall take at least those measures that it employs to protect its own Confidential Information.

5. Schedule A may be amended from time-to-time, by mutual written agreement, in order to add additional topics respecting which Confidential Information may be disclosed under the terms and conditions of this AGREEMENT. Such amending additions to Schedule A shall be initialed and dated by authorized representatives of both PARTIES in order to become effective.

6. Any intellectual property right created or brought into existence as a result of the use of the Confidential Information under this AGREEMENT is to be or to remain the property of the DISCLOSING PARTY. Nothing in this AGREEMENT shall be considered as granting any license or right under any patent rights or as representing any commitment by either PARTY to enter into any further agreement, by implication or otherwise.

All disclosed information shall remain the property of the DISCLOSING PARTY. Each of the PARTIES agrees to return promptly to the other, upon request, all of the Confidential Information received from the other, except that a PARTY may, at its option, retain one archival copy of the Confidential Information for the sole purpose of being able to determine the scope of its continuing obligations of confidentiality under this AGREEMENT.

8. The term of this AGREEMENT shall extend for a period of one (1) year from the effective date, unless extended by mutual written agreement, except that either PARTY may terminate this AGREEMENT for any reason on thirty (30) days prior written notice to the other. Any obligation of either PARTY accrued prior to expiry or termination of this AGREEMENT and the obligations set forth in Sections 4, 6, 7, 8, 10 and 11 shall survive the expiration or termination of this AGREEMENT.

9. No amendment hereto shall be binding unless expressly provided for by the mutual written consent of the PARTIES hereto.

10. In the event of a breach or threatened breach by a PARTY of any provision of this AGREEMENT, the PARTY victim of said breach shall be entitled to any remedy including injunction, relief, damage or any other right available to it, to prevent or restrain any such breach by either PARTY.

Neither PARTY shall use the name of the other in any public announcement, publicity, or advertising with respect to the subject matter of this AGREEMENT unless reasonably necessary to comply with applicable government laws or regulations.

12. This AGREEMENT shall constitute the entire understanding between the PARTIES with respect to the Confidential Information.

13. This AGREEMENT shall be construed and interpreted in accordance with the applicable laws of the State of Connecticut, USA.

IN WITNESS, WHEREOF, the PARTIES have duly executed this AGREEMENT this 26th day of July, 2011, the Effective Date.

Beta Pharma, Inc.                              Lance Liu

BY: _____        BY _____
         Name
         Title        7/27/2011                      07/26/2011

## SCHEDULE <u>A</u>

Topics covered by the NON-DISCLOSURE AND NON-USE AGREEMENT entered into between
_____ and _____ include:

_____ disclosing to _____ confidential and
proprietary information related to its research and development programs and products; and

_____ disclosing to _____ confidential and proprietary
information

related to their _____

# Exhibit B

NNH-CV-13-6035116-S                          )

GUOJIAN XIE                                  ) SUPERIOR COURT

V.                                           ) JUDICIAL DISTRICT OF

BETA PHARMA, INC., ET AL.                    ) NEW HAVEN AT NEW HAVEN

                                             ) AUGUST 20, 2014

### <u>NON-PARTY DEPONENT'S MOTION TO QUASH AND OBJECTIONS TO</u><br><u>PRODUCTION OF</u><br><u>DOCUMENTS UNDER SUBPOENA</u>

The undersigned, on behalf of a non-party deponent, Dr. Lance Liu, Esq. ("Attorney Liu"), pursuant to Connecticut Practice Book §§13-5 and 13-28(d) – (e) hereby timely moves both within 15 days of service and before the time for compliance to object to document production requested in and to quash the subpoena duces tecum served upon him by Beta Pharma, Inc. in this action. A copy of that subpoena is attached hereto as Exhibit 1.

The basis for this motion and objections is mainly threefold:

1. The subpoena is in fact and is intended to be unduly burdensome and overbroad in an attempt to intimidate Attorney Liu and his clients who are parties or witnesses to this litigation.

2. The documents subject to the subpoena were recently produced in a previous legal action in New Jersey Chancery Court Beta Pharma, et al. v, Lance Liu, Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-46-14.

