# Exhibit F

CLERK OF SUPERIOR COURT
SUPERIOR COURT OF N.J.
MERCER COUNTY
RECEIVED AND FILED

SEP 2 6 2014

*Sue Regan*
SUE REGAN
DEPUTY CLERK OF SUPERIOR COURT

**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By:      Jack L. Kolpen, Esquire  (N.J.I.D.# 026411987)
         Barry J. Muller, Esquire (N.J.I.D. # 016911998)
         Abbey True Harris, Esquire (N.J.I.D. #029112005)
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ  08648-2311
(609) 896-3600
*Attorneys for Plaintiffs Beta Pharma, Inc.,*
*Beta Pharma Scientific, Inc., and Don Zhang*

---

| | |
|---|---|
| BETA PHARMA, INC., BETA PHARMA SCIENTIFIC, INC., AND DON ZHANG, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – MERCER COUNTY DOCKET NO.: L-2040-14 |
| Plaintiff, | |
| v. | CIVIL ACTION |
| LANCE LIU, | **ORDER TO SHOW CAUSE TEMPORARY RESTRAINTS** |
| Defendants. | |

**THIS MATTER** having been opened to the Court by Fox Rothschild LLP (Jack L. Kolpen, Esq., appearing), attorneys for Plaintiffs, Beta Pharma, Inc., Beta Pharma Scientific, Inc. and Don Zhang, on notice to Defendant, Lance Liu, Esquire, and the Court having considered the moving papers and any opposition thereto; and the Court have considered the arguments of counsel; and for the reasons set forth on the record; and for other good cause having been shown;

**IT IS** on this 26 day of September ___, 2014;

26913087v1 09/16/2014

**ORDERED** that defendants shall show cause before this Court at the Mercer County Court House, 175 South Broad Street, Trenton, New Jersey 08650 on this ~~20~~ day of ~~January 2015~~ ~~September, 2014~~ at ~~4~~ : ~~00~~ .m., as to why an Order should not be entered in favor of Plaintiffs and against Defendant:

1.     barring Attorney Liu from communicating with the attorneys who are representing adverse parties in <u>Xie v. Beta Pharma et al</u>, NNH-CV13-6035116-S, pending in the Superior Court of Connecticut ("Xie Action") and  <u>Shao et al. v. Beta Pharama, Inc et al.</u>,  No. Civil Action No. 3:14CV01177 (CSH), pending in the USDC Conn. ("Buyers' Action");

2.     barring Attorney Liu from soliciting parties to sue the Beta Pharma Parties, his former clients;

3.     barring Attorney Liu from participating in joint representations adverse to his former clients' interests in the Xie Action or Buyers' Action;

4.     barring Attorney Liu from communicating with parties who are suing the Beta Pharma parties in Xie Action and Buyers' Action about the Xie Action and Buyers' Action;

5.     barring Attorney Liu from disclosing confidential information related to the representation of Beta Pharma, Scientific and Zhang;

6.     compelling Attorney Liu to terminate his attorney-client relationship with Guojian Xie in the Xie Action;

7.     compelling defendant to terminate his attorney-client relationship with  Shanshan Shao, Hongliang Chu, Qian Liu, Song  Lu and Xinshan Kang in the Buyers' Action;

8.     compelling defendant to terminate his joint representation with Jonathan Katz, Esq., in the Xie Action and Buyers' Action;

9.     compelling Attorney Liu to identify parties he solicited to sue Plaintiffs;

- 2 -

10.     compelling Attorney Liu to identify Beta Pharma's confidential and protected information he disclosed;

11.     compelling Attorney Liu to identify any information he disclosed to third parties regarding his representation of Beta Pharma, Inc. and Beta Pharma Scientific, Inc..

12.     requiring that the parties conduct expedited discovery as to Defendant's disclosure of information regarding Plaintiffs as follows:

        a. The parties must serve interrogatories and document demands on this limited issue must be served no later than _*October 10, 2014.*_

        b. The parties must respond to interrogatories and document demands on this limited issue no later than _*November 28, 2014;*_

        c. Fact witness depositions on this limited issue must conclude no later than _*December 23, 2014*_

**FURTHER ORDERED** that pending the return date of this Order to Show Cause, Defendant shall take no action to:

1.     Soliciting any person or entity to bring a legal claim against Plaintiffs anywhere in the world.

2.     Communicating directly or indirectly with Gojian Xie about the Xie Action or any Plaintiff in the Buyers' Action about the Buyers' Action;

3.     Communicating directly or indirectly with Jonathan Katz, Esquire, regarding the Xie Action or the Buyers Action; and it is

**FURTHER ORDERED**, that a copy of this Order to Show Cause and the Verified Complaint and Letter Brief filed herein ~~shall be served~~ _*leave blensening*_ upon the Defendant ~~via hand delivery~~ _*by the court*_ _*on Mandate*_ ~~within ___ days of entry hereof;~~ and it is

- 3 -

**FURTHER ORDERED**, that the Defendant shall serve and file any opposition to this Order to Show Cause upon the attorneys for Plaintiffs at least $3 0$ days ~~prior to the return date of this Order to Show Cause~~. Plaintiffs may serve a reply to the opposition upon attorneys for the Defendant at least $14$ days prior to the return date of the Order to Show Cause; and it is

**FURTHER ORDERED**, that Defendant must serve upon the attorneys for the Plaintiffs an Answer to the Verified Complaint within $30$ days after service of this Order to Show Cause and Verified Complaint, exclusive of the date of the service. If the Defendant fails to answer, judgment by default may be entered against the defaulting Defendant for the relief demanded in the Verified Complaint. The Answer should be filed promptly with proof of service thereof in duplicate with the Clerk of the Superior Court of New Jersey, Law Division, Mercer County, 175 South Broad Street, Trenton, New Jersey 08650 in accordance with the Rules of Civil Practice and Procedure. If Defendant cannot afford to pay an attorney, the telephone number for the Mercer County Legal Services is (609)695-6249. If the individual is not eligible for free legal assistance he may obtain a referral to an attorney by calling the Mercer County Bar Association's Lawyer Referral Service at (609) 585-6200. This Order to Show Cause shall serve as a substitute summons.

