**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SHANSHAN SHAO, HONGLIANG CHU, QIAN LIU, SONG LU, AND XINSHAN KANG, Plaintiffs,<br><br>v.<br><br>BETA PHARMA, INC., AND DON ZHANG, Defendants. | Civil Action No. 3:14CV-01177 (CSH)<br><br>JULY 22, 2016 |

**SECOND AMENDED COMPLAINT**

**FIRST COUNT:  (Breach of Contract Against Defendant BP)**

1.      Beta Pharma, Inc., ("BP") is a privately owned Delaware corporation with a principal place of business in Branford, Connecticut, engaged in research, development and marketing of pharmaceuticals.

2.      At the time of the stock sales alleged herein Don Zhang ("Zhang") was a citizen and resident of the State of Connecticut who has done business in this state, made contracts to be performed here, and committed tortious acts in Connecticut that have injured plaintiffs inside and outside Connecticut such that the court has jurisdiction over him pursuant to

Connecticut General Statutes Sec. 52-59b ; he represents to the Connecticut Secretary of State and the public that his current residence address is 5 Vaughn Drive, Suite 106, Princeton, N.J. 08540 .

3.     At all relevant times, defendant Zhang has been the majority stockholder and President of BP.

4.     In approximately 2002 and 2003 BP scientists invented, patented and synthesized Icotinib, a molecule which showed promise as a treatment for non-small cell lung cancer; BP's development work on Icotinib continued thereafter.

5.     In approximately 2002 Beta Pharma joined with other investors to form a joint venture to develop, test and market Icotinib in the People's Republic of China ("China").

6.     The joint venturers formed Zhejiang Beta Pharma Co. Ltd., ("ZBP"), a privately owned corporation organized under the laws of China.

7.     BP contributed the patent rights to Icotinib to the joint venture and received in exchange a 45% interest in ZBP.

8.     Defendant Zhang is and has been Vice-President of ZBP and a director thereof.

9.     In 2010 and 2011, defendant BP, acting by Zhang, who was also Vice President of ZBP, sold percentage interests in ZBP, represented by shares in ZBP, to plaintiffs herein as follows:

(a)   Hongliang Chu purchased 45,310 shares, or 0.1% of all stock in ZBP; Chu sold 22,655 shares back to BP and now owns 22,655 shares;

(b)   Shanshan Shao purchased 22,655 shares, or 0.05% of all stock in ZBP;

(c)   Song Lu purchased 105,620 shares, or 0.2331% of all stock in ZBP;

(d)   Qian Liu purchased 100,000 shares, or 0.2207% of all stock in ZBP;

(e)   Xinshan Kang purchased 90,000 shares, or 0.2% of all stock in ZBP.

10.   The sales and purchases of ZBP stock were evidenced by written contracts executed by defendant Zhang on behalf of defendant BP in Connecticut, and sale proceeds were paid to BP or Zhang in Connecticut.

11.   The contracts provided that defendant BP would hold plaintiffs' shares under the name of BP until defendants could cause the shares to be registered in the purchaser's name on the books of ZBP.

12.   Defendants failed and refused to cause plaintiffs' shares to be registered on the books of ZBP.

13.   ZBP developed Icotinib as a safe and effective treatment for non-small cell lung cancer, and now markets Icotinib in China as a prescription drug under the brand name "Conmana."

3

14.     In or about July, 2013, defendant Zhang represented to plaintiffs that ZBP had been valued at $600 million.

15.     ZBP is now in the process of making an initial public offering of its shares in China, and becoming a public company in China.

16.     In or about July, 2013, defendant Zhang, acting on behalf of defendant BP and ZBP, represented to plaintiffs that he would cause BP to repurchase plaintiffs' shares of ZBP based on the $600 million valuation price, and in proportion to their percentages of share ownership, such that a plaintiff who held 0.1% of ZBP would receive $600,000, and defendant BP, acting by Zhang, therefore offered to repurchase plaintiffs' shares at that price in or around July, 2013.

17.     Plaintiffs accepted defendants' offers, based upon and contingent upon their receipt of the full agreed price for their shares.

18.     Defendants have made partial payments to some plaintiffs, but have failed and refused to pay the balances due.

19.     Defendant BP has breached its contracts with plaintiffs by failing to register their ownership interests with ZBP, and by failing to pay the agreed price to plaintiffs to repurchase plaintiffs' shares, and has thereby damaged plaintiffs, and cost them attorney's fees and costs

of action, which plaintiffs are entitled to recover by law and pursuant to the share purchase contracts they signed.

