UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SHANSHAN SHAO, HONGLIANG CHU,
QIAN LIU, SONG LU, AND XINSHAN
KANG,

        Plaintiffs,
  v.

BETA PHARMA, INC., AND DON
ZHANG,

        Defendants.

3:14-cv-01177(CSH)

November 1, 2017

## ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF SONG LU'S CLAIMS IN PART

HAIGHT, Senior District Judge:

Following oral argument on Defendants' Motion to Dismiss Plaintiff Song Lu's Claims in Part [Doc. 168], this Order resolves that Motion.

## I. BACKGROUND

This matter is a contract dispute between the five individual Plaintiffs, investors in a "privately owned organization" (Plaintiffs' phrase) under the laws of the People's Republic of China called Zhejiang Beta Pharma Co., Ltd. ("Zhejiang" or "ZBP"). ZBP is affiliated with the corporate Defendant in this case, Beta Pharma, Inc. ("Beta" or "BP"). The individual Defendant, Don Zhang, is alleged to be the majority stockholder and president of BP, and the vice-president and a director of ZBP. Plaintiffs assert claims for breach of contract and tort against both Defendants.

1

Following the Court's prior Omnibus Ruling [Doc. 163], which resolved questions of subject matter jurisdiction and the scope of discovery, Defendants filed both an Answer [Doc. 167] and the instant Motion to Dismiss Plaintiff Song Lu's Claims in Part [Doc. 168]. Defendants argue that Plaintiff Song Lu ("Lu," or "Plaintiff") is not entitled to bring claims for the full amount of stock he purchased: "The problem for Lu is that his stock purchase agreement states that four other people (the 'Other Purchasers') allegedly purchased portions of the 105,620 shares; Lu's portion was only 17,735 shares. . . . [T]he Other Purchasers are necessary parties to this lawsuit, and without them, Lu's claims are subject to dismissal." Pl. Br. 1.

Defendants' Motion relies on the "Sub-Agreement and Memo" ("the Sub-Agreement") included on the final page of the November 2010 Stock Purchase Agreement ("SPA") signed by Don Zhang and Song Lu. The SPA amended and superceded a prior purchase agreement between Lu and Zhang, executed on March 16, 2010. The March agreement was for 90,620 shares, for which Lu paid $312,320 in U.S. currency. Pl. Br. 2. At the time of re-executing the purchase agreement, via the November 2010 SPA, Plaintiff Lu increased his purchase by an additional 15,000 shares, for which he paid 150,000 RMB in Chinese currency. *Id.* at 2-3. The November 2010 SPA, unlike the March agreement, included a "Sub-Agreement and Memo," on a final page after the signature block. The Sub-Agreement reads, in its entirety:

> The total share of 1,056,200 of stock (representing 0.2331% stock shares in the Company) at price of ten RMB per share is purchased and owned by
>
> 1. Song Lu (177,305 RMB, and Own 17,735 share at price of 10 at purchased date)
>
> 2. Baoying Lu (270,000RMB, and Own 27,000 share at price of 10 RMB at purchased date)

2

>    3. Zhisheng Kan (203,895RMB, and Own 20,389.5 share at price of 10 at purchased date)
>
>    4, Daqing Zhang (270,000RMB and own 27,000 share at price of 10 at purchase date)
>
>    5. Bochun Lu 135,000RM B, and Own 13,500 share at price of 10 at purchased date)
>
>    Owner's right:
>
>    1. Ownership right without voting right
>    2, Beta should authorize the final ownership
>    3 Before authorization date, individual have right to claim original or any profit from trading

SPA at 4. Baoying Lu and Bochun Lu are Song Lu's sisters, Zhisheng Kan and Daqing Zhang are his friends. Pl. Br. 3 n. 1. All four (collectively, "the Sub-Purchasers") are citizens and residents of the People's Republic of China. *Id.* The Sub-Agreement bears no signature block, and Plaintiff Lu and Defendant Zhang were the only signatories to the SPA.