3. The subpoena seeks to invade the sanctity of the attorney-client and/or attorney work product privileges.

The requested relief sought by Attorney Liu includes:

1. That the subpoena duces tecum be quashed.

2. That the discovery of privileged materials, previously disclosed materials not be had.

3. That the deposition currently scheduled by agreement at September 15th not be had or that it not be had until parameters are set in place to protect a non-party from undue burden and to protect the attorney-client and work product privileges.

4. That any production required not be had for 45 days from the date of this motion so that a proper review of the files may be conducted without undue pressure.

5. That the expense of the discovery of electronically stored information be borne by the party seeking the information under Practice Book §13-5(9).

6. That any discovery and production requests that are found to be discoverable be clarified to assist the non-party deponent in identifying relevant materials and to limit the scope of inquiry.


BACKGROUND

The instant litigation, to which Attorney Liu is not a party, appears to be an action arising out of sheer corporate greed in which a pharmaceutical company promised and later reneged on the promise to compensate Guojian Xie[1], and certain stockholders and employees or independent contractors. Apparently offended by the attempt to recover the monies owed, the pharmaceutical company is engaging in scorched earth tactics to punish

---

[1] BetaPharma's former Vice-President and employed medicinal chemist, who synthesized "icotinib," a lung cancer treatment marketed by Zhejiang Beta Pharma Co., Ltd. in the People's Republic of China.

or break the will of its opponents and Attorney Liu.

The subpoena also seeks documents and testimony from Attorney Liu concerning five individuals who have a separate dispute with Beta Pharma concerning repurchase of their shares in Zhejiang Beta Pharma.  Their case <u>Shanshan Shao, Hongliang Chu, Qian Liu, Song Lu and Xinshan Kang v. Beta Pharma and Don Zhang</u>, Judicial District of New Haven, Docket Number NNH-CV14-6048646S was just removed to the United States District Court for the District of Connecticut.

The subpoena is one abusive salvo in that dispute. It is notable that defendants would not agree to extend Attorney Liu's time to review the subpoena and file objections which necessitated making the motion to quash at this time.

## STANDARD OF LAW

Practice Book '13-29(d) provides in relevant part: "A nonparty deponent may be compelled by subpoena served within this state to give a deposition at a place *within the county of his or her residence or within thirty miles of the nonparty deponent's residence*; or if a nonresident of this state within any county in this state in which he or she is personally served, or at such other place as is fixed by order of the judicial authority. (emphasis added)

"When presented with a subpoena duces tecum, the subject of that subpoena may file a motion under Practice Book §13-5, which provides in relevant part: "Upon motion *by a party from whom discovery is sought,* and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the

following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions . . ." (Emphasis added.) The other relevant section is §13-28, which provides in relevant part: "(d) *The person to whom a subpoena is directed* may, within fifteen days after the service thereof . . . serve upon the issuing authority designated in the subpoena written objection to the inspection or copying of any or all of the designated materials . . . (e) The court in which the cause is pending . . . may, upon motion made promptly . . . (1) quash or modify the subpoena if it is unreasonable and oppressive or if it seeks the production of materials not subject to production under the provisions of subsection (c) of this section . . ." (Emphasis added.)

A party may challenge the propriety of a subpoena duces tecum in order to protect the sanctity of professional privilege. The party who holds the privilege or who hold the client information in trust has standing to move for protection from the subpoena on the basis that it seeks privileged information which is an interest which may be harmed. See *Smith v. Rossi, supra,* 37 Conn. L. Rptr. 506 (party has standing to file motion to quash subpoena directed to his physicians seeking disclosure of his medical records); and *Kowalonek v. Bryant Lane, Inc.,* Superior Court, judicial district of Danbury, Docket No. CV 96 0324942 (April 11, 2000, Moraghan, J.) (subpoenaed party appears to have standing to move for a protective order regarding deposition of her former attorney).

In fact, an attorney has such a strong interest in protecting the privilege that the attorney may intervene as of right in an action to protect the privilege where the attorney has been subpoenaed to produce client materials. *In re Katz,* 623 F.2d 122, 125 (2d Cir. 1980).