J.S.C.

26913087v1 09/16/2014

# Exhibit G

```
                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION, CIVIL PART
                              MERCER COUNTY, NEW JERSEY
                              DOCKET NO. MER-L-2040-14
                              A.D. #_____
```

BETA PHARMA, INC., BETA )
PHARMA SCIENTIFIC, INC., )
and DON ZHANG, )
                           )           TRANSCRIPT
        Plaintiffs, )
                           )               OF
        v. )
                           )     MOTION HEARING
LANCE LIU, )
                           )
        Defendant. )

```
                              Place:  Mercer County Civil
                                        Courthouse
                                      175 South Broad Street
                                      Trenton, NJ 08650

                              Date:   September 26, 2014
```

BEFORE:

  THE HON. PAUL INNES, P.J.Ch.

TRANSCRIPT ORDERED BY:

  JACK L. KOLPEN, ESQ. (Fox Rothschild, LLP)

APPEARANCES:

  JACK L. KOLPEN, ESQ. (Fox Rothschild, LLP)
  ABBEY TRUE HARRIS, ESQ.
  Attorneys for the Plaintiff

  LANCE LIU, Defendant, Pro Se

```
                         Transcriber, Janet D. Persons
                         J&J COURT TRANSCRIBERS, INC.
                         268 Evergreen Avenue
                         Hamilton, NJ 08619
                                    (609)586-2311
                         FAX NO.    (609)587-3599
                         E-mail:    jjcourt@jjcourt.com
                         Website:   www.jjcourt.com

                         Audio Recorded
                         Audio Operator, Patrice Flim
```

2

## I N D E X

**PAGE**

**MOTION**
**ARGUMENT**
  By Mr. Kolpen         3
  By Mr. Liu         19

**DECISION**
  By the Court         28

3

1        THE COURT:  Good morning, everyone.  Please
2  be seated.
3        MR. KOLPEN:  Good morning, Your Honor.
4        THE COURT:  Okay, this morning we have Beta
5  Pharma, Incorporated; Beta Pharma Scientific,
6  Incorporated; and Don Zhang versus Lance Liu.  This is
7  Docket Number MER-L-2040-14.  Let's have appearances of
8  counsel please.
9        MR. KOLPEN:  Jack Kolpen and Abbey Harris
10  from Fox Rothschild on behalf of the plaintiffs.
11        MR. LIU:  Lance Liu, pro se.
12        THE COURT:  This is actually an application
13  for a order to show cause.  There were temporary
14  restraints sought in connection with the order to show
15  cause.  The Court directed plaintiffs' counsel to
16  appear today and to advise Mr. Liu that there would be
17  a hearing on the issue of the temporary restraints.  So
18  let's begin with, Mr. Kolpen?
19        MR. KOLPEN:  Yes.  Your Honor, BPI is a drug
20  discovery company.  Refer to that as Beta Pharma, I'll
21  refer to it as BPI.  Beta Scientific is a CRO, that's a
22  contract research organization, that produces
23  synthesized drugs for use in the pharmaceutical
24  industry and sort of a customized drug company for
25  pharmaceutical companies.

4

```
 1            Mr. Liu is a licensed New Jersey attorney who
 2     provided legal services to the plaintiffs.  I also
 3     forgot to mention Don Zhang who is the CEO, President,
 4     and a shareholder of those entities.  Mr. Liu provided
 5     legal services to the plaintiffs from approximately
 6     December of 2011 to November of 2013.
 7            BP in 2011 became the holder of a patent
 8     which we call the 049 patent for a drug call Icotinib.
 9     In China BP contributed its rights in this invention to
10     a company that was formed called ZJBP.  And in China
11     this drug Icotinib that was produced pursuant to the
12     049 patent or the Chinese equivalent of that patent
13     received approval from regulatory authorities in China
14     and is on the market and has become very valuable and
15     that company is going to file an IPO in China I think
16     almost any day.
17            In exchange for putting the 049 patent rights
18     into the Chinese company BP received stock in ZJBP and
19     I'll refer to that as ZJBP stock.  And of course BP is
20     also a company that has stock and I just want Your
21     Honor to be aware that I'm talking about two different
22     sets of stock here.  One is the stock for the Chinese
23     company, one is the stock for the American domestic
24     company called Beta Pharma.  Okay.
25            The services that Mr. Liu provided in our
```

5

```
 1     clients' view were comprehensive.  That is to say if
 2     you look through a submission which I'm going to offer
 3     Your Honor which is the bills of Mr. Liu for that
 4     period of time, he charged them about $130,000.  And he
 5     provided legal services in employment, stock transfers,
 6     corporate issues, tax issues, patent issues.  And our
 7     client believed that he was functioning as a sort of
 8     inside/outside counsel.  Mr. Liu says that was
 9     piecemeal but I think when Your Honor sees the
10     submission you're going to conclude that it was
11     comprehensive and not piecemeal.
12            He had a BP e-mail address.  He had access to
13     company information.  And being their inside/outside
14     counsel they discussed research projects with him, they
15     discussed all kinds of issues involving the company.
16            And bear in mind when Mr. Liu showed up he
17     was carrying a Ph.D. in science in one hand and he was
18     carrying a law degree in the other.  So when he first
19     shows up I think he was very interested in the 049
20     patent technology.  He wanted to go into business with
21     our client and he wanted to provide them legal
22     services.
23            So in the beginning wasn't really charging
24     them for legal services but was providing legal advice
25     and our client believed that an attorney-client
```