20.   Defendant's breach of contract was willful, wanton and malicious, and in bad faith, in one or more of the following respects:

(a) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by approximately 10% for taxes defendant allegedly paid to the government of China, even though defendant never sold plaintiffs' shares of ZBP in China;

(b) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by about "35%" for "estimated USA corporate taxes" even though plaintiffs, as individuals were not liable for USA corporate taxes and had no obligation to pay defendants' corporate taxes, if any, on the transaction;

(c) in that defendant misrepresented that it was deducting "35%" for corporate taxes when it actually took a deduction of 39% of the net after "China taxes", and failed to advise plaintiffs that it was entitled to a foreign tax credit in the USA for taxes it paid in China;

(d) in that defendant misrepresented to plaintiffs that they were liable to pay "10% bonus shares to ZJBP (sic) employee from all initial share holders" and arbitrarily reduced their shareholdings by 10% even though plaintiffs were not initial shareholders in that they purchased their shares from Beta Pharma rather than receiving them from ZBP;

(e) in that defendants made the misrepresentations in (a) through (d) above wholly without justification, in an effort to fabricate an excuse to reduce the payout to plaintiffs in an effort to induce them to accept approximately 49% of what they were rightfully due;

(f) in that defendants failed and refused to pay the minimum "undisputed amounts" they conceded that plaintiffs were due;

(g) in that defendants continue to derive economic benefit from plaintiffs' shares, for which benefits they have not paid; and

(h) in that defendants have a long history of entering into contracts, wrongfully taking benefits therefrom, and then breaching the contracts, and their breaches with respect to the Shao plaintiffs are part of a pattern and practice of willfully breaching contracts for the purpose of wrongly taking advantage of others with whom they do business.

**SECOND COUNT:  (Breach of Contract Against Defendant BP, Seeking Expectation Damages)**

1. – 18.      The allegations of Paragraphs 1 through 18 of the First Count are incorporated herein by reference as if fully realleged.

19.    As a result of defendant BP's failure and refusal to pay the agreed price, plaintiffs continue to own their shares.

20.    The $600 million valuation for ZBP is now outdated and too low, in part because ZBP has entered into a joint venture with Amgen to market the Amgen pharmaceutical Vectibix, in part because ZBP has continued to grow and improve its profitability and future prospects for profitability, and in part because the initial public offering will greatly increase the capitalization and market value of ZBP.

21.    Defendant has breached its contracts with plaintiffs in that it has failed to cause plaintiffs to be registered as stockholders on the books of ZBP, and in that it has failed to pay the previously agreed price for plaintiffs' shares, and cost them attorney's fees and costs of action, which plaintiffs are entitled to recover by law and pursuant to the share purchase contracts they signed.  .

22.    Defendant's breach of contract was willful, wanton and malicious, and in bad faith, in one or more of the following respects:

(a) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by approximately 10% for taxes defendant allegedly paid to the government of China, even though defendant never sold plaintiffs' shares of ZBP in China;

(b) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by about "35%" for "estimated USA corporate taxes" even though plaintiffs, as

individuals were not liable for USA corporate taxes and had no obligation to pay defendants' corporate taxes, if any, on the transaction;

(c) in that defendant misrepresented that it was deducting "35%" for corporate taxes when it actually took a deduction of 39% of the net after "China taxes", and failed to advise plaintiffs that it was entitled to a foreign tax credit in the USA for taxes it paid in China;

(d) in that defendant misrepresented to plaintiffs that they were liable to pay "10% bonus shares to ZJBP (sic) employee from all initial share holders" and arbitrarily reduced their shareholdings by 10% even though plaintiffs were not initial shareholders in that they purchased their shares from Beta Pharma rather than receiving them from ZBP;

(e) in that defendants made the misrepresentations in (a) through (d) above wholly without justification, in an effort to fabricate an excuse to reduce the payout to plaintiffs in an effort to induce them to accept approximately 49% of what they were rightfully due;

(f) in that defendants failed and refused to pay the minimum "undisputed amounts" they conceded that plaintiffs were due;

(g) in that defendants continue to derive economic benefit from plaintiffs' shares, for which benefits they have not paid; and

(h) in that defendants have a long history of entering into contracts, wrongfully taking benefits therefrom, and then breaching the contracts, and their breaches with respect to the Shao

plaintiffs are part of a pattern and practice of willfully breaching contracts for the purpose of wrongly taking advantage of others with whom they do business.