In the second half of 2013 Defendant Beta Pharma repurchased its shares from Plaintiff Lu and the other Plaintiffs to this action. Second Amended Compl. ¶¶ 14-18; Pl. Br. 3, Exs. E, F. In negotiating the repurchase agreement, Defendants dealt solely with Plaintiff Lu, and no mention was made of the Sub-Purchasers. Pl. Br. 3-4, Exs. E, F. Payment for the repurchases shares (a payment whose alleged inadequacy underlies this action) was made solely to Song Lu. *Id.*

## II. STANDARD FOR RULE 12(b)(7) MOTION TO DISMISS

Defendants move to dismiss Song Lu's claims in part, for failure to join necessary parties, under Federal Rule of Civil Procedure 12(b)(7).

"Upon review of a Rule 12(b)(7) motion . . . a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party. . . . The court can deny the

3

motion when there is insufficient or contradictory evidence concerning whether a party is a necessary party within the meaning of Rule 19(a)." *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015) (internal quotations and citations omitted). Federal Rule of Civil Procedure 19(a)(1) requires the joinder of

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction . . . if . . . in that person's absence, the court cannot afford relief among the existing parties, or that person claims an interest relating to the subject of the action and . . . disposing of the action in the person's absence may: (i) . . . impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Rule 19(b) provides that, "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Rule 19(b) provides that the court's consideration of this question should include four factors, summarized in this Circuit as:

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 133 (2d Cir. 2013) (quoting *CP Solutions*, 553 F.2d at 159).

The leading Supreme Court case, *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968), clarifies the two-step Rule 19 analysis, whereby not every party that is "necessary" under Rule 19(a) is "indispensible" under Rule 19(b):

> Whether a person is "indispensable," that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be

4

> determined in the context of particular litigation. There is a large category, whose limits are not presently in question, of persons who, in the Rule's terminology, should be "joined if feasible". . . . Assuming the existence of a person who should be joined if feasible, the only further question arises when joinder is not possible and the court must decide whether to dismiss or to proceed without him. To use the familiar but confusing terminology, the decision to proceed is a decision that the absent person is merely "necessary" while the decision to dismiss is a decision that he is "indispensable." The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.

390 U.S. at 118–19 (footnotes omitted).

"[I]n general . . . a 'flexible' approach [must] be taken to issues relating to indispensable parties; a mechanical determination of who is an indispensable party is clearly inappropriate in light of Rule 19(b)'s reference to 'equity and good conscience.'" *Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 496 (2d Cir. 1977) (citation omitted) (citing *Provident Tradesmens Bank*, 390 U.S. 102). *See also Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987). The Second Circuit has rejected a bright line rule whereby all parties to a contract are indispensable to an action brought on that contract. *See CP Solutions PTE, Ltd. v. General Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009). *See also Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 CV 9578(TPG), 2006 WL 2266351, *9 (S.D.N.Y. Aug. 7, 2006).

### III. DISCUSSION

Defendants urge the Court to dismiss that part of Plaintiff Lu's claim which represents the portion of stock Lu purchased on behalf of the Sub-Purchasers, because, in Defendants' view, the Sub-Purchasers are indispensible parties whose joinder is infeasible due to a lack of personal

5

jurisdiction.[1]  Def. Brief 1("While the Other Purchasers are necessary parties, this Court lacks personal jurisdiction over them, so joinder is infeasible").

The four non-party Sub-Purchasers are residents and citizens of the People's Republic of China.  Def. Br. 2; Pl. Br. 3 n. 1.  As such, their joinder to this action would not destroy this court's subject-matter jurisdiction under the diversity statute, as their addition would maintain complete diversity between Plaintiffs and Defendants.[2]

To establish the Sub-Purchasers as "necessary" parties, Defendants must demonstrate that concluding this litigation in the Sub-Purchasers' absence will result in at least one of three results: (1) the Court's inability to accord complete relief as between Plaintiff Song Lu and the Defendants; (2) impairment or impediment to the Sub-Purchasers' ability to protect their interest in this matter; or (3) substantial risk to Defendants of "incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1).