In this context, "[c]ourts have defined good cause as a sound basis or legitimate need

-4-

to take action . . . Good cause must be based upon a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statement . . . Whether or not good cause exists for entry of a protective order must depend on the facts and circumstances of a particular case." (Citations omitted; internal quotation marks omitted.) *Longwood Engineered Products, Inc. v. Polyneer, Inc.,* Superior Court, judicial district of Windham at Putnam, Docket No. CV 04 0072627 (September 7, 2004, Potter, J.).

### a. Attorney-client privilege

The Rules of Professional Conduct provide that an attorney may divulge such materials in certain circumstances. See Rules of Professional Conduct 1.6(a) and (c)(4) ("[a] lawyer shall not reveal information relating to representation of a client" but "[a] lawyer may reveal such information *to the extent the lawyer reasonably believes necessary* to ... [c]omply with ... a court order" [emphasis added] ). In doing so, however, an attorney is nevertheless obliged to disclose only what is necessary and to challenge the court order when he or she believes that such disclosure is not necessary. See Rules of Professional Conduct 1.6, commentary. As the commentary to rule 1.6 provides, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." Rules of Professional Conduct 1.6, commentary. Furthermore, "[a] lawyer may be ordered to reveal information relating to the representation of a client by a court.... Absent informed consent of the client to do otherwise, *the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client*

-5-

*privilege or other applicable law.*" (Emphasis added.) Rules of Professional Conduct 1.6, commentary. Moreover, "[s]ubsection (c) permits but does not require the disclosure of information relating to a client's representation to accomplish the purposes specified in subsections (c)(1) through (c)(4)." Rules of Professional Conduct 1.6, commentary. See generally General Statutes § 1–25. *Woodbury Knoll v. Shipman & Goodwin*, 305 Conn. 750, 764 (2012).

Additionally, rule 8.4 of the Rules of Professional Conduct provides in relevant part that "[i]t is professional misconduct for a lawyer to ... (1) [v]iolate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another...." Thus, a nonparty attorney or law firm faces a real dilemma. Because the attorney is obliged to protect the client's interest, the attorney should challenge any discovery order that requires disclosure of privileged or confidential material. *Woodbury Knoll v. Shipman,* supra at 765.

The courts will normally protect this privilege vigorously. *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267* Conn. 279, 329–30, 838 A.2d 135 (2004)("On numerous occasions we have reaffirmed the importance of the attorney-client privilege and have recognized the long-standing, strong public policy of protecting attorney-client communications.... In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice.... The privilege fosters full and frank communications between attorneys and their clients and thereby

promote[s] the broader public interests in the observation of law and [the] administration of justice." [Internal quotation marks omitted.] ); see also *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100,130 S.Ct. 599, 606, 175 L.Ed.2d 458 (2009) ("acknowledg[ing] the importance of the attorney-client privilege, which is one of the oldest recognized privileges for confidential communications" [internal quotation marks omitted] ); cf. *Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (noting importance of attorney's interest in preserving confidentiality of work product).

In fact, the Connecticut Supreme Court has ruled that it is an abuse of discretion to deny a motion to quash an overbroad subpoena seeking to invade the attorney-client privilege. *Woodbury Knoll*, supra at 786.

## b. Privilege Logs are Unnecessary to Assert the Privilege

A privilege log is an additional unnecessary burden which is not necessary where privileged materials are clearly requested. *Woodbury Knoll*, supra at 777. "[W]ith respect to privilege claims generally, we have held that [when] the confidential status of otherwise discoverable information is apparent, a claim of privilege may be disposed of without further inquiry." *Babcock v. Bridgeport Hospital,* supra, 251 Conn. at 847, 742 A.2d 322 Thus, a subpoena which inappropriately sought privileged materials in violation of Practice Book §§ 13–2,13–26 and 13–28 may be quashed.

Moreover, "[n]o provision of the rules of practice, and no decision by this court or the Appellate Court, requires that any person claiming the attorney-client privilege has

the burden to provide a privilege log at the time the claim of privilege is made." *Woodbury Knoll*, supra at 779. This is especially so where the subject of the subpoena is not a party to the litigation. *Id.* at 779-780.