6

```
 1    relationship started as early as July.  Mr. Liu also
 2    signed an NDA when he showed up which prohibited the
 3    disclosure of company information.
 4              Without getting into the great detail of the
 5    representation because I don't think that in order to
 6    prove my case here I should be required to disclose
 7    attorney-client confidences or work product that was
 8    developed in the representation and put it in the
 9    public record.
10              So what I'm going to do, Your Honor, is offer
11    a certification and a letter for in camera review which
12    contains information from the representation that we
13    don't think should be in the record.
14              THE COURT:  Did you make an application, a
15    motion to --
16              MR. KOLPEN:  We did not but I think I --
17              THE COURT:  Wasn't the --
18              MR. KOLPEN:  -- I identified it in our motion
19    and this is the specific procedure that is identified
20    in the O Builders v. Unicorp (phonetic) case which the
21    Supreme Court says that you should follow when
22    evaluating this kind of application.
23              THE COURT:  Did you make an application to
24    have anything filed under seal?
25              MR. KOLPEN:  I did not because I'm not asking
```

7

```
 1    for it to be filed under seal, I'm asking for it to be
 2    considered --
 3              THE COURT:  Well you're asking me to consider
 4    it --
 5              MR. KOLPEN:  -- in camera inspection.
 6              THE COURT:  -- you're asking me to consider
 7    it in camera.
 8              MR. KOLPEN:  Yes.
 9              THE COURT:  Well --
10              MR. KOLPEN:  It is part of our application,
11    Your Honor.  It is identified in our application.
12              THE COURT:  Go ahead.
13              MR. LIU:  Your Honor, I have the right to --
14              THE COURT:  I'm sorry?
15              MR. LIU:  The request that's made on the
16    record.
17              THE COURT:  I'm sorry?
18              MR. LIU:  I have a right -- a request --
19              THE COURT:  Please stand up when you address
20    the Court.
21              MR. LIU:  Okay.  Yes, Your Honor.  I request
22    that everything submitted made on record.
23              THE COURT:  All right.  You're going to have
24    your opportunity in a second.
25              MR. LIU:  Okay.
```

8

1    THE COURT:  Have a seat.
2    MR. KOLPEN:  And the reason why he wants that
3    is because he wants to run back to Connecticut.
4    THE COURT:  I don't know why he wants it.
5    Let's finish up your argument.
6    MR. KOLPEN:  Okay.  Your Honor, I think that
7    we filed an order to show cause in a period of time we
8    were to file an order to show cause.  We identified in
9    that order that we wanted the Court to consider --
10    THE COURT:  Well we're talking about today.
11    Is your application for the temporary restraints?
12    MR. KOLPEN:  Yes.
13    THE COURT:  Okay.
14    MR. KOLPEN:  And I included within that
15    application and subsequent letters references to the
16    fact that we were going to ask Your Honor to consider
17    reviewing documents under seal.  It wasn't just in the
18    order to show cause.
19    THE COURT:  Well now you -- I just asked you
20    if you were asking me to consider a document under
21    seal, you said no.
22    MR. KOLPEN:  I'm sorry.  In camera, Your
23    Honor, I misspoke.
24    THE COURT:  Oh, okay.  All right.
25    MR. KOLPEN:  That is what we said in our

9

1    application, that's what we said in our letter.
2    Anyway, our verified complaint says that Mr. Liu
3    provided legal services with respect to an employee
4    named Mr. Xie.  Mr. Xie was a scientist employed by
5    Beta Pharma.  That is specifically in our verified
6    complaint and it says that Mr. Liu provided information
7    regarding Beta Pharma's intention to send Mr. Xie,
8    that's X-i-e, it's pronounced "she", to China to setup
9    a company called Sanda (phonetic) and they discussed
10    compensation for him doing it.  Again, I don't want to
11    get into the specifics of that, Your Honor, because
12    that's part of our defense in the case in Connecticut
13    which I'm going to get into.
14    In addition Mr. Liu provided a mountain of
15    legal advice concerning the ZJBP shares that BP
16    received from ZJBP when it entered into that agreement.
17    Okay.
18    Prior to Mr. Liu's involvement with the
19    company BP had entered into a number of stock purchase
20    agreements with investors and the company.  He wasn't
21    involved in that.
22    But what he was involved in was when ZJBP
23    advised BP that it wasn't going to allow the transfer
24    of those shares to these individuals, Mr. Liu provided
25    substantial advice.  And the documents that I would

10

```
 1      like to provide to Your Honor in camera demonstrate
 2      that advice in addition to other legal services that he
 3      provided.
 4              Notably in September of 2013 Mr. Liu traveled
 5      to Shanghai, China on behalf of Beta Pharma and purpose
 6      of his visit was to attend a board meeting at ZJBP.
 7      Which he did.  And he had a letter from BP, a proxy,
 8      which gave him the right to be in China for BP,
 9      attended these board meetings, and at those board
10      meetings decisions were made about the transfer of ZJBP
11      stock.
12              Again, Mr. Liu says in his papers he only
13      provided piecemeal services, he didn't really do a lot
14      of representation, but that is simply untrue.  It is
15      untrue simply based on the verified complaint and it is
16      untrue if Your Honor reviews the documents that we are
17      asking you to review in camera.
18              Your Honor may recall that we had to file a
19      lawsuit to get back the company's records in June of
20      this year and Your Honor signed a order to show cause
21      with a preliminary hearing date.  Because when I first
22      asked Mr. Liu and the client authorized him to turn
23      over his legal files he refused to do so, wouldn't
24      provide anything.  Said the documents were already in
25      the possession of the client.  Didn't need to get them
```

11

```
 1      from him because they were already on the computer
 2      system of the client which he claims he didn't have
 3      access to.
 4              Anyway Mr. Liu engaged counsel and we did
 5      resolve that particular aspect of the dispute except
 6      that we noticed after we got his file that we had
 7      documents that were not included in his file that he
 8      turned over that clearly involved the representation.
 9              One of them is in the document which we --
10      the certification which we ask Your Honor to consider
11      in camera because it shows that he was directly
12      involved with stock transfer issues.
13              What happens next in or going backward
14      actually is in December of 2012 Mr. Xie the former
15      employee filed a lawsuit in State Court in Connecticut
16      where he is claiming he had an oral contract wherein he
17      was supposed to get 20-percent of BP stock for his
18      efforts.  Other counsel was engaged in that case.  My
19      law firm got involved in it almost two years later
20      after it started and we are involved in that case.
21              In July of this year another lawsuit was
22      started in Connecticut in State Court by five
23      plaintiffs who sued Beta Pharma and Don Zhang claiming
24      that he promised to sell them ZJBP stock, he breached
25      that agreement, and they're seeking damages.  We moved
```