23.    Plaintiffs have been damaged, and seek damages equal to the fair market value of their stock positions as of the date of trial in this case, or the date of their actual repurchase, whichever first occurs, plus reasonable attorney's fees and costs of action, as provided by contract, and as damages for defendants' willful breach.

**THIRD COUNT:  (Breach of Contract Against Defendant Zhang)**

1.-11.   The allegations of Paragraphs 1 through and including 11 of the First Count of the Complaint are incorporated herein by reference as if fully realleged.

12.    Defendant Zhang caused one or more of the plaintiffs to make payment for that plaintiff's shares into defendant Zhang's personal bank account in Connecticut.

13.    ZBP developed Icotinib as a safe and effective treatment for non-small cell lung cancer, and now markets Icotinib in China as a prescription drug under the brand name "Conmana."

14.    In or about July, 2013, defendant Zhang advised plaintiffs that ZBP had been valued at $600 million.

15.    ZBP is now in the process of making an initial public offering of its shares in China, and becoming a public company in China.

9

16.     In July, 2013, defendant Zhang offered to repurchase plaintiffs' shares for a price equal to $600 million times their percentage interest in ZBP, or to cause BP to make such purchase.

17.     Plaintiffs accepted defendant Zhang's offer.

18.     Defendant Zhang repaid one or more of the plaintiffs the principal amount of the initial investment (referred to as a "primary") from the Beta Pharma corporate bank account, even though Zhang initially took plaintiff's money into his individual account.

19.     At all relevant times Defendant Zhang has exercised complete domination and control over the business and affairs of defendant BP, has operated BP without meaningful participation by any Board of Directors, has commingled BP's funds with his own funds, has exercised dominion and control over the funds raised by the stock sales alleged herein, and has treated BP as his alter ego such that the corporate form of BP should be disregarded.

20.     Defendant Zhang failed and refused to pay, or cause payment of, the agreed price for plaintiffs' shares.

21.     Defendant Zhang breached his contract with plaintiffs in one or more of the following respects:

        a.      In that he caused one or more plaintiffs to pay him personally for shares which belonged to BP;

b.      in that he represented that he would transfer plaintiffs' shares to plaintiffs' names on the books of ZBP, or cause their ownership to be recorded on the books of ZBP, when he knew that he would not or could not do this;

c.      in that he failed and refused to register plaintiffs' shares in plaintiffs' names on the books and records of ZBP;

d.      in that he represented to plaintiffs that he would repurchase, or cause BP to repurchase their shares for a price equal to $600 million times their percentage interest in ZBP, when he knew and intended that he would only pay plaintiffs less than half of what he had promised; and

e.      in that he failed and refused to purchase their shares for the agreed price.

22.      Defendant's breach of contract was willful, wanton and malicious, and in bad faith, in one or more of the following respects:

(a) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by approximately 10% for taxes defendant allegedly paid to the government of China, even though defendant never sold plaintiffs' shares of ZBP in China;

(b) in that defendant misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by about "35%" for "estimated USA corporate taxes" even though plaintiffs, as

individuals were not liable for USA corporate taxes and had no obligation to pay defendants' corporate taxes, if any, on the transaction;

(c) in that defendant misrepresented that it was deducting "35%" for corporate taxes when it actually took a deduction of 39% of the net after "China taxes", and failed to advise plaintiffs that it was entitled to a foreign tax credit in the USA for taxes it paid in China;

(d) in that defendant misrepresented to plaintiffs that they were liable to pay "10% bonus shares to ZJBP (sic) employee from all initial share holders" and arbitrarily reduced their shareholdings by 10% even though plaintiffs were not initial shareholders in that they purchased their shares from Beta Pharma rather than receiving them from ZBP;

(e) in that defendants made the misrepresentations in (a) through  (d) above wholly without justification, in an effort to fabricate an excuse to reduce the payout to plaintiffs in an effort to induce them to accept approximately 49% of what they were rightfully due;

(f) in that defendants failed and refused to pay the minimum "undisputed amounts" they conceded that plaintiffs were due;

(g) in that defendants continue to derive economic benefit from plaintiffs' shares, for which benefits they have not paid; and

(h) in that defendants have a long history of entering into contracts, wrongfully taking benefits therefrom, and then breaching the contracts, and their breaches with respect to the Shao

plaintiffs are part of a pattern and practice of willfully breaching contracts for the purpose of wrongly taking advantage of others with whom they do business.