Accepting all of the Complaint's factual allegations as true, and drawing all inferences in favor of Plaintiff (the non-moving party), the evidence is insufficient to establish the Sub-Purchasers as necessary parties in this action, under the definition of Rule 19(a).  The Sub-Purchasers' absence

---

[1] The Parties have not fully briefed or argued the technicalities of Sub-Purchasers' susceptibility to service of process, or to the personal jurisdiction of this Court, though Defendants assert that the Sub-Purchasers are subject to service of process, under the Hague Convention, but are not subject to this Court's personal jurisdiction.  Def. Br. 5 n. 4; 6.  In any event, Defendants' Motion is premised on the infeasibility of the Sub-Purchasers' joinder, and Plaintiff has not proffered evidence or argument to the contrary.  For the purposes of this Motion I will assume that joinder is infeasible, by reason of the Sub-Purchasers' residence in China, without reaching the questions of personal jurisdiction or the effective service of process.  *See also* Tr. 43-44.

[2] The Court examined the question of subject matter jurisdiction and citizenship of the various parties in its prior Omnibus Ruling [Doc. 163].  Familiarity with the Omnibus Ruling is assumed.

presents no obstacle to according complete relief between Plaintiff Lu and the Defendants. As discussed at oral argument, that relief may be for the entire amount pleaded (including the damages related to the Sub-Purchasers' shares), for only those damages related to the portion of the Beta Pharma shares Plaintiff Lu held as sole owner, or, indeed, for no damages at all. *See* Pl. Br. 7; Tr. 33-34. Plaintiff Lu will bear the burden of establishing liability and damages at trial, but there is no reason to believe that the Sub-Purchasers' absence will impede the vindication of Plaintiff Lu's rights, whatever those may be. Defendants argue that complete relief between the Parties cannot be afforded in the Sub-Purchasers' absence because of the discrepancy between the total number of shares discussed by the main body of the SPA (105,620) and the total number referenced by the Sub-Agreement (105,624.5). Def. Br. 5. This discrepancy illustrates that, in the Sub-Purchasers' absence, this Court may not be able to accord complete relief as between Plaintiff Lu and the nonparty Sub-Purchasers, but it does not render the Sub-Purchasers necessary to accord relief as to Lu or denial of liability as to the Defendants.

Likewise, Defendants have presented no compelling evidence or argument to indicate that the Sub-Purchasers' absence from this proceeding will impede or impair the Sub-Purchasers' ability to protect their interests. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006) ("It is not enough . . . for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties . . . are only those parties whose ability to protect their interests would be impaired ***because of*** that party's absence from the litigation." (emphasis in the original)). The Sub-Purchasers' interests in this matter rely upon the interpretation of the SPA, as signed by Lu and Defendant Zhang. While the Sub-Purchasers may therefore be affected by the outcome of this

7

litigation, Defendants have provided no argument as to why the Sub-Purchasers' *absence* should have negative effect on that outcome. "If the nonparties' interests are adequately represented by an existing party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered 'necessary.'" *Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326, 329 (D. Conn. 2009) (quoting *Ramah Navajo Sch. Bd. V. Babbitt*, 87 F.3d 1338, 1352 (D.C. Cir. 1996) and collecting cases). Nothing in Defendants' briefs or argument has convinced me that Lu is not an adequate representative of the Sub-Purchasers' interests in this matter.

Defendants' primary argument for the necessity of the Sub-Purchasers to this action is that the Court's failure to dismiss Plaintiff Lu's claims in part will subject Defendants to substantial risk of incurring double obligations for damages relating to the shares Plaintiff Lu purchased on the Sub-Purchasers' behalf. Def. Br. 4-5; Trans. 45-47. Defendants note the possibility that the Sub-Purchasers would bring suit on their shares in China, whose courts may not recognize any judgment entered by this Court. *See* Reply Br. 8; Tr. 9-10. Defendants have failed to provide any evidence that such a suit is planned or probable, and the concerns about double indemnity are, at the moment, purely speculative. "The speculative possibility of future litigation . . . furnishes no basis for compulsory joinder . . . ." *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). *See also Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d. Cir 1994); *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980) ("The trial court justifiably found . . . that Laminators could only theorize the possibility that the [non-party] would institute suit against it. Nothing before the court suggested a substantial likelihood of such a suit."); *Ship Const. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) ("there is no evidence before the Court suggesting a substantial likelihood that [non-party] HSBC

will bring such a suit. The Court will not dismiss this action based on the speculative possibility of such a lawsuit").