## ARGUMENT OF LAW TO FACTS

Beta Pharma claims that on August 6th, caused an allegedly indifferent person, Ryan Mulcahy, to serve Attorney Liu with a subpoena duces tecum commanding him to appear at a deposition at 150 Trumbull Street, Hartford, Hartford County, Connecticut which is about 37 miles from Dr. Liu's residence in Middlebury, New Haven County, Connecticut. Despite Attorney Liu's residence he is not admitted in Connecticut and is only admitted to practice law in New York and New Jersey.

First, Attorney Liu challenges the subpoena's validity on the grounds that there is no proof that the "indifferent person" was in fact indifferent to this action and requests the opportunity to voir dire the process server.

Second, Attorney Liu challenges the validity of the subpoena on the grounds that it schedules the deposition outside of the county in which he resides and more than 30 miles from his residence as required by Practice Book §13-29(a).

Third, the subpoena purportedly scheduled the deposition for August 29th, 2014 and calls for broad categories of documents, many of which have already been produced to Beta Pharma.

Fourth, the evidence sought relates to privileged communications and documents transmitted, delivered, handled and discussed between Attorney Liu and several of his clients. These clients, including the plaintiff in this lawsuit, are now represented by Jacobs

- 8 -

& Dow, LLC and its member, Jonathan Katz, who has given notice that plaintiff and the other clients object to the disclosure of their privileged communications with Attorney Liu.

Fifth, other documents and information sought to be produced and testified to at the deposition relate to Attorney Liu's consultation with a Connecticut attorney, Jonathan Katz, Esq. with whom Attorney Liu consulted as an attorney with respect to his own potential claims against Beta Pharma and in joint representation with respect to the claims asserted by Attorney Liu's clients who are named in the subpoena.  Specifically, the documents relating to Attorney Liu's consultation with his Connecticut attorney are subject to a confidentiality privilege under Rules of Professional Conduct Rule 1.6 (a) which Attorney Liu asserts. The Rules of Professional Conduct in Connecticut and New York and New Jersey are substantially similar. (see copies of Rule 1.6 for NY and NJ attached as Exhibit 2)

The subpoena is overly broad and vague so as to be unduly burdensome and is not limited as to time (in most instances), type or subject matter or to those materials reasonably likely to be relevant, thereby increasing the potential for harm to Attorney Liu's clients and Attorney Liu if disclosed.

Moreover, the subpoena seeks discovery of privileged communications and documents and Attorney Liu's clients have not given authorization to release of any information in his possession relating to his representation of them.

Objections to the Subpoenaed Items Pursuant to Practice Book §13-28(d)

General Objections:

OBJECTION:

In addition to objections raised above in this motion, Attorney Liu objects to the production of electronically stored information requested in the definition of "documents" stated by the issuing authority. Much of the requested material has either already been produced or would reside on the servers of BetaPharma or its attorneys and therefore is equally available to them. Further the definition presents a burden to Attorney Liu to produce in a non-native format without the assistance of a professional ESI vendor. In addition the definition of electronically stored information is vague and overbroad making compliance impossible.

OBJECTION:

The subpoena instructs Attorney Liu to refrain from disclosing any of the documents requested with other parties to the litigation. This instruction has no basis in the practice book and places an unreasonable and unlawful prior restraint on Attorney Liu's ability to communicate with his clients. In fact, it contradicts Practice Book Section 13-30(f), which provides that "[d]ocuments and things produced for inspection during the examination of the deponent ... may be inspected and copied by any party."

Further, the instruction is vague and overbroad in that it covers all documents possibly responsive to the broad subpoena.

OBJECTION:

With respect to request numbers 1 through 4 of the subpoena, Attorney Liu objects on the grounds that the documents relating to his attorney-client relationship with

BetaPharma have been recently turned over to BetaPharma's NJ counsel appearing in this case during litigation in the NJ Chancery Court in 2014. Therefore the request is duplicative, equally available to BetaPharma and unduly burdensome and meant only to harass and vex the deponent. (See Dr. Liu's affidavit in the NJ action attached as Exhibit 3)


OBJECTION:

With respect to requests 5-through 7, Attorney Liu objects on the grounds that they seek the production of materials protected by the attorney-client privilege between Attorney Liu and Guojian Xie under a prior joint representation with Attorney Katz and separately. It is also unduly vague and burdensome in that fails to make any attempt to specify what materials might fully respond to the request and is unlimited. To the extent the client, Dr. Xie, sought advice regarding issues relating to the instant litigation and in at least one case a matter unrelated to the instant litigation, the disclosure of the same would violate the client's reasonable expectations of privacy and confidentiality. Dr. Xie, through counsel, has objected to the disclosure of privileged material.