12

1  that case to Federal Court.  I'm involved in that case
2  as well or at least my law firm is.
3          In those two Connecticut cases the attorney
4  representing the plaintiffs is a lawyer named Jonathan
5  Katz (phonetic) from, I actually forget the name of his
6  firm, but Jonathan Katz enters an appearance for the
7  plaintiffs.
8          And frankly we started to get suspicious
9  about the kinds of information that we were beginning
10 to see in those cases because it looked like it had
11 come from someone who is inside.
12         So we served a subpoena on Mr. Liu and asked
13 him to provide all of his contacts, communications with
14 the plaintiffs in those cases, and all of his
15 communications with the plaintiffs' attorneys.
16         And he engaged counsel again and we got a
17 response that's of record in the Connecticut Court,
18 which I provided in our exhibits to the complaint or to
19 our brief rather, which says I can't give you that, I
20 have an attorney-client relationship with those
21 plaintiffs, and I'm in a joint representation with Mr.
22 Katz in those cases.  But he didn't file an appearance
23 of record, okay.  So that's the response to the
24 subpoena that was the genesis of this lawsuit.
25         We then spoke to a witness by the name of Wae

13

1  Uan (phonetic) who is one of the individuals who
2  entered into a stock purchase agreement and he says
3  that Mr. Liu solicited him, he didn't know him, we had
4  several conversations with him, he was clear as day.
5          And lo and behold last Saturday the 20th we
6  get an e-mail fro Mr. Uan that says I was mistaken, I'm
7  recanting my testimony, I don't really remember what
8  happened.  He doesn't say specifically what was
9  different, but he mentions a lawsuit.  We never
10 mentioned a lawsuit to Mr. Uan.  And in fact the
11 affidavit that he submitted isn't on a typical
12 certification with the caption of the case, just an
13 affidavit.
14         What's really curious about this whole
15 situation is he says he doesn't want to be threatened
16 or have what he said used against him, don't know what
17 he's talking about.
18         But one of the documents we discovered in Mr.
19 Liu's file was Mr. Uan's stock purchase agreement, but
20 it had been redacted.  So when he gave it back to us
21 it's redacted.  But we could read it in the light and
22 see that it said Wae Uan.  Very suspicious.  Don't know
23 why anybody would do that.
24         So here we are on the return date of a TRO
25 application and I'm asking Your Honor to enter today

14

```
 1        three restraints.  One is no contacts with the
 2        plaintiffs in the Connecticut cases about the subject
 3        matter of this litigation, no contact with the
 4        plaintiffs' attorney about the subject matter of this
 5        litigation, and no solicitation, no more solicitation.
 6               By the way Mr. Katz he says is also his
 7        attorney in claims that he's going to file against the
 8        law firm.
 9               THE COURT:  Mr. Katz is Mr. Liu's attorney?
10               MR. KOLPEN:  Yes, that's what Mr. Liu says in
11        his response to the subpoena.  So you can see already
12        this wave or web of conflicted representations that Mr.
13        Liu has caused.
14               So if we simply go through the Crowe test
15        here I think Your Honor can see that the relief that
16        we're requesting is justified.  Is there immediate and
17        irreparable harm?  I can't think of anything more
18        immediate and irreparable than the breach of an
19        attorney-client relationship.  How do you repair that?
20               We've cited some cases by analogy from the
21        Third Circuit, Your Honor, that say once the cat's out
22        of the bag you can't put it back in.  Now I don't know
23        how much information has been disclosed but it's clear
24        that this is the same representations he was working on
25        with the client when he represented the client and he
```

15

```
 1        just switched sides and went over to the other side.
 2               Even if there's something about the
 3        attorney-client relationship that a breach of which
 4        wouldn't justify, wouldn't cause immediate harm, case
 5        law and other contexts about confidential information,
 6        there's the National Starch case says that is
 7        irreparable harm when a company's information is being
 8        disclosed when it shouldn't be.  So I think there's a
 9        clear case of irreparable, immediate and irreparable
10        harm here.
11               Now this has gone on for some time, but we
12        just found out about it in August when we got the
13        response to the subpoena.  That's really the first
14        time.  Late August we filed the application and we're
15        here.
16               Moving on to the success of the merits.  Our
17        complaint has nine counts in it, not all of them are
18        relevant to today's application.  But breach of duty of
19        loyalty, breach of duty of confidentiality, breach of
20        contract, attorney misconduct are the ones that we are
21        focusing on.
22               And basically what you need to prove in any
23        of these cases the elements are establishing an
24        attorney-client relationship, saying what a duty of
25        care is, showing that it was breached, and that you
```

16

1   have some damages.  Okay.
2        The case law is clear, and we cited the cases
3   in our brief, that a lawyer owes his client a duty of
4   loyalty and confidentiality.  Okay.  You cannot
5   represent clients in a matter and then switch sides and
6   then represent other clients adverse to your clients.
7   You cannot do that.  That is a breach of loyalty, it is
8   a breach of confidentiality.
9        We also look to the Rules of Professional
10  Conduct here and although the Rules of Professional
11  Conduct in and of themselves don't give you a cause of
12  action, all the cases say that's the standard of care
13  that we need to look at to determine whether any of
14  these causes of action when you sue a lawyer are
15  viable.
16        And so the ones that are relevant here are
17  1.9 you can't have a -- under 1.9(a) you can't
18  represent a client in a matter and then sue him in the
19  same matter, be involved in a lawsuit in the same
20  matter.  That's what's happening here in these two
21  Connecticut cases.
22        Under 1.9(c) you can't use information that
23  you learned in a representation adverse to your client.
24  Ever.  That's what's happening in Connecticut.
25        So the Xie case for example.  We had or