23.     Defendant Zhang has breached its contracts with plaintiffs by failing to register their ownership interests with ZBP, and by failing to pay the agreed price to plaintiffs to repurchase plaintiffs' shares, and has thereby damaged plaintiffs and has cost them attorney's fees and costs of action, which plaintiffs are entitled to recover by law and pursuant to the share purchase contracts they signed. .

**FOURTH COUNT:  (Breach of Contract Against Defendant Zhang, with Claim for Expectation Damages)**

1.- 23.   The allegations of Paragraphs 1 through 22 of the Third Count are incorporated by reference as if fully realleged.

24.     The $600 million valuation for ZBP is now outdated and too low, in part because ZBP has entered into a joint venture with Amgen to market the Amgen pharmaceutical Vectibix, in part because ZBP has continued to grow and improve its profitability and future prospects for profitability, and in part because the initial public offering will greatly increase the capitalization and market value of ZBP.

25.     As a result of defendant Zhang's breaches of contract as alleged, plaintiffs have been damaged, in that they now own shares which are not registered in their names on the

records of ZBP, in that they do not have a market for their shares unless defendant

repurchases them, in that they are entitled to the current fair market value of their ZBP shares,

and in that they have been deprived of the current value of their shares of ZBP, and their rights

to participate in the ZBP initial public offering, and has cost them attorney's fees and costs of

action, which plaintiffs are entitled to recover by law and pursuant to the share purchase

contracts they signed.

**Fifth Count:  (Breach of Fiduciary Duty against Defendant Zhang)**

1.    Beta Pharma, Inc., ("BP") is a privately owned Delaware corporation with a

principal place of business in Branford, Connecticut, engaged in research, development and

marketing of pharmaceuticals.

2.    At the time of the stock sales alleged herein Don Zhang ("Zhang") was a citizen

and resident of the State of Connecticut who has done business in this state, made contracts

to be performed here, and committed tortious acts in Connecticut that have injured plaintiffs

inside and outside Connecticut such that the court has jurisdiction over him pursuant to

Connecticut General Statutes Sec. 52-59b ; he represents to the Connecticut Secretary of

State and the public that his current residence address is 5 Vaughn Drive, Suite 106,

Princeton, N.J. 08540 .

3.    At all relevant times, defendant Zhang has been the majority stockholder and

President of BP.

4.    In approximately 2002 and 2003 BP scientists invented, patented and

synthesized Icotinib, a molecule which showed promise as a treatment for non-small cell lung

cancer; BP's development work on Icotinib continued thereafter.

5.    In approximately 2002 Beta Pharma joined with other investors to form a joint

venture to develop, test and market Icotinib in the People's Republic of China ("China").

6.    The joint venturers formed Zhejiang Beta Pharma Co. Ltd., ("ZBP"), a privately

owned corporation organized under the laws of China.

7.    BP contributed the patent rights to Icotinib to the joint venture and received in

exchange a 45% interest in ZBP.

8.    Defendant Zhang is and has been Vice-President of ZBP and a director thereof.

9.    In 2010 and 2011, defendant Zhang, who was acting as President of BP and also

Vice President of ZBP, sold percentage interests of BP's ownership interest in ZBP,

represented by shares in ZBP, to plaintiffs herein as follows:

    (a)    Hongliang Chu purchased 45,310 shares, or 0.1% of all stock in ZBP; Chu sold 22,655 shares back to BP and now owns 22,655 shares;

    (b)    Shanshan Shao purchased 22,655 shares, or 0.05% of all stock in ZBP;

    (c)    Song Lu purchased 105,620 shares, or 0.2331% of all stock in ZBP;

    (d)    Qian Liu purchased 100,000 shares, or 0.2207% of all stock in ZBP;

    (e)    Xinshan Kang purchased 90,000 shares, or 0.2% of all stock in ZBP.

10.    The sales and purchases of ZBP stock were evidenced by written contracts executed by defendant Zhang on behalf of defendant BP in Connecticut, and some or all of the sale proceeds were paid into Zhang's personal account in Connecticut.