Accordingly, having examined the three possible bases of "necessity" under Rule 19(a), I do not find the Sub-Purchasers to be necessary to this action.

Even if the Sub-Purchasers were "required" or "necessary" parties under the Rule 19(a) analysis – which I do not find them to be – Defendants have not demonstrated that the Sub-Purchasers are "indispensible," such that the infeasibility of their joinder should result in dismissal of that part of Plaintiff Lu's claims which pertains to the Sub-Purchasers' shares.

Where Defendants have, from November 2010 until the filing of the instant Motion in June of 2017, been willing to deal with Plaintiff Lu as the sole representative of the Sub-Purchasers' interests, through both the SPA and the repurchase negotiations, they cannot now disavow that reliance. In analogous circumstances Judge Griesa, of the Southern District of New York, denied a Rule 12(b)(7) motion to dismiss a breach of contract action for failure to join necessary parties. *Polargrid,* 2006 WL 2266351. There, the underlying action had been brought on a memorandum of understanding ("MOU"), whereby the plaintiff corporation had "executed the MOU 'for itself and on behalf of its subsidiaries and affiliates.'" *Id.* at *8. Judge Griesa found that

> [the] identity of interests between Polargrid and the unnamed Polargrid Entities is clearly evidenced by the MOU itself, which Polargrid was empowered to and did in fact execute on behalf of those entities. Indeed, having accepted Polargrid as a representative to bind all the Polargrid Entities in the MOU, [defendant] VSNL cannot now be heard to contest the ability of Polargrid to adequately litigate claims arising from its alleged breach of that agreement.

*Id.* at *10. *See also Southeastern Sheet Metal Joint Apprenticeship Training Fund v. Barsuli,* 950 F.Supp. 1406, 1414 (D.Wis.1997); *CFI of Wis., Inc. v. Hartford Fire Ins. Co.*, 230 F.R.D. 552, 554

9

(D.Wis.2005); *Aetna Casualty & Surety Co. v. Namrod Dev. Corp.,* 140 B.R. 56, 61 (S.D.N.Y.1992).

I apply the same logic here. Having accepted Song Lu as a representative to bind all the Sub-Purchasers by the SPA and Sub-Agreement, Defendants cannot now contest Lu's ability to adequately litigate claims based upon that contract. At the time of repurchase, in 2013, Defendants did not demonstrate any uncertainty as to Plaintiff Lu's ability to represent the interests of the Sub-Purchasers – they did not, for example, ask Lu to provide assurances that he would convey the repurchase payment to the Sub-Purchasers in proportion to their ownership. Only now that Plaintiff Lu, along with his co-Plaintiffs, has objected to the terms of that repurchase agreement do the Defendants question his ability to represent the interests of the Sub-Purchasers.

None of this is to say that Plaintiff Lu's ability to recover on behalf of the Sub-Purchasers is assured. As discussed at oral argument, Plaintiff Lu must, like the other Plaintiffs in this matter, carry his burden of proof in order to prevail, and the Defendants are free to introduce evidence as to the controverted ownership of the shares at issue. At this stage of the proceeding, on the record before me, I simply hold that the Sub-Purchasers are not "necessary" parties, and, even if they were, they are not, in the balance of the equities, "indispensible." Therefore, Defendants' Motion is DENIED.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff Song Lu's Claims in Part for Failure to Join Necessary Parties [Doc. 168] is DENIED.

The foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
         November 1, 2017

<u>/s/Charles S. Haight, Jr.</u>
CHARLES S. HAIGHT, JR.
Senior United States District Judge