OBJECTION:

With regard to request #8(a – d), Attorney Liu objects on the grounds that these requests seek the production of communications and other materials protected by the attorney-client privilege between Attorney Liu and the listed individuals who were clients of Attorney Liu. It is also unduly vague and burdensome in that fails to make any attempt to specify what materials might fully respond to the request and is unlimited. To the extent

-11-

the clients identified sought advice regarding issues relating to the instant litigation and in some cases to legal matters having nothing to do with the litigation, the disclosure of the same would violate the client's reasonable expectations of privacy and confidentiality. These former clients of Attorney Liu, through counsel, have objected to the disclosure of privileged material.

OBJECTION:

With regard to request #9, Attorney Liu objects on the grounds that the same is equally available to BetaPharma in that the only document Attorney Liu believes may be responsive to the request is a single power of attorney authorizing Attorney Liu to jointly represent Dr. Xie and Beta Pharma with respect to an application filed with the US Patent & Trademark Office which document is on file at the USPTO and available to Beta Pharma online. In addition, the request is vague and overbroad in that as presently phrased it covers any client at any time without restriction and does not sufficiently define what documents might constitute a waiver or what subject matter the waiver requested covers.

OBJECTION:

With regard to requests 10, 11 and 12, please see objection to request #8.

OBJECTION:

With regard to request #13, Attorney Liu objects on the grounds that the request is vague and overly broad in scope making compliance impossible. The request also seeks documents previously disclosed in the NJ litigation (see objection to requests #1 through

-12-

4 above).


OBJECTION:

With regard to requests 14, 15 and 16, see objections to requests #1 through 4 above and the requests seek information relating to employees of BetaPharma. The deponent is unaware of the entire list of employees of BetaPharma and therefore the requests seeks information not within his possession, information which cannot reasonably be identified and which is overbroad and vague in addition to being equally available to BetaPharma, the documents having been previously produced in recent NJ litigation.


OBJECTION:

Attorney Liu objects to the instruction to provide a privilege log in that the request is unduly burdensome, not required by lawful subpoena, not required by law as noted in this motion above, overly broad and vague and seeks only to harass and vex the non-party deponent with expense and effort.


OBJECTION:

Finally with respect to the two areas of requested inquiry at the end of the subpoena, Attorney Liu asserts the attorney-client and or work-product privileges. The proposed subject matter should be quashed because it is also vague, overbroad with reference to time, topic; the subjects are equally available to Beta Pharma as they relate to BetaPharma's internal operations. The request is overbroad in that it does not define "work". Moreover, to the extent that the two areas of inquiry relate to inquiries about the

documents objected to above, the inquiry is objectionable on the same grounds as the respective documents.

WHEREFORE, for all of the foregoing reasons, Attorney Liu respectfully moves this Court to grant his Motion to Quash and his objections to the subpoena duces tecum and protect the attorney-client privilege and a non-party from the burdens of the subpoeana of over-reaching and litigious corporate clients and to afford Attorney Liu whatever protections from abusive litigation and discovery tactics the court deems appropriate.

Dr. Lance Liu, Esq.

By_____

KEITH R. AINSWORTH
Evans, Feldman & Ainsworth, L.L.C.  #403269
261 Bradley Street
P.O. Box 1694
New Haven, CT 06507-1694
(203)772-4900/ (203)782-1356 fax
krainsworth@EFandA-law.com

- 14 -

ORDER

    This motion having been considered by the court, it is hereby GRANTED/DENIED on this __ day of _____, 2014.

BY THE COURT_____,J.

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing filed in the electronic filing system of the court and was electronically served on those parties who have requested service in that form and was mailed, postage prepaid, U.S Mail, first class, on this 20th day of August, 2014, to:

Jonathan Katz, Esq.
JACOBS & DOW, LLC
350 Orange Street
New Haven, CT  06511 (counsel to Guojian Xie)
jkatz@jacobslaw.com

Donald Altschuler, Esq.
Altschuler & Altschuler
509 Campbell Avenue
West Haven, CT  06516
(Counsel for defendants Beta Pharma, Inc.,
Beta Pharma Scientific, Inc., and Don Zhang)
Donalt44@sbcglobal.net; Altschuler.don@snet.net

Glenn A. Duhl, Esq.
Siegel, O'Connor, O'Donnell & Beck, P.C.