17

1   rather my client received advice from Mr. Liu about Mr.
2   Xie's employment which is relevant to the Connecticut
3   lawsuit and that information now is relevant in
4   Connecticut and the lawyer who gave it to us is in a
5   joint representation with the other side and in an
6   attorney-client relationship with the plaintiff.
7        In the stock case same thing, there is a
8   mountain of evidence that Mr. Liu gave to my client
9   which talks about stock transfers, what to do, because
10  of this situation that was created when the company in
11  China wouldn't allow these transfers to take place.
12        This is settled law also, 1.9, the Rules of
13  Professional Conduct, and the cases interpreting them.
14  This isn't new, this is all settled law.  Clearly we
15  have damages.  We've been sued and information from Mr.
16  Liu has been leaked into those lawsuits.
17        If you balance the equities here, Your Honor,
18  I think plaintiffs have a strong interest in
19  maintaining the confidentiality and the loyalty that
20  their attorney is supposed to be affording them from
21  matters he represented them in but that's not
22  happening.  Obviously there is a strong public policy
23  in protecting attorney-client relationships.
24        Now Your Honor may be thinking hey, how come
25  you didn't bring this in Connecticut?  I just wanted to

18

```
1    briefly address that.  Mr. Liu isn't a member of the
2    Connecticut Bar.  Mr. Liu isn't counsel of record in
3    any of the cases in Connecticut, didn't submit a pro
4    hac vice application.
5         If you look at all of the issue preclusion
6    document doctrines, collateral estoppel, res judicata,
7    entire controversy doctrine, they talk about not
8    fracturing causes of action.
9         Beta Pharma is in New Jersey, the
10   representation occurred in New Jersey, the damages to
11   it occurred in New Jersey, so it filed a damages claim
12   here.  It linked its injunctive relief application with
13   those because if it had to file in Connecticut it would
14   have had to have done them in two courts so then we
15   would have been using the time of three judges and our
16   claims would have been fractured in three.
17        Going back to the Wae Uan affidavit.  I find
18   it really disturbing that Mr. Uan recanted his
19   affidavit when he had so clearly and simply stated what
20   had occurred.  So in addition to the temporary
21   restraints that we are asking Your Honor to impose we
22   would like some limited discovery right now.
23        For example to go to Indianapolis, take the
24   deposition of Mr. Uan to find out what happened here.
25   Why did he recant his affidavit and let's have it on
```

19

```
1    the record and find out what happened.  Mr. Liu is
2    accusing me of witness tampering apparently in his
3    letter.  Well, let's find out exactly what happened.
4         For all of those reasons, Your Honor, I
5    believe that the temporary relief that we request is
6    warranted.
7              THE COURT:  Thank you.  Mr. Liu?
8              MR. LIU:  Your Honor, a temporary restraining
9    order is not supported by the evidence.  First I would
10   like to point out the declaration submitted by Wae Uan.
11   And the plaintiff and the plaintiffs' attorney attached
12   the affidavit in a certified verified complaint.
13        I spoke to Mr. Wae Uan on the declaration.  I
14   pointed out to him the content of the affidavit are
15   false and he said he is going to recant.  And here is
16   the evidence I would like Your Honor to see of the --
17   can I give it to you?
18             THE COURT:  You can continue your argument.
19             MR. LIU:  And Mr. Wae Uan promised that he
20   will --
21             THE COURT:  Here's my question of you.  What
22   was your role with regard to Beta Pharmaceutical?
23             MR. LIU:  My role from July 2011, my role
24   with Beta Pharma is as potential business partner.
25   Currently from 2011 I'm like a 25 to --
```

20

```
 1              THE COURT:  Attorney?
 2         MR. LIU:  -- 25-percent to 40-percent was
 3    legal work.
 4              THE COURT:  You were doing legal work for
 5    them?
 6              MR. LIU:  From July I didn't do legal work.
 7    My general work.  The type of work I'm doing, I'm a
 8    patent lawyer, I do like --
 9              THE COURT:  Did you do legal work for Beta
10    Pharma at any time?
11              MR. LIU:  From December 2011 and November
12    3rd, 2012.  And the legal issues I did with Beta Pharma
13    they were assigned first by the business manager Amy
14    Chang (phonetic).  Then Amy was replaced by another
15    individual called a Gireng Peng, I will spell it,
16    G-i-r-e-n-g P-e-n-g.
17              And from July 2011 to December 2011 and it's
18    all business discussion.  And the plaintiff has tried
19    to get me in to dealing with legal issues on the IOU.
20    They basically don't have the money to pay.  They say
21    okay, take the IOU, help us with this, help us with the
22    critical issue, and after that I will make an
23    investment into the business and we will also pay you a
24    finder's fee for any sales to the institutional
25    investors.
```

21

```
 1              That's when I got into dealing with legal
 2    issues.  And anything I dealt with came directly either
 3    from Amy Cheng or from Gireng Peng.  I don't have free
 4    access to the Beta Pharma database.  Anything, any
 5    documents they want me to work on they send it to me by
 6    e-mail.  The representation is on a per diem basis and
 7    the access is limited to what they want me to look.
 8              Initially I don't like the idea of getting
 9    the IOUs for legal work for them and Don Zhang, one of
10    the plaintiffs, pointed to me that Gireng Peng has
11    already taken IOUs by working full-time for Beta Pharma
12    and at the same time is on the government's full
13    disability payroll.  So the IOU will hide as income
14    from Beta Pharma while he can still be eligible --
15              MR. KOLPEN:  Judge, I object to all of this.
16    What does this have to do with this case?
17              THE COURT:  I want to hear it.  Go ahead, Mr.
18    Liu.
19              MR. LIU:  And at the same time he can collect
20    the disability benefits and the IOU would postpone the
21    payment to the time when the disability benefit runs
22    out.
23              According to Don it's a win -- he said it's a
24    win-win situation for Gireng to get money from the
25    government and the -- my payment to him will be made
```