11.    The contracts provided that defendant BP would hold plaintiffs' shares under the name of BP until defendants could cause the shares to be registered in the purchaser's name on the books of ZBP.

12.    Defendant Zhang failed and refused to cause plaintiffs' shares to be registered on the books of ZBP.

13.    ZBP developed Icotinib as a safe and effective treatment for non-small cell lung cancer, and now markets Icotinib in China as a prescription drug under the brand name "Conmana."

14.    In or about July, 2013, defendant Zhang represented to plaintiffs that ZBP had been valued at $600 million.

15.    ZBP is now in the process of making an initial public offering of its shares in China, and becoming a public company in China.

16.    At all relevant times, defendant Zhang has been the President, director and principal stockholder of Beta Pharma, and a Vice President and director of ZBP, and is listed as an inventor of icotinib, and was one of the initial participants in the joint venture giving rise to ZBP, and has had full and complete access to all corporate, financial and scientific information concerning Beta Pharma and similar access to all corporate, financial and scientific information concerning ZBP, and thereby has had at all relevant times superior knowledge and expertise to plaintiffs concerning ZBP shares, BP, and the relationships between BP and ZBP. Further, defendant Zhang has acted  as plaintiffs' agent and stockbroker, offering to them and then bringing about their purchase of ZBP shares, and continues to act as their agent and custodian of their shares; and is solely responsible for providing a market by which plaintiffs can sell their shares; and simultaneously represents the interests of BP, ZBP and plaintiffs for the purpose of assisting them in acquiring, holding and disposing of their shares, and remitting cash proceeds to the appropriate party at the appropriate time, and was therefore involved in the purchase and sale of unregistered securities in non-exempt transactions in the United

States and in Connecticut. In addition, Zhang has at all times exercised complete domination and control over the business and affairs of defendant BP, has operated BP without meaningful participation by any Board of Directors, has commingled BP's funds with his own funds, has exercised dominion and control over the funds raised by the stock sales alleged herein, and has treated BP as his alter ego such that the corporate form of BP should be disregarded.

17.     Defendant Zhang marketed ZBP shares to plaintiffs and others pursuant to short and simple contracts, and did not make any written disclosure of any financial, corporate or scientific information concerning ZBP or BP, with the result that persons who purchased the ZBP shares, including plaintiffs, did so because they trusted Don Zhang, and purchased in reliance on his superior knowledge and expertise, and his honesty and integrity, and the honesty and integrity of the written and oral representations he made to plaintiffs, individually and on behalf of BP and ZBP.

18.     After plaintiffs purchased their ZBP shares they became ZBP stockholders of a corporation in which Zhang was an officer and director, under circumstances where Zhang had virtually total control over the liquidity of their investment, in that they could not convert their ZBP shareholdings to cash without Zhang's express agreement and cooperation.

19.    As a result of the facts alleged in this count, Zhang has been at all relevant times a fiduciary with respect to plaintiffs, and has owed plaintiffs a fiduciary duty of the utmost loyalty, honesty and integrity, and Zhang's fiduciary duties continue to this day.

20.    Defendant Zhang made the following written representations to plaintiffs:

a.  that Beta Pharma was the owner of the ZBP shares it transferred, free and clear of any agreements or restrictions that would prevent Beta Pharma from transferring the shares and causing the transfer to be registered on the books and records of ZBP;

b.  that the transactions by which plaintiffs purchased their shares were governed by the laws of the State of Connecticut;

c.  that Beta Pharma would cause plaintiffs' shares to be registered on the official records of ZBP; and

d.  that Beta Pharma would repurchase plaintiffs' shares for their proportionate share of ZBP's $600 million valuation.

21.    Defendant Zhang further represented orally to plaintiffs that they and their shares would be eligible to participate in the anticipated ZBP initial public offering.

22.    Plaintiffs relied on the representations alleged above when they agreed to purchase their shares, when they paid Don Zhang for their shares, when they continued to hold their shares, and when they agreed to sell their shares back to Beta Pharma and Zhang.