-16-

150 Trumbull Street
Hartford, CT  06103
(Counsel for defendants Beta Pharma, Inc.,
Beta Pharma Scientific, Inc., and Don Zhang)
gduhl@siegeloconnor.com

Jack L. Kolpen, Esq.
Benjamin R. Kurtis, Esq.
Fox Rothschild LLP
Princeton Pike Corporation Center
997 Lenox Drive, Building 3
Lawrenceville, NJ  08648-2311
jkolpen@foxrothschild.com
bkurtis@foxrothschild.com


Keith R. Ainsworth

# Exhibit C

DOCKET NO.: NNH-CV13-6035116-S

| GUOJIAN XIE | : | SUPERIOR COURT |
| | : | |
| v. | : | J.D. OF NEW HAVEN |
| | : | |
| BETA PHARMA, INC., DON ZHANG, | : | |
| BETA PHARMA SCIENTIFIC, INC., AND | : | |
| ZHEJIANG BETA PHARMA CO., LTD. | : | AUGUST 1, 2014 |

<u>DEPOSITION SUBPOENA DUCES TECUM</u>

To:    Lance Y. Liu, Esq., 4 Colonial Court, Middlebury, CT 06762

BY THE AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to appear and testify with respect to the matters at issue in this civil action pending in the Connecticut Superior Court, Judicial District of New Haven, and described hereinbelow, and to produce documents responsive to the requests set forth hereinbelow, at the offices of **Siegel, O'Connor, O'Donnell & Beck P.C., 150 Trumbull Street, 5th Floor, Hartford, CT 06103**, or such other place as may be agreed upon by the parties, at the taking of a deposition in the above-captioned action commencing on **Friday, August 29, 2014, at 9:00 a.m.**, or to such day thereafter and within sixty (60) days hereof on which said deposition is to be legally held.

AND, you ("you" or "deponent") are further commanded to bring with you and produce at said deposition the following described documents within your possession, custody or control. As used herein, the term "document" shall include e-mail sent from or received by any address (including, but not limited to, liuly2006@yahoo.com), text messages and other electronic communications.

INASMUCH AS MANY DOCUMENTS RESPONSIVE TO THE FOLLOWING REQUESTS ARE PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINES, THE DEPONENT IS HEREBY INSTRUCTED NOT TO SHARE OR OTHERWISE DISCLOSE SAID DOCUMENTS, OR THE CONTENTS THEREOF, WITH ANY THIRD PERSON (INCLUDING, BUT NOT LIMITED TO, GUOJIAN XIE AND JONATHAN KATZ) UNLESS AND UNTIL UNDERSIGNED COUNSEL HAS RECEIVED AND REVIEWED SAID DOCUMENTS FOR WORK PRODUCT/ATTORNEY-CLIENT PRIVILEGED CONTENT.

1. Any and all legal bills, retainers, invoices or similar documents for legal, consulting or any other work that the deponent performed for Beta Pharma, Inc., Beta Pharma Scientific, Inc., Don Zhang or Branford Research Labs, Inc. (collectively, the "Clients") at any time.

2. Any and all files, records or documents created or maintained by the deponent associated with the deponent's work for any of the Clients at any time, including, but not limited to, consulting and legal work that the deponent performed for any of the Clients.

3. Any and all documents, transmittals, correspondence or records of communication between the deponent and any of the Clients, or any representative(s) thereof.

4. Any and all documents, transmittals, correspondence or records of communication regarding work, in any capacity, for which deponent sought or received compensation from any of the Clients.

5. Any and all reports, records or documents created and/or maintained by the deponent concerning, referring or relating to any claim made by Guojian Xie against any of the Clients in the complaint attached hereto as **Exhibit A**.

6. Any and all documents, transmittals, correspondence or records of communication between the deponent and Guojian Xie, or any representative(s) thereof, for the time period January 1, 2011, to the present.