22

```
 1    when the government benefit runs out.
 2           And he's just trying to use this case to show
 3    his IOU is credible, he has credibility.  And with his
 4    promise of making investment into the generic drug
 5    business and with his promise of full payment of the
 6    IOU on the critical situation improves then I decided
 7    to take on the limited legal work for the company to
 8    save them money because I'm the only one he can find to
 9    take the IOU.  I don't think that Mr. Kolpen is going
10    to take that kind of payment.
11           And my work generated the sale of a Beta
12    Pharma share to a institutional investor in China and
13    the critical issue was resolved then the plaintiff
14    reneged on all of the promises.
15           So that's why we broke up the relationship
16    and we are at adversarial position to each other.  And
17    he broke all his promises to me.  I didn't get any
18    payment during the representation.  I paid the -- I
19    have out-of-pocket expenses I paid on his behalf, I
20    have the time accumulation.  My service was an IOU.
21    Everything was an IOU.
22           He had simply decided not to accept my phone
23    calls around the end of October 2011.  I was pretty
24    depressed at that time.  I did all the work, I made a
25    payment for him, and I saw the critical issue for Beta
```

23

```
 1    Pharma was the risk of a limb and a finger, literally.
 2           And the plaintiff talked about the trip to
 3    China in September 2012.  And Don was scared to go to
 4    China himself because he believed someone will take a
 5    finger or an arm of his if he go.  So he begged me to
 6    go.  He said, Lance, you go on my behalf so you didn't
 7    have any dealing with them, they are less likely to cut
 8    your finger.
 9           MR. KOLPEN:  Your Honor, we're hearing
10    attorney-client communications.  I don't think that's
11    proper.
12           THE COURT:  What attorney-client
13    communications?
14           MR. KOLPEN:  Between Don Zhang the President
15    of the company and Mr. Liu his lawyer.
16           MR. LIU:  He's accusing me of misconduct.
17           THE COURT:  Sorry?
18           MR. LIU:  Don is accusing me of misconduct.
19    I have to defend myself.  I have to tell the truth of
20    what happened.  I was the one --
21           THE COURT:  I'm going to hear it, go ahead.
22           MR. LIU:  Okay.
23           THE COURT:  Let's finish it up though.
24           MR. LIU:  Excuse me?
25           THE COURT:  Let's move it along.
```

24

```
 1              MR. LIU:  Oh, yeah, yeah, yeah.  I did went
 2    to China.  I was talking to one of the board members.
 3    One of the board members invited me to dinner,
 4    privately, just one-on-one.  During the dinner he told
 5    me, Lance, you know how much it will cost to cut
 6    someone's finger?  I said I don't know.  He said 20,000
 7    yen.  It's an implied threat to me at the time so I
 8    left China and came back.  Don even called me when I
 9    was in China.  He said, Lance, do you still have nine
10    -- ten fingers?  And after that --
11              THE COURT:  Let's --
12              MR. LIU:  Okay.
13              THE COURT:  -- get to what we're here for
14    today.
15              MR. LIU:  Yup.
16              THE COURT:  All right?
17              MR. LIU:  Okay.
18              THE COURT:  We're here today to decide
19    whether or not I should enter an order that has certain
20    temporary restraints prohibiting you from taking
21    certain action, all right?
22              The three things that they're asking for are
23    as follows.  They're asking me to prohibit you from
24    having any solicitation of any person in bringing a
25    claim against Beta Pharma or Beta Scientific or Mr.
```

25

```
 1    Zhang.  Let me hear, do you have an objection to that?
 2              MR. LIU:  I did not --
 3              THE COURT:  Okay.
 4              MR. LIU:  -- solicit it.
 5              THE COURT:  Okay.
 6              MR. LIU:  I did not solicit -- I did not
 7    solicit it.
 8              THE COURT:  That was a yes or no.  Do you
 9    have an objection?  You say you do not have an
10    objection.
11              MR. LIU:  No, I did not finish.  I said I did
12    not --
13              THE COURT:  I did not is a no.
14              MR. LIU:  I did not solicit it.
15              THE COURT:  But I'll let you finish.
16              MR. LIU:  Okay.
17              THE COURT:  Go ahead.
18              MR. LIU:  Okay.
19              THE COURT:  You seem to want to, go ahead.
20              MR. LIU:  Yeah.  Based on the some relation
21    of perjury by the plaintiff and the --
22              THE COURT:  That's not what I asked you.  I
23    asked a very simple question.  Do you have any
24    objection to me entering an order which would bar you
25    from soliciting any person or entity from bringing a
```

26

```
 1      claim against Beta -- Beta Pharma or Beta Scientific or
 2      Mr. Zhang?
 3                  MR. LIU:  If it doesn't include me, fine.
 4                  THE COURT:  I'm sorry?
 5                  MR. LIU:  If it does not include me.
 6                  THE COURT:  Well it is going to --
 7                  MR. LIU:  If I file a counterclaim.
 8                  THE COURT:  I'm not talking about
 9      counterclaims today.
10                  MR. LIU:  Okay.
11                  THE COURT:  You're a lawyer.  I want you to
12      listen closely.  All right?  I think my question is
13      very clear and unambiguous.  The first thing they're
14      asking for is an order barring you from soliciting any
15      person or entity from bringing a claim against Beta
16      Pharma, Beta Scientific or Mr. Zhang.  Now, do you have
17      an objection to that this morning?
18                  MR. LIU:  No.
19                  THE COURT:  Okay.
20                  MR. LIU:  No, that's fine.
21                  THE COURT:  The second thing they're asking
22      for is an order barring you from communicating directly
23      or indirectly with Dojong (phonetic) Xie about the Xie
24      action or any plaintiff in the buyer's action, this
25      action, about the buyer's action.  Do you have any
```