23.     Defendant Zhang breached his fiduciary duties to plaintiffs in one or more of the following respects:

      a. In that he failed to provide plaintiffs with full, timely and accurate disclosure of all material information concerning BP, ZBP,  their investment in ZBP shares, and Beta Pharma's ongoing role as the "holder" of their ZBP shares, and provided essentially no disclosure at all;

      b. in that he failed to disclose that their investment was not controlled by Connecticut law, but was subject to the laws of China;

      c. in that he failed to disclose to them that their share ownership was restricted by ZBP, by ZBP's directors, and by agreements binding on Beta Pharma and Zhang;

      d. in that he failed to disclose to plaintiffs that their share ownership was subject to control by the ZBP Board of Directors, which claimed that it had the authority to disapprove of their investment in ZBP, and that plaintiffs would not be able to participate in the initial public offering of ZBP;

      e. in that  did he not cause plaintiffs' share ownership  to be registered on the official records of ZBP;

      f. in that he did not cause plaintiff's share ownership to participate in the anticipated ZBP initial public offering;

g.  in that he did not timely disclose that he had been ordered by the ZBP Board to repurchase their shares to accomplish an "equity cleaning up" by December 31, 2012;

h.  in that he induced plaintiffs to agree to sell their shares back to him at a price based on a $600 million valuation for the company, even though he knew that the price was materially too low due to ongoing growth of ZBP, and even though he intended to pay them about 49% of that price;

(i) in that defendant Zhang misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by approximately 10% for taxes defendant or Beta Pharma allegedly paid to the government of China, even though defendant never sold plaintiffs' shares of ZBP in China;

(j) in that defendant Zhang misrepresented to plaintiffs that plaintiffs' repurchase price had to be reduced by about "35%" for "estimated USA corporate taxes" even though plaintiffs, as individuals were not liable for USA corporate taxes and had no obligation to pay defendants' corporate taxes, if any, on the transaction;

(k) in that defendant Zhang misrepresented that Beta Pharma was deducting "35%" from plaintiff's repurchase price for corporate taxes when it actually took a

deduction of 39% of the net after "China taxes", and failed to advise plaintiffs that Beta Pharma was entitled to a foreign tax credit in the USA for taxes it paid in China;

(l) in that defendant Zhang misrepresented to plaintiffs that they were liable to pay "10% bonus shares to ZJBP (sic) employee from all initial share holders" and arbitrarily reduced their shareholdings by 10% even though plaintiffs were not initial shareholders in that they purchased their shares from Beta Pharma rather than receiving them from ZBP, and even though plaintiffs had no liability for the 10% bonus shares;

(m) in that defendants made the misrepresentations in subparagraphs (i), (j), (k) and (l) above wholly without justification, in an effort to fabricate an excuse to reduce the payout to plaintiffs in an effort to induce them to accept approximately 49% of what they were rightfully due;

(n) in that defendant Zhang failed and refused to pay the minimum "undisputed amounts" he conceded that plaintiffs were due;

(o) in that defendant Zhang continues to derive economic benefit from plaintiffs' shares, for which benefits they have not paid; and

(p) in that defendant Zhang has a long history of entering into contracts, wrongfully taking benefits therefrom, and then breaching the contracts, and his

breaches with respect to the Shao plaintiffs are part of a pattern and practice of willfully breaching contracts for the purpose of wrongly taking advantage of others with whom he does business.

24.     As a result of the breach of fiduciary duty by defendant Zhang as alleged, plaintiffs have been damaged, in that they have lost the benefit of having their shares registered in their names on the books of ZBP, and in that they have not received the agreed price for their shares, or the fair market value of their shares,  and have had to  expend attorney's fees and costs of action, which plaintiffs are entitled to recover by law and pursuant to the share purchase contracts they signed.

WHEREFORE, plaintiffs demand judgment in their favor against defendants as follows:

1.     Damages in in the amount of $20,000,000.00.

2.     Exemplary and punitive damages for willful and wanton breach of contract, and for breach of fiduciary duty.

3.     Attorney's fees and costs as provided by contract.

4.     Such other and further relief as law or equity may see fit to afford.

THE PLAINTIFFS,

_____/s/_____
Jonathan Katz, Esq.
Jacobs & Dow, LLC
350 Orange Street
New Haven, Connecticut 06511
Telephone: (203) 772-3100
Facsimile:  (203) 772-1691
Federal Juris No.:  ct00182
Email jkatz@jacobslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____

Jonathan Katz, Esq.
Jacobs & Dow, LLC
350 Orange Street
New Haven, Connecticut 06511
Telephone: (203) 772-3100
Facsimile: (203) 772-1691
Federal Juris No.: ct00182
Email jkatz@jacobslaw.com