7. Any and all documents, transmittals, correspondence or records of communication between the deponent and Jonathan Katz, or any representative(s) thereof, for the time period January 1, 2011, to the present.

8. Any and all documents, transmittals, correspondence or records of communication between the deponent and:
   a. Shanshan Shao;
   b. Hongliang Chu;
   c. Qian Liu;
   d. Song Lu; and/or
   e. Xinshan Kang.

9. Any and all documents, transmittals, correspondence or records of communication that constitute or were intended to constitute a waiver of potential or actual conflict(s) of interest as to any of the Clients and/or any other person(s).

10. Any and all agreements, documents, transmittals, correspondence or records of communication referring or relating to compensation paid or payable to the deponent for referral of legal work:  (a) to Jonathan Katz and/or Jacobs & Dow, LLC, on any matter; and/or (b) to any lawyer and/or law firm, on any matter in which any of the Clients are (i) named, (ii) are the subject, (iii) are interested parties and/or (iv) witnesses.

11. Any and all documents, transmittals, correspondence or records of communication that refer to, relate to or concern the participation of any person or entity in any legal proceedings against Clients.

12. Any and all documents, transmittals, correspondence or records of communication between the deponent and any person or entity discussing the participation of any person or entity in any legal proceeding(s) against any of the Clients.

13. Any and all documents, transmittals, correspondence or records of communication between the deponent and any person or entity that refers to, relates to or concerns the sale of stock in Zhejiang Beta Pharma Co., Ltd. ("ZJBP").

2

14. Any and all documents, transmittals, correspondence or records of communication that refers to, relates to or concerns the sale of stock in ZJBP.

15. Any and all documents, transmittals, correspondence or records of communication that refers to, relates to or concerns an initial public offering of stock in ZJBP.

16. Any and all documents, transmittals, correspondence or records of communication between the deponent and ZJBP or any person or entity that is employed by or is otherwise engaged by ZJBP in any capacity.

If you withhold any document responsive to any of the foregoing-described requests, then you are further commanded to bring with you and produce at said deposition:

Where a privilege is applicable, a privilege log is to be provided. It should identify the specific ground(s) upon which your claim is based and the document withheld by identifying:  (a) the author; (b) the recipient or addressee; (c) all copy recipients; (d) its date; (e) those persons participating in its formulation; (f) a description of the document; (g) the type of privilege being claimed; and (h) the request to which the document is responsive.

The deponent is also to be examined on the requested documents and the following matters:

A. Work the deponent performed for the Clients.

B. The deponent's knowledge of the facts and circumstances concerning, referring or relating to Guojian Xie's employment with and/or work performed for any of the Clients.

HEREOF FAIL NOT, UNDER PENALTY OF THE LAW.

To any proper officer to serve and return.
Dated at Hartford, CT, this 1st day of August, 2014.

_____
Glenn A. Duhl, Esq.
Siegel, O'Connor, O'Donnell & Beck, P.C.
Tel.: (860) 280-1215

# Exhibit D

**From:** Jonathan Katz [mailto:jkatz@jacobslaw.com]
**Sent:** Wednesday, October 01, 2014 1:24 PM
**To:** Glenn Duhl; 'Keith R. Ainsworth'; 'lanceliu2000@gmail.com'
**Cc:** Kolpen, Jack (JKolpen@foxrothschild.com); bkurtis@foxrothschild.com; Jillian Orticelli; DONALD ALTSCHULER (donalt44@sbcglobal.net); Don Altschuler (altschuler.don@snet.net)
**Subject:** RE: Xie vs. Beta Pharma, et al.

Plaintiff's position is that the issue is not moot. Lance Liu has nonprivileged, discoverable information material to Dr. Xie's case in Connecticut and defendants should be compelled to modify the New Jersey gag order to permit discovery of Attorney Liu to proceed in Connecticut. I will go forward on Monday in accordance with the hearing the court previously ordered, and with respect to all matters listed below.

Thanks, Jonathan


Jonathan Katz, Esq.
Jacobs & Dow, LLC
350 Orange Street
New Haven  CT  06511-0606
(203) 772-3100 Ofc
(203) 772-1691 Fax
jkatz@jacobslaw.com
www.JacobsLaw.com