27

```
 1      objection to that?
 2                  MR. LIU:  (No audible response).
 3                  THE COURT:  You're shaking your head no.
 4                  MR. LIU:  I don't have objection to the -- to
 5      contact with them on the --
 6                  THE COURT:  Okay.
 7                  MR. LIU:  -- on the litigations that's going
 8      on.  But with regard to Mr. Xie.  There is an ongoing
 9      like I'm helping him to do the mortgage modification.
10      It's in the process.
11                  THE COURT:  A separate mortgage modification,
12      what, on his personal residence or?
13                  MR. LIU:  Yes, yes.
14                  THE COURT:  That's not what's being barred
15      here.
16                  MR. LIU:  Yeah, okay.
17                  THE COURT:  All right.
18                  MR. LIU:  That's fine.  I don't have a
19      problem.
20                  THE COURT:  And the last thing they're asking
21      for is that you be barred from communicating directly
22      or indirectly with Jonathan Katz regarding the Xie
23      action or the buyer's action.
24                  MR. LIU:  Oh, yeah, that's fine.
25                  THE COURT:  So you would be barred from
```

28

1   speaking to Mr. Katz about that Xie action or about
2   this particular action.  You can talk to him about
3   other things --
4               MR. LIU:  Okay, fine.
5               THE COURT:  -- but not about these actions.
6   Any objection to that?
7               MR. LIU:  No.  No, I don't have any
8   objection.
9               THE COURT:  Well that's very easy then.
10  Anything else?
11              MR. KOLPEN:  Your Honor, we'd like to have a
12  small bit of discovery right now before an answer.
13  We'd specifically like to depose Mr. Uan while this
14  issue is still fresh.  He's in Indianapolis.  And so
15  we'd like to do that deposition now.
16              THE COURT:  You could have a seat, Mr. Liu.
17  Okay, in this matter plaintiff Beta Pharma,
18  Incorporated is a drug discovery company specializing
19  in oncological drugs.
20              Plaintiff Beta Pharma Scientific,
21  Incorporated is a contract research organization that
22  supplies ready-made and custom synthesized chemicals
23  for the pharmaceutical and biotechnology research and
24  development community.
25              Plaintiff Don Zhang is the CEO, President,

29

1   and shareholder of Beta Pharma and Scientific, Beta
2   Scientific.
3               Defendant Liu is an attorney who is licensed
4   to practice in New Jersey.  Mr. Liu previously
5   represented both Beta Pharma and Beta Pharma Scientific
6   from July 2011 until approximately November of 2012.
7   And the Court did in fact this morning inquire of Mr.
8   Liu if he did represent Beta and he did indicate to the
9   Court that he had.
10              Both parties entered or the parties entered
11  into a mutual non-disclosure and non-use agreement
12  which provided that Mr. Liu would not disclose Beta
13  Pharma's confidential information.  Subsequently Liu
14  provided comprehensive services in the form of
15  attorney's services to both Beta Pharma and Beta Pharma
16  Scientific.
17              Liu also had a Beta Pharma e-mail address and
18  billed Beta Pharma in excess of $126,000 for legal
19  services provided between July 2011 and December 2012.
20  During the representation Mr. Liu received access to
21  Beta Pharma's and Beta Scientific's -- Beta Pharma
22  Scientific's corporation information.
23              Mr. Liu represented Beta Pharma in a number
24  of matters related to this case including sending
25  employee Dojong Xie to China to form a drug discovery

30

```
 1        company named Sanda and in connection with the sale of
 2        Zhezang Beta Pharma Company, Limited --
 3                MR. LIU:  Your Honor --
 4                THE COURT:  -- ZJBP stock.
 5                MR. LIU:  Your Honor --
 6                THE COURT:  Mr. Liu, I gave you full
 7        opportunity to speak.  I'm going to ask you to sit
 8        quietly as I render my decision, okay?  Thank you.
 9                In the verified complaint plaintiff alleges
10        that defendant now represents parties adverse to Beta
11        Pharma, Beta Pharma Scientific, and Mr. Zhang in two
12        specific matters in which he previously represented
13        Beta Pharma, Beta Pharma Scientific, and Mr. Zhang.
14        Those matters are the Xie's lawsuit against Beta
15        Pharma, Beta Pharma Scientific, and Mr. Zhang and the
16        buyers of ZJBP stock who are suing Beta Pharma.
17                In the first allegation plaintiffs assert
18        that the defendant -- that after defendant left Beta
19        Pharma plaintiffs became suspicious that Liu was
20        providing information to Xie to assist in the Xie
21        action.
22                Plaintiffs subpoenaed Mr. Liu.  Although Liu
23        is not admitted to practice law in Connecticut and has
24        not entered an appearance in the Xie action there, in
25        response to the subpoena Liu represented to the
```

31

```
 1        Superior Court of Connecticut that he should not have
 2        to produce documents regarding his provision of
 3        information to Xie and/or Xie's attorney Jonathan Katz
 4        because he has an attorney-client relationship with Xie
 5        relating to the claims in the Xie action because with
 6        Katz he is jointly representing Xie in the Xie action
 7        and because he is represented by Xie's lawyer Katz.
 8                It's claimed by the plaintiffs that defendant
 9        never requested a conflict waiver from the plaintiffs
10        and plaintiffs have not consented to Liu's
11        representation of Xie.
12                Plaintiffs assert that the defendant is
13        representing and advising Xie in a lawsuit adverse to
14        plaintiffs and is using information which was
15        privileged and confidential in his representation in
16        the other matter.
17                In the second allegation plaintiffs allege
18        that Liu was soliciting buyers of ZJBP stock to sue
19        plaintiffs.  Plaintiffs also assert that defendant
20        introduced these buyers to Katz, the same attorney who
21        represents Xie in the other matter.  Plaintiffs assert
22        that during representation of plaintiffs Liu provided
23        confidential legal advice to plaintiffs about the sale
24        of ZJBP stock.
25                Liu has represented again to the Superior
```

32

1   Court of Connecticut that he should not have to produce
2   documents and testify regarding his provision of
3   information to buyers because he has an attorney-client
4   relationship with the buyers relating to the claims in
5   the buyer's action, he is jointly representing the
6   buyers in the buyer's action, and he is represented by
7   Katz.
8           Defendant also asserts he could not provide
9   plaintiffs with information regarding ZJBP because he
10  has a confidentiality agreement with ZJBP that
11  precludes him from disclosing communications between
12  him and ZJBP.
13          Plaintiffs further assert that they sought to
14  recover their legal files from defendant and which he
15  was initially uncooperative, but a lawsuit was
16  initiated and subsequently Mr. Liu provided some
17  information but withheld other information.
18          We're here this morning on plaintiffs'
19  application for a temporary restraint in connection
20  with and injunctive relief in this particular matter.
21  The standards with regard to issuing a temporary
22  restraint are set forth in Crowe v. DeGioia at 90 N.J.
23  126 (1982).
24          They include the Court considering whether or
25  not there would be immediate and irreparable harm lest

33

1   the temporary restraints are issued, whether or not
2   plaintiffs have a settled legal right to the temporary
3   restraint, whether or not there is a likelihood, a
4   reasonable likelihood of success on the merits, and
5   then at the balance of equities favor the imposition of
6   the temporary restraints.
7           In this particular case I have no problem
8   finding that under the standards set forth in Crowe v.
9   DeGioia that the standard with regard to the issuance
10  of temporary restraints in this case are satisfied.
11          Mr. Liu was the attorney for Beta Pharma,
12  Incorporated and Beta Pharma Scientific, Incorporated
13  and now finds himself in an adversarial relationship
14  with those entities and there has been a showing to the
15  Court that Mr. Liu has used privileged and confidential
16  information in connection with his representation in
17  other matters and in connection with his controversies
18  with plaintiffs here.
19          Additionally Mr. Liu himself has no objection
20  to the temporary restraints, the specific relief sought
21  by plaintiffs for temporary relief in this particular
22  matter.
23          So for those reasons the Court will grant
24  plaintiffs' application for temporary restraints.
25  Going to execute the order to show cause today, make it

34

```
1    returnable let's see --
2                    (Pause)
3              THE COURT:  I'm going to make it returnable
4    January 26th at 9:00 because of the request for some
5    limited discovery in this matter.  How much time do you
6    need to serve interrogatories, Mr. Kolpen?
7              MR. KOLPEN:  I could serve interrogatories by
8    next week, Your Honor.
9              THE COURT:  All right.  I'm going to give you
10   two weeks so that will give it -- today's the 26th --
11   so interrogatories are to be served by October 10th.
12   Are you asking for a shortened time period for the
13   answers?
14             MR. KOLPEN:  Yes, Your Honor.
15             THE COURT:  Any objection, Mr. Liu?
16             MR. LIU:  Yes, Your Honor.  I need to prepare
17   the counterclaims and third party claims.
18             THE COURT:  Well you can do that.  We're
19   talking about the preliminary injunctive relief that is
20   being sought here.  So you can still file a
21   counterclaim.  That's not going to preclude your
22   opportunity to serve interrogatories with regard to the
23   specific relief sought by plaintiffs here.  So why do
24   you need?
25             MR. LIU:  It is a disadvantage to me if we --
```

35

```
1              THE COURT:  I'm sorry.  You have to slow down
2    a little bit.
3              MR. LIU:  Okay.
4              THE COURT:  And speak a little louder.
5              MR. LIU:  Okay.  It will be disadvantage to
6    defendant.
7              THE COURT:  It will be a --
8              MR. LIU:  Once a preliminary order is entered
9    then I will be fighting a uphill battle.
10             THE COURT:  Say that again.
11             MR. LIU:  It will be, well, it will be unfair
12   to the defense.
13             THE COURT:  Why?
14             MR. LIU:  Because I need to be fully
15   prepared.  For example if there is a assertion of
16   perjury issue I do not have time to fully investigate.
17             THE COURT:  We're not talking about that
18   today.  We're talking about the application for
19   injunctive relief.  That's what we're talking about
20   coming back on in January.  The other matters, they'll
21   be handled in a different fashion.
22             All we're talking about today is whether or
23   not the plaintiffs will ultimately be entitled to the
24   preliminary injunction that they're seeking with regard
25   to disclosures that you made and communications that
```

36

```
1    you've had.  All right, I'm going to give you 45 days
2    to answer.
3                MR. LIU:  Okay.
4                THE COURT:  So October 10th.
5                MR. LIU:  Okay.  Thank you, Your Honor.
6                THE COURT:  November 10th.  So November 25th
7    --
8                MR. KOLPEN:  Your Honor, would document
9    demands be on the same schedule?
10               THE COURT:  You have document demands in your
11   order for the same date as the interrogatories.
12               MR. KOLPEN:  That will be fine.
13               THE COURT:  All right.  And I'll give you
14   until December 23rd to finish any depositions with
15   regard to this -- the issues in the claim for
16   injunctive relief.
17               MR. KOLPEN:  Thank you.
18               THE COURT:  We're going to serve Mr. Liu with
19   a copy of the order today.  You still have an
20   opportunity to file opposition papers in connection
21   with the preliminary injunction.  I'm going to give you
22   30 days from today to do that.
23               MR. LIU:  Thank you, Your Honor.  Will that
24   extend the answer date?
25               THE COURT:  Say that again?
```

37

```
1                MR. LIU:  The answer date.  Will the answer
2    date be extended too?
3                THE COURT:  The what?
4                MR. LIU:  The answer.
5                THE COURT:  The answer, yes.
6                MR. LIU:  Yes, the answer.
7                THE COURT:  Three days from today.
8                MR. LIU:  Okay.
9                          (Pause)
10               THE COURT:  Okay, just have a seat in the
11   back and Patrice will make a copy of the order to show
12   cause ...
13                          *  *  *  *  *
14
15
16
17
18
19
20
21
22
23
24
25
```

38

### C E R T I F I C A T I O N

       I, JANET D. PERSONS, the assigned
transcriber, do hereby certify the foregoing transcript
of proceedings on compact disk, playback number 9:10:08
to 9:58:42, is prepared in full compliance with the
current Transcript Format for Judicial Proceedings and
is a true and accurate compressed transcript of the
proceedings as recorded, and to the best of my ability.

/s/ Janet D. Persons
JANET D. PERSONS     AOC # 575
J&J COURT TRANSCRIBERS, INC.   DATE:  October 3, 2014