## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHANSHAN SHAO, HONGLIANG CHU, QIAN LIU, SONG LU, and XINSHAN KANG, | Civil Action No. 3:14-cv-1177 (CSH) |
| Plaintiffs, | |
| v. | |
| BETA PHARMA, INC., DON ZHANG, and BETA PHARMA (USA), INC., | SEPTEMBER 23, 2019 |
| Defendants. | |

**RULING ON DEFENDANT BETA PHARMA (USA), INC.'S MOTION TO DISMISS**

**HAIGHT, Senior District Judge:**

Plaintiffs' Third Amended Complaint ("TAC"), filed by leave of the Court, joined Beta Pharma (USA), Inc. ("BP USA") as a defendant on September 7, 2018. Doc. 222 ("TAC"). Before this Court now is BP USA's Motion to Dismiss the TAC against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 232.

## I.    BACKGROUND

This matter is a contract dispute, heard by this Court under the federal diversity jurisdiction of 28 U.S.C. § 1332. The recitation of facts in this Part is derived principally from allegations in the TAC.

The five individual Plaintiffs are investors in a non-party "privately owned organization" (Plaintiffs' phrase) established under the laws of the People's Republic of China called Zhejiang Beta Pharma Co., Ltd. ("Zhejiang" or "ZBP"). TAC at 2–3 ¶¶ 6, 9. ZBP is affiliated with corporate

Defendant, Beta Pharma, Inc. ("Beta Pharma" or "BP, Inc."). *Id.* at 2 ¶ 5. The individual Defendant, Don Zhang, is alleged to be the majority stockholder and president of Beta Pharma, and the vice-president and a director of ZBP. *Id.* at 2 ¶¶ 3, 8. Plaintiffs assert claims for breach of contract and tort against Beta Pharma and Zhang (collectively, the "Original Defendants").

The Original Defendants formed BP USA in December 2014 when they were involved in multiple lawsuits in Connecticut. *Id.* at 28 ¶¶ 39–40. They allegedly caused Beta Pharma to fraudulently transfer substantially all of its disclosed American assets to BP USA and to offshore accounts in turn, rendering the Original Defendants insolvent and making it more difficult for plaintiffs in these Connecticut lawsuits to collect judgment. *Id.* at 30–32 ¶¶ 45, 54–55; *id.* at 34 ¶ 65. The transfer of assets "was made with actual intent to hinder, delay or defraud plaintiffs as creditors of [the Original Defendants]." *Id.* at 30 ¶ 46.

BP USA is incorporated in Delaware, and its principal place of business is also Delaware. *Id.* at 28 ¶ 40. BP USA is not registered to do business in Connecticut. *Id.* at 29 ¶ 41. Further, the TAC does not allege that the fraudulent transfer was to or from Connecticut. Doc. 232-2 ¶ 13. Nonetheless, Plaintiffs allege that BP USA has committed tortious acts in Connecticut, individually or through an agent, by receiving fraudulently transferred assets and conspiring with the Original Defendants to deprive Plaintiffs and others of their rightful financial interests in Beta Pharma and ZBP. TAC at 29 ¶ 43.

Defendant BP USA moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction. It argues that it is not subject to Connecticut's long arm statute and that the Fourteenth Amendment's Due Process Clause does not permit jurisdiction here. Doc. 232.

2

## II.    STANDARD OF REVIEW

A motion to dismiss must be granted if a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 566 (2d Cir. 1996), *cert. denied*, 519 U.S. 107 (1996) (citation omitted).  Prior to discovery, a plaintiff may defeat the motion "based on legally sufficient allegations of jurisdiction."  *Id.*  A prima facie case of personal jurisdiction "requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."  *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998)).

In general, the district court may exercise discretion in determining the best procedural approach to decide a 12(b)(2) motion for lack of personal jurisdiction.  Specifically, "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (citation omitted); *see also, e.g.*, *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 170 (E.D.N.Y. 2015).

Because a motion to dismiss for lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion."  *Energy Brands, Inc. v. Spiritual Brands,*

*Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)). When considering the motion, the court must construe the pleadings liberally for the benefit of the plaintiffs. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

When no evidentiary hearing is held, but extensive discovery has been conducted, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990). As described above, absent an evidentiary hearing, when the motion is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). In that instance, "the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[1] *Id.*

In a diversity or federal question case, personal jurisdiction is determined by the law of the state in which the district court sits. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). If the exercise of jurisdiction is appropriate under that state's statute, the court then must decide whether such exercise comports with the requisites of constitutional Fourteenth Amendment due process. *See Robertson-Ceco Corp.*, 84 F.3d at 567; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[1] In contrast, if the defendant comes forward with evidence in an evidentiary hearing, the plaintiff must then demonstrate personal jurisdiction by a preponderance of the evidence. *See Metro. Life Ins. Co.*, 84 F.3d at 566; *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n.3 (2d Cir. 1984) ("If . . . the district court holds an evidentiary hearing, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence.").

### III.    DISCUSSION

#### A.    Personal Jurisdiction Requirements

Plaintiffs, as the proponents of jurisdiction, have the burden of establishing that this Court has personal jurisdiction over BP USA.  *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).  No evidentiary hearing has been conducted to date on this issue.  In consequence, at this initial stage, Plaintiffs need only allege facts constituting a prima facie showing of personal jurisdiction.  *See Deiter*, 702 F.3d at 727; *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  At this stage, further, the Court construes pleadings and affidavits in Plaintiffs' favor.  *See id*.

"A defendant's conduct is sufficient for the exercise of personal jurisdiction if: (1) the conduct satisfies the requirements of the relevant state's long-arm statute, and (2) the conduct satisfies the 'minimum contacts' requirement of the Due Process Clause of the Fourteenth Amendment."  *Ferra v. Munro*, 585 B.R. 269, 282 (D. Conn. 2018) (citations omitted).

#### 1.    The Connecticut Long Arm Statute

Plaintiffs' first theory is that BP USA's receipt of transferred assets from Beta Pharma constituted tortious conduct in Connecticut, thereby subjecting BP USA to personal jurisdiction in the state by virtue of Conn. Gen. Stat. Ann. § 33-929—*i.e.*, Connecticut's long arm statute for foreign corporations.  Doc. 233, at 7.  Section 33-929 provides in pertinent part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . [o]ut of tortious conduct in this state, whether arising out

> of repeated activity or single acts, and whether arising out of
> misfeasance or nonfeasance.[2]

Conn. Gen. Stat. Ann. § 33-929(f)(4).

BP USA, on the other hand, argues that the alleged transfers between Beta Pharma and BP USA "have no connection to Connecticut." Doc. 232-1, at 5. In support of this contention, BP USA states that "the assets could not have been transferred from Connecticut because, years before the alleged transfers occurred, BP moved its operations and assets to New Jersey" and Beta Pharma ceased banking in Connecticut. *Id.* BP USA further states that "the alleged participants in the transfers—BP, Zhang, and BP USA—all resided outside of Connecticut at the time of the purported transfers, and have ever since." *Id.* Lastly, BP USA argues that "BP USA could not possibly have committed a tort in Connecticut because it never conducted business" in the state. *Id.* at 6.

The Second Circuit has previously addressed the meaning of the "tortious conduct" provision of Connecticut's long arm statute. Summarizing Connecticut case law, the Second Circuit noted that "the defendant's literal presence in Connecticut when engaging in the actionable conduct" is not required for finding personal jurisdiction, but "a defendant's tortious conduct [must] be directly and expressly targeted at the forum state." *Gen. Star Indemn. Co. v. Anheuser-Busch Companies, Inc.*, 199 F.3d 1322 (2d Cir. 1999) (summary order). In *Gen. Star Indemn. Co.*, the plaintiff argued that "the conduct in question was targeted at the state, because it was targeted at a Connecticut company

---

[2] Based on a review of the TAC and Plaintiffs' brief, it does not appear that Plaintiffs allege that BP USA's actions fall under any of the other three provisions of Conn. Gen. Stat. Ann. § 33-929(f). Doc. 233, at 1. In brief, those provisions provide for personal jurisdiction over foreign corporations based on: (i) "any contract made in this state or to be performed in this state ," *id.* § 33-929(f)(1); (ii) "any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business . . .," *id.* § 33-929(f)(2); and (iii) "out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state . . .," *id.* § 33-929(f)(3).

that necessarily felt the sting of the defendants' actions in its home state." *Id.*  The Second Circuit rejected that argument, though, concluding that "it would obliterate the longstanding distinction between long-arm statutes that reach tortious conduct in a given state and those that reach conduct which causes tortious injury in the state by action outside the state." *Id.*; *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 253 (D. Conn. 2004) (in analyzing Conn. Gen. Stat. Ann. § 33-929(f)(4), rejecting the argument that "because the injury is felt in Connecticut, the tort should be deemed to have been committed in Connecticut" because such interpretation "ignore[d] the language of" the statute); *Bross Utilities Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1373, n.35 (D. Conn.), *aff'd*, 646 F.2d 559 (2d Cir. 1980) (noting that Connecticut's long-arm statute subjects non-resident individuals to jurisdiction in the state for "torts committed outside Connecticut which cause injury within the state" but "contains no analogue governing corporate defendants" and relying upon this distinction to reject a more expansive reading of the "tortious conduct in this state" provision).  In sum, "[i]t is not enough that the consequences of a defendant's acts impact a plaintiff in Connecticut; the tortious conduct must be directly and expressly targeted at the forum state to support jurisdiction over a foreign corporation." *Hamann v. Carpenter*, No. 16 Civ. 501 (VAB), 2017 WL 421646, at *8 (D. Conn. Jan. 31, 2017) (citation omitted).

Plaintiffs have not sustained their burden of persuasion that BP USA is amenable to personal jurisdiction in this Court because they have not alleged that BP USA has committed tortious acts in Connecticut, which is a requirement of Conn. Gen. Stat. Ann. § 33-929(f)(4).  Plaintiffs' only allegations of BP USA's tortious conduct is that BP USA "has been the recipient of assets fraudulently transferred to it"; that the transfer was part of a larger "effort to hinder the collection efforts" of Plaintiffs who have pending claims in state and federal court against the defendants; and

that BP USA "participated with defendants Zhang and Beta Pharma in a scheme to fraudulently deprive plaintiffs . . . of the rightful value of their interests in Beta Pharma and ZBP." Doc. 233, at 8. None of Plaintiffs' factual allegations indicate that BP USA engaged in tortious conduct *in* Connecticut. As Plaintiffs point out, BP USA is a Delaware corporation that is not registered to do business in Connecticut. *Id.* at 7. Its principal place of business is in Delaware. *Id.* And there is no indication that the transfers originated, or concluded, in Connecticut, or that Connecticut banks or bank accounts were used in connection with such transfers. *Id.* at 7–8.

A recent Connecticut case, *Dur-A-Flex, Inc. v. Dy*, discussed the types of activities that could indicate that a foreign corporation had engaged in "tortious conduct" directed toward Connecticut. 04HHD-CV-14-6049281S, 2016 WL 5415399 (Conn. Super. Ct. Aug. 24, 2016) (unpublished). In ruling that a foreign company was subject to personal jurisdiction pursuant to Connecticut's long arm statute, the court underscored that a company official had visited Connecticut, that there was an "extended series of electronic mail and telephonic communications directed to and received from Connecticut by many different . . . employees [of the defendant] over many months," that "money [was] sent to Connecticut for services presumably performed within Connecticut," and that "at least one parcel mailed to Connecticut from [the defendant's] offices [in another state]." *Id.* at *5.

Similarly, BP USA cites to a number of cases that address examples of "tortious conduct" that is directed toward Connecticut. In *Foisie v. Foisie*, for example, the plaintiff claimed that the defendant committed tortious acts within the state of Connecticut—in particular, "fraud, negligent misrepresentation, breach of contract due to tortious acts, common-law fraudulent transfer, and breach of fiduciary duty"—by fraudulently concealing his assets during the parties'

8

divorce proceedings.  No. KNLCV176028794, 2017 WL 3011555, at *3 (Conn. Super. Ct. June 12, 2017).  Although the opinion does not provide the factual background in great detail, it appears that the plaintiff alleged that the defendant committed tortious acts during their mediation process (presumably by misrepresenting his financial assets), and "while filing his financial affidavit and motion for judgment upon the settlement agreement."  *Id.*  What appears in the case to be clear, though, is that the entirety of the defendant's tortious conduct occurred in Connecticut.  *See id.*  According to the court, therefore, the defendant's conduct was sufficient to satisfy the state's long arm statute.[3]  *See id.*; *cf. Welsh v. Martinez*, No.

---

[3] In *Foisie*, the court ruled that the defendant was subject to jurisdiction under Connecticut's long arm statute for nonresident individuals, Conn. Gen. Stat. Ann. § 52–59b(a), rather than the state's statutory counterpart for foreign corporations, *id.* § 33-929(f), which is at issue in the instant case.  1992 WL 165723, at *4.  Section 52–59b(a)(2) provides for jurisdiction over individuals who "commit[] a tortious act *within* the state," Conn. Gen. Stat. Ann. § 52–59b(a)(2) (emphasis added), whereas the long arm for foreign corporations provides for jurisdiction over companies that engage in "tortious conduct *in* this state," *id.* § 33-929(f)(4) (emphasis added).  Courts have held that the two provisions, despite their semantic difference, are comparable for purposes of personal jurisdiction analyses.  *See, e.g.*, *Tannenbaum v. Nurena*, No. FSTCV116007977S, 2013 WL 452982, at *2 (Conn. Super. Ct. Jan. 9, 2013) (finding that § 33-929(f)(4) and § 52–59b(a)(2) "involve the same concept and 'within the state' and 'in this state' have the same meaning").  The similarity of the provisions gives the cases addressing the nonresident individual long arm statute some persuasive value when the Court analyzes the relevant provision in this case.

BP USA also cites to cases where the courts ruled that they had personal jurisdiction over the defendants under Conn. Gen. Stat. Ann. § 52–59b(a)(1), *i.e.*, the long arm provision for a nonresident individual who "[t]ransacts any business within the state." Doc. 232-1 n.3.  In particular, BP USA cites to *Gaudio v. Gaudio*, which held that "the trial court was correct in finding that [the defendant] had transacted business in Connecticut within the meaning of § 52–59b(a)(1)."  23 Conn. App. 287, 298 (1990).  BP USA also cites to *Schwartz v. Ernest R. Watrous*, where the court concluded that the defendant's "ownership in [a corporation] as well as her receipt of transferred . . . stock classify her as an individual who 'transacts business' in Connecticut under § 52-59b(a)(1)."  No. CV085008426, 2009 WL 323373, at *4 (Conn. Super. Ct. Jan. 14, 2009).  Such cases, on the other hand, are inapposite.  Plaintiffs have only alleged that BP USA is subject to personal jurisdiction based on the provision in Connecticut's long arm statute governing tortious conduct; not the provision providing for jurisdiction based on companies' business transactions.  *See supra* n.1.

X03HHDCV166072658S, 2017 WL 4106323, at *4 (Conn. Super. Ct. Aug. 7, 2017) (allegedly fraudulent conveyance in the form of a check that was mailed to the defendant in Texas from an individual in Connecticut did not confer personal jurisdiction under the state's long arm statute for nonresident individuals because there was "no evidence that [the defendant] engaged in any relevant conduct" in Connecticut).

Likewise, in the cases that the Plaintiffs cite in support of their argument that BP USA engaged in "tortious conduct" directed toward Connecticut, the courts found personal jurisdiction because the defendants' conduct had stronger ties to Connecticut. For example, in *Holdings I, LLC v. Cannavo*, the plaintiffs similarly alleged that the defendants participated in fraudulent transfers. No. FSTCV166027599S, 2016 WL 8260634, at *5 (Conn. Super. Ct. Dec. 30, 2016). But the court concluded that the plaintiffs sufficiently pleaded allegations of tortious conduct within the state under Connecticut's long arm because the fraudulent transfers involved "Connecticut real estate, with the deeds (including mortgage deeds) executed in Connecticut and the transfers recorded on land records in Connecticut." *Id.* In *Chrysler Credit Corp. v. Berman*, moreover, the plaintiffs also alleged that the defendants participated in fraudulent transfers. No. 0057971, 1992 WL 165723, at *4 (Conn. Super. Ct. June 25, 1992). Yet all of the alleged transfers in that case (with the exception of one) "took place entirely in Connecticut," and all of the transactions at least "began in Connecticut." *Id.*

In the instant case, to the contrary, and as BP USA asserts, BP USA "does not do, and never did, any business in Connecticut, and has never possessed any assets in the state." Doc. 232-1, at 3. BP USA further states that "it is not, and has never been, registered to conduct business in Connecticut" and that it has never "receive[d] funds transferred from accounts held in

Connecticut." *Id.* BP USA supports these claims with an affidavit of Don Zhang, in which Zhang avers that BP USA: (i) is a Delaware corporation; (ii) has never conducted business in Connecticut; (iii) does not have, and has never had, any facilities, offices, or assets located in Connecticut; (iv) has never done any banking at a bank branch in Connecticut; and (v) that BP USA has never received a transfer of assets of any kind from a Connecticut location. Doc. 232-2 (Zhang Declaration), ¶¶ 9–13. These claims further support the conclusion that the first prong of the personal jurisdiction analysis is not satisfied in this case.

Other Connecticut cases are consistent with a refusal to find personal jurisdiction in this one. In *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, which likewise arose out of a contract dispute, a defendant, R.K. Enterprises, was a foreign corporation (which was incorporated in New Jersey and maintained a principal place of business in New Jersey). 11 Civ. 1072 (JBA), 2012 WL 13013637, at *2 (D. Conn. Aug. 2, 2012). R.K. Enterprises was allegedly the "mere continuation" of another defendant and foreign corporation, Metal Worldwide (which was incorporated in Florida and maintained a principal place of business in Florida). *See id.* According to the plaintiff, R.K. Enterprises was the recipient of funds diverted from Metal Worldwide so that the latter corporation could "escape financial obligations" to the plaintiff. *Id.* Similar to the instant case, the plaintiff did not contend that any of the alleged tortious conduct occurred in Connecticut for purposes of the state's long arm statute—the transfer of funds neither originated nor culminated in Connecticut. *See id.* at *8. In assessing the statute's applicability to the facts of that case—and whether a transfer of funds with seemingly no connection to Connecticut could satisfy the statute's "tortious conduct" prong—Judge Arterton stated that "the receipt outside of Connecticut of another's funds, also outside of Connecticut, whatever the

11

motivation is, does not constitute 'tortious conduct in this state' as required by Connecticut's long–arm statute." *Id.* (quoting Conn. Gen. Stat. Ann. § 33-929(f)(4)).

Plaintiffs' allegations that BP USA engaged in a conspiracy do not change the result of the Court's long arm analysis. According to Plaintiffs, BP USA "engaged in tortious conduct in Connecticut by assisting and conspiring with defendants Beta Pharma and Zhang to fraudulently transfer assets in order to put these assets beyond the reach of the Connecticut Federal Court's jurisdiction." Doc. 233, at 7. Specifically, Plaintiffs allege that the Original Defendants "controlled" BP USA; and that at the time BP USA was formed, "all defendants knew that [a] lawsuit was pending [against them] in Connecticut Superior Court . . . and that nevertheless BPUSA conspired with Beta Pharma and Zhang to make defendant Beta Pharma insolvent." *Id.* at 11. For these reasons, according to Plaintiffs, BP USA has engaged in "tortious conduct" within this state pursuant to Conn. Gen. Stat. § 33-929(f)(4).

Once again, though, Plaintiffs have not sustained their burden of persuasion based on this theory. None of the tortious conduct undertaken by BP USA in connection with the conspiracy is alleged to have occurred in Connecticut. *See Lechner v. Capital Grp. Companies*, No. 05 Civ. 1410 (WWE), 2006 WL 1525967, at *2 (D. Conn. May 26, 2006) (in connection with an alleged conspiracy between the defendants, concluding that Gen. Stat. Ann. § 33-929(f)(4) did not confer jurisdiction over the defendants because "[n]one of the tortious conduct . . . [wa]s alleged to have occurred in Connecticut").

Plaintiffs' citation to *Smith v. Snyder* does not lend much support to their conspiracy argument, either. No. CV 990362743S, 2000 WL 739610, at *1 (Conn. Super. Ct. May 23, 2000). In *Smith*, the plaintiffs alleged that the defendants converted a valuable machine that was

12

integral to the plaintiffs' business in Connecticut. *See id.* Two of the defendants were employees of the plaintiff's company and engaged in the actual conversion of the machine—that is, they "took the [plaintiff's] critical machine [from Connecticut] to Massachusetts, in a concerted effort, for the purpose of putting the plaintiffs out of business." *Id.* Two other defendants (an individual that resided in Massachusetts and a company that maintained its principal place of business there) "assisted and conspired with the other defendants to commit" the tortious conduct," albeit from Massachusetts. *Id.* at *3. The defendants argued that the court lacked personal jurisdiction over them on that basis: that their allegedly tortious conduct did not satisfy Connecticut's long arm statute because "they [were] residents of and [maintained] a principal place of business in Massachusetts." *Id.* at *2 n.3. The court disagreed, concluding:

> Conspiring to take and actually converting the machine from Connecticut, making misrepresentations, and the breaching of fiduciary duties, are all, if proven to be true, individually sufficient tortious acts that . . . [allegedly] took place within the state. At the very least, by construing facts necessarily implied from the allegations in favor of the pleader, the conversion of the machine took place within Connecticut's borders, thereby rendering at least one of the conspiring defendants physically present within the state at the time of the tortious conduct.

*Id.* at *3 (footnote omitted).

BP USA's alleged conduct is clearly distinguishable. Although, like BP USA, a number of the *Smith* defendants were not present in Connecticut at the time of the alleged tortious conduct, the *Smith* defendants nonetheless engaged in a conspiracy that directly targeted Connecticut (*i.e.*, the conversion of the plaintiffs' machine that was located in Connecticut). *See id.* In contrast, Plaintiffs fail to allege any behavior on the part of BP USA that is directly

targeted toward Connecticut in a comparable manner.[4]  Accordingly, Plaintiffs have failed to establish the prima facie showing that personal jurisdiction over BP USA is proper in Connecticut.

### 2.    Due Process

Alternatively, the Court finds that even if BP USA had engaged in "tortious conduct" in Connecticut, exercising personal jurisdiction over BP USA would not comport with Fourteenth Amendment due process, which is the test the Court must apply for personal jurisdiction.  The due process test is comprised of two related components: the "minimum contacts" analysis and the "reasonableness" analysis.  *Metro. Life Ins. Co.*, 84 F.3d at 567.

First, the Court must determine whether the defendant has sufficient "minimum contacts" with the forum state to justify the court's exercise of personal jurisdiction.  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  To have sufficient minimum contacts, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).  This requirement prevents defendants from being haled into court based on "random," "fortuitous," or "attenuated" contacts.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

---

[4] To be sure, BP USA's alleged conduct—that it was the recipient of fraudulent transfers and conspired to hinder Plaintiffs' eventual collection efforts, *see supra* III.A.1—might eventually be felt by Plaintiffs in Connecticut.  But that argument is merely a variation of the argument that the Second Circuit rejected—namely, that because Plaintiffs might "fe[el] the sting of" BP USA's actions, the underlying conduct would therefore satisfy the "tortious conduct" prong of Connecticut's long arm statute.  *Gen. Star Indemn. Co.*, 199 F.3d 1322.  As noted above, the Second Circuit rejected the expansiveness of that interpretation and Plaintiffs have not presented any case law that suggests otherwise.  *See id.*

As discussed above, Plaintiffs have not alleged that BP USA maintains contacts with Connecticut.  BP USA is not incorporated in Connecticut; it does not transact business in Connecticut; and it does not maintain bank accounts in Connecticut.  Additionally, the alleged asset transfers neither originated nor terminated in Connecticut; and the alleged conduct constituting BP USA's participation in a conspiracy did not take place there, either.  Viewed in their sum total, these contacts—or lack thereof—are insufficient for this Court to find that BP USA has the requisite minimum contacts with the state.

Plaintiffs argue, nonetheless, that it is "reasonable and fair to require BPUSA to defend a lawsuit" in Connecticut because of "BPUSA's deliberate targeting of [the instant] lawsuit."  Doc. 233, at 15–16.  Plaintiffs contend that BP USA "knowingly and intentionally received fraudulently transferred assets from . . . Beta Pharma and Zhang . . . in order to hinder plaintiffs' already pending lawsuit."  *Id.* at 15.  It is not clear, however, how BP USA availed itself of the privileges and benefits of Connecticut when all of BP USA's conduct occurred outside of Connecticut, including its alleged receipt of funds which was neither sent from nor received in Connecticut.

For legal support, Plaintiffs cite to *Bentivegna v. Lall-Trail*, which is clearly distinguishable.  No. CV-14-6040266S, 2014 WL 4413220 (Conn. Super. Ct. July 24, 2014).  In *Bentivegna*, an ophthalmologist residing in Virginia sent in to Connecticut an opinion letter suggesting that the plaintiff, an ophthalmologist residing in Connecticut, provided substandard medical care to a patient.  *See id.* at *1.  The *Bentivegna* court emphasized that by deliberately mailing a letter to Connecticut, the defendant purposefully availed himself of the "privilege of conducting such a transaction" in the state and that the defendant "had the absolute right . . . to

15

avoid contact" with Connecticut. *Id.* at *7. BP USA had the same "absolute right" to avoid contact with Connecticut. *Id.* In contrast to the *Bentivegna* defendant, though, BP USA exercised that right by refraining from conducting any business there.[5] In sum, it would not be reasonable to conclude that BP USA possessed contacts with Connecticut sufficient to satisfy the first part of the due process inquiry.

The second component of the due process analysis examines whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The issue is whether personal jurisdiction is "reasonable" in the context of the specific case. *Id.* at 317. It assures that the defendant receives notice or "fair warning" that his conduct may subject him to suit in the forum state. *See Bensmiller v. E.I. DuPont de Nemours & Co.*, 47 F.3d 79, 85 (2d Cir. 1995); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (noting that a defendant may be subjected to personal jurisdiction only where his or her "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

In the case at bar, even if BP USA's contacts with Connecticut did constitute "minimum contacts," it would not be "reasonable" under the totality of the circumstances for BP USA to anticipate being haled into court in Connecticut. Plaintiffs contend that "BPUSA could have reasonably foreseen that it might be called to Connecticut to defend a lawsuit arising from its

---

[5] Plaintiffs appear to cite to *Bentivegna* for the additional argument that BP USA's receipt of transferred assets from Beta Pharma satisfies the due process inquiry. Doc. 233, at 15. Plaintiffs cite the *Bentivegna* court's statement that "a single transaction can give rise to jurisdiction over a nonresident individual or corporation." *Bentivegna*, 2014 WL 4413220, at *6. For the reasons stated above, that argument does not hold water. The "single transaction" at issue in *Bentivegna* involved the defendant's decision to send a letter into the state of Connecticut. *See id.* In contrast, Plaintiffs do not allege in this case that any transaction occurred in the state.

fraudulent activity directed specifically at th[e] state." Doc. 233, at 17.  Specifically, Plaintiffs

allege that BP USA "participated with the original defendants to defraud plaintiffs—and the

Connecticut courts—by draining substantially all the assets from defendant Beta Pharma while

this action was pending." *Id.*  Once again, though, for the reasons stated above, there is no

indication that any of the alleged fraudulent activity—*i.e.*, the transfers between Beta Pharma and

BP USA—occurred "in this state."  Conn. Gen. Stat. Ann. § 33-929(f)(4).

Plaintiffs cite to *GATX Fin. Corp. v. Nat'l Fairways Partners I*, No. X06CV020175159S,

2003 WL 22853699, at *4 (Conn. Super. Ct. Nov. 10, 2003), to support their contention that BP

USA could reasonably foresee being called into Connecticut court based on the alleged "draining

[of] substantially all the assets from . . . Beta Pharma."  Doc. 233, at 17.  That case is also

distinguishable because the defendants' connections with the forum state were much less

tenuous.  In *GATX Fin. Corp.*, the court concluded that personal jurisdiction existed over the

defendants—members of a partnership that purported to engage in a fraudulent transfer of

assets—because the defendants maintained a "more significant relationship" with Connecticut.

*GATX Fin.* Corp., 2003 WL 22853699, at *4.  Specifically, defendants became members of a

"Connecticut limited partnership with its principal office in Connecticut pursuant to an

agreement expressly governed by Connecticut law."  *See id.*  The defendants also received

substantial monetary benefits from the Connecticut partnership.  *See id.*  Based on those

connections to Connecticut, the court reasoned that the defendants "should have reasonably

foreseen that they might be called to Connecticut to defend a lawsuit arising from their

membership in the Connecticut limited partnership."  *Id.* at *4.  In contrast, Plaintiffs have not

alleged that BP USA maintains such a "significant relationship" with Connecticut sufficient to satisfy the due process inquiry.[6]

Lastly, Plaintiffs argue that it is "reasonable and fair" for this Court to exercise personal jurisdiction over BP USA. Doc. 233, at 18–19. They argue that if the Court were to conclude that it does not have personal jurisdiction over BP USA, the ruling would "contravene[] the public interest" and it would "give license to other defendants to undertake a fraudulent transfer tactic." *Id.* at 18. BP USA argues, on the other hand, that this is a "policy argument" and that Plaintiffs "cite no cases asserting personal jurisdiction based on such policy concerns, despite an absence of minimum contacts." Doc. 235, at 10.

The Court agrees with BP USA. Plaintiffs do not cite to any authority to justify finding personal jurisdiction on this basis. Their citation to *MCK 15, LLC v. DiMenna* is inapposite. No. CV-16-6027240, 2017 WL 5642403 (Conn. Super. Ct. Oct. 2, 2017). In *DiMenna*, the court concluded that "due process and fundamental fairness require[d] that plaintiffs be granted an opportunity to pursue jurisdictional discovery to enable them to present relevant proof at an evidentiary hearing regarding the court's personal jurisdiction over [a defendant]." *Id.* at *4 (emphasis added). The court's ruling on the defendant's motion to dismiss was thus "deferred pending jurisdictional discovery." *Id.* In other words, "due process and fundamental fairness" only justified the court's order of *an evidentiary hearing*; it did not justify, at least at that stage, a finding that the court had personal jurisdiction over the defendant. *Id.* The court ruled that an

---

[6] Plaintiffs also appear to cite to *GATX Fin. Corp.* in the context of arguing that BP USA could reasonably foresee that it would be hailed into court in Connecticut because of its corporate relationship with the Original Defendants. According to Plaintiffs, BP USA is "not merely a passive stakeholder, but rather an entity controlled by . . . Beta and Pharma and Zhang." 233, at 17. For the reasons discussed below, the Court construes this as an argument in support of piercing the corporate veil.

evidentiary hearing was necessary because a central factual issue that could determine the outcome of the personal jurisdiction inquiry was in dispute—namely, whether the defendant possessed assets in Connecticut. *See id.* Plaintiffs do not call for an evidentiary hearing in this case, and they do not dispute that BP USA lacks assets in Connecticut.

In sum, it would not be reasonable for BP USA to expect to be haled into court in Connecticut. To find otherwise would subject any company that engages in a transfer of assets—no matter the location of the company or origination or destination of the assets—to personal jurisdiction by Connecticut.

## B.    Corporate Veil-Piercing

In the TAC, Plaintiffs allege the following:

> BPUSA['s] . . . shares are 100% owned by Beta Pharma. Defendant Zhang was and is President of Beta Pharma, and its Director, and holds 100% of its shares, and has commingled his personal assets with those of Beta Pharma as alleged, and therefore has exercised and exercises complete control and domination over the activities of Beta Pharma, and over the activities of BPUSA and its property.

TAC at 29 ¶¶ 41–42.

The Plaintiffs do not explicitly argue in favor of piercing the corporate veil with respect to BP USA.[7] For the reasons discussed below, however, the Court construes Plaintiffs' TAC and brief as alleging, in addition to the arguments discussed above, that

---

[7]    Plaintiffs do, however, explicitly argue that Zhang treats Beta Pharma as his alter ego. TAC at 11 ¶ 19. According to the Plaintiffs: "Defendant Zhang has exercised complete domination and control over the business and affairs of defendant BP, has operated BP without meaningful participation by any Board of Directors, has commingled BP's funds with his own funds, has exercised dominion and control over the funds raised by the stock sales alleged herein, and has treated BP as his alter ego such that the corporate form of BP should be disregarded." *Id.*

BP USA is an alter ego of the Original Defendants and therefore the Court should pierce the corporate veil for purposes of finding personal jurisdiction over BP USA.

"[I]t is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers.  Such control, after all, is no more than a normal consequence of controlling share ownership."  *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 232 (1991) (citation and internal quotation marks omitted).  Under federal or Connecticut law, however, a parent *can* be held liable for the actions of a subsidiary under certain circumstances.  Under federal law, for example, courts disregard corporate formalities when a corporation's owner exercises "total and exclusive domination of the corporation."  *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 139 (2d Cir. 2010) (*quoting Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1221 (2d Cir. 1987)).  Under Connecticut law, the veil may be pierced where "a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock."[8]  *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 231–32 (2010).  "Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice."  *Id.* at 233.

---

[8]  The standards for establishing alter ego status under federal and Connecticut law produce the same result in the present case.  The Court therefore need not decide which jurisdiction's law governs the analysis here.  *See S. New England Tel. Co.*, 624 F.3d at 139 (declining to decide whether federal or Connecticut law should govern the analysis).

Additionally, "in general, alter egos are treated as one entity for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (citation and internal quotation marks omitted).  It is also "well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *S. New England Tel. Co.*, 624 F.3d at 138 (citation omitted).

"Connecticut law is to the same effect.  Connecticut recognizes that its long-arm statute may extend personal jurisdiction based on a corporate alter ego theory." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 78 (D. Conn. 2012).  "[B]efore [a long arm] statute can be utilized as a basis for the exercise of jurisdiction over the [nonresident] foreign corporation, the corporate veil must be pierced so that acts of the domestic subsidiary can be imputed to the absent parent." *Hersey v. Lonrho, Inc.*, 73 Conn. App. 78, 86, 807 A.2d 1009 (2002) (citation and internal quotation marks omitted).

The Court must determine, then, whether Plaintiffs provided a specific averment of facts, which, if credited, would establish that BP USA is the Original Defendants' alter ego.  *See S. New England Tel. Co.*, 624 F.3d at 138–39 (applying both federal and Connecticut law).  Where no evidentiary hearing has been held, the plaintiff must make a prima facie showing, based on its own pleadings, affidavits and supporting materials, which justifies disregard of the corporate form.  *See id.* at 138.

In *Network Enterprises, Inc. v. APBA Offshore Productions and Michael D. Allweiss*, the Second Circuit applied these principles.  264 Fed. Appx. 36 (2d Cir. 2008). In that case, the plaintiff, a cable television network, sued a Florida corporate purchaser of network time (Offshore) and its principal (Allweiss), claiming breach of contract and

seeking to hold the principal personally liable.  After a bench trial, the district court

entered a judgment that Offshore breached its contract with plaintiff.  The district court

also entered a judgment whereby—piercing the corporate veil—Allweiss was personally

liable for plaintiff's damages.  The Second Circuit affirmed the judgments, including the

district court's veil piercing analysis.  According to the Second Circuit, veil piercing was

warranted based on the facts plaintiff alleged in its pleadings and proved at trial:

> There appears to be no serious dispute that Allweiss dominated
> Productions, as he (1) formed the company; (2) at all times served as
> its sole owner and member; (3) conducted all of its business,
> including maintaining the corporate bank account, signing the TBA,
> exercising the renewal option, and causing the company to cease
> negotiations under the ROR; and (4) operated the company from the
> same address where he maintained his law practice.  Furthermore,
> Allweiss removed money from Productions' account and left the
> company insolvent before he caused it to sign the TBA and exercise
> the renewal option under the ROR.  [I]nsolvency at the time of a
> transaction and siphoning off funds by the dominant shareholder are
> relevant to veil piercing consideration[.]   By the time of the
> transactions at issue here, Productions had the markings of a shell
> corporation dominated by Allweiss.

*Id.* at 40 (citations and internal quotation marks omitted).

While *Network Enterprises*, an unpublished summary order, does "not have precedential

effect," I am allowed to consider *Network Enterprises*, which reveals the considerations that the

Second Circuit evaluates when deciding whether to pierce corporate veils.[9]  Second Circuit Local

---

[9]  Second Circuit Rule 32.1 was promulgated in obedience to Federal Appellate Rule 32.1, which forbade a federal court (such as the circuit courts) from prohibiting or restricting the citation of federal judicial opinions, orders, or other written dispositions of cases.  *See* Federal Rule of Appellate Procedure 32.1.  The Second Circuit had indulged in such a disciplinary practice prior to 2007.  The Advisory Committee Notes say of the Federal Appellate Rule: "Under Rule 32.1(a), a court of appeals may not prohibit a party from citing an unpublished opinion of a federal court for its persuasive value or for any other reason."  *Id.* advisory committee's note.  The similarity of circumstances between those found in *Network Enterprises* and alleged in the case at bar with respect to corporate veil piercing give *Network Enterprises* some persuasive value when the Court

Rule 32.1.1(a); *see also* Second Circuit Internal Operating Procedure 32.1.1(b) ("Citation to a summary order filed on or after January 1, 2007[] is permitted.").  Many of the considerations are present here, as well.

For example, the TAC contains allegations that Defendant Zhang holds 100% of Beta Pharma's shares; and that Beta Pharma, in turn, owns 100% of BP USA's shares.  TAC at 29 ¶¶ 41–42.  The TAC also alleges that Defendant Zhang exercises "complete control and domination over the activities of Beta Pharma," as well as "over the activities of BPUSA and its property." *Id.* at 29 ¶ 42.  Plaintiffs further allege that "BPUSA shares are entirely controlled by Beta Pharma and Don Zhang, such that a creditor of Zhang and Beta Pharma, or a minority shareholder in either Beta Pharma or BPUSA would have essentially no ability to control the activities of BPUSA."  *Id.* at 32 ¶ 59.

In addition to Plaintiffs' allegations regarding the Original Defendants' control over BP USA, Plaintiffs also allege that BP USA is merely a "newly created shell corporation that was otherwise without assets."  *Id.* at 31 ¶ 53.  Plaintiffs allege that in late 2014, the Original Defendants were aware of three pending lawsuits against them in Connecticut courts; that they caused the formation of BP USA; and, that shortly thereafter, the Original Defendants caused Beta Pharma to transfer substantially all of its disclosed American assets to BP USA.  *Id.* at 29–30 ¶¶ 40, 45.  According to Plaintiffs, BP USA was "owned nominally by Beta Pharma and controlled by Don Zhang" and that the Original Defendants "retained possession or control of the assets transferred to BPUSA."  *Id.* at 30 ¶¶ 47–48.  In further support of their argument that BP USA is merely a shell company of the Original Defendants, Plaintiffs allege that the Original

comes to consider this case.

Defendants transferred assets from Beta Pharma to BP USA "without receiving a reasonably equivalent value in exchange for the transfer." *Id.* at 33 ¶ 63. Taken together, Plaintiffs have provided a specific averment of facts that, taken as true, would show that BP USA is Beta Pharma and Zhang's alter ego.

BP USA does not meaningfully dispute these allegations in its brief or reply brief, nor does it submit any evidence that contradicts Plaintiffs' allegations regarding the Original Defendants' degree of control over BP USA and whether BP USA is a mere instrumentality of the Original Defendants. BP USA also does not counter that BP USA's shares are allegedly owned by Beta Pharma and that Zhang holds 100% of Beta Pharma's shares. Lastly, BP USA does not present any evidence to rebut Plaintiffs' allegations that BP USA is merely a shell company for the Original Defendants, either in its briefs or Defendant Zhang's affidavit. *See id.*; Doc. 232-2 (Zhang Declaration). Therefore, the Court must assume the Plaintiffs' allegations to be true for purposes of this motion and conclude that BP USA is an alter ego of the Original Defendants.

This conclusion is consistent with a recent opinion, *Zhaoyin Wang v. Beta Pharma, Inc.*, by Judge Barbara Bellis, in Connecticut Superior Court. No. X06-CV-146044253, 2019 WL 3546473 (Conn. Super. Ct. July 5, 2019). Judge Bellis was required, as am I, to analyze whether BP USA is an alter ego of the Original Defendants.

The plaintiffs in the case at bar invested monies with Beta Pharma and Don Zhang. The plaintiff in *Wang*, Zhaoyin Wang, is a medicinal chemist who agreed to provide his services to Beta Pharma in exchange for a salary and equity compensation. *See id.* at *1. Wang alleges that he performed fully under the agreement, but did not receive the full compensation to which he

was entitled. *See id.* Originally, Wang sued Beta Pharma and Zhang in the Connecticut Superior

Court for their failure to perform under the agreement. Wang filed his action in October 2014.

*See id.* He now alleges that between December 2014 and April 2015, Beta Pharma and Zhang

(who owns 100 percent of Beta Pharma's stock and is its president and director) formed Beta

Pharma USA, transferred all of Beta Pharma's assets to Beta Pharma USA, then formed Beta

Pharma Hong Kong, and transferred assets from Beta Pharma USA to Beta Pharma Hong Kong.

*See id.* at *2. Wang filed an amended complaint which added Beta Pharma USA and Beta

Pharma Hong Kong as parties defendant. *See id.* Those two companies moved to dismiss the

amended complaint for lack of personal jurisdiction over them. *See id.* Judge Bellis's reported

decision decided that motion.

Judge Bellis noted at the outset that "although the parties' arguments focused mainly on

Connecticut's longarm statute and whether the purported actions of the defendants constituted

tortious conduct under it, the plaintiff's amended complaint alleges and the opposition

memorandum also argues that the court should disregard the defendants' corporate form and find

the defendants to be a unified entity with the original defendants." *Id.* at *3. According to Judge

Bellis:

> [P]laintiff has alleged that Beta Pharma USA and Beta Pharma Hong
> Kong are both wholly owned subsidiaries of Beta Pharma, which is
> itself wholly owned by Zhang. While this ownership structure alone
> would be insufficient to give rise to personal jurisdiction over the
> defendants, the plaintiff further alleges that each entity is under the
> complete control and domination of Zhang and Beta Pharma, and that
> Zhang has commingled his personal assets with those of Beta
> Pharma. Additionally, the plaintiff alleges that the defendants were
> created shortly after the present litigation began and that Beta
> Pharma's assets were shortly thereafter transferred to them, thereby

> rendering Beta Pharma and Zhang incapable of satisfying any
> ultimate legal judgment against them.

*Id.* at *4.

On the record before her, Judge Bellis concluded that corporate veil piercing rendered the recently formed Beta Pharma USA and Beta Pharma Hong Kong subject to personal jurisdiction in Connecticut.  The judge reasoned:

> In contrast to the plaintiff's arguments, the defendants have neither
> argued against nor submitted any relevant evidence to contradict the
> plaintiff's allegations regarding piercing the corporate veil.  Although
> Zhang's affidavit contains numerous assertions regarding the
> locations of the different entities involved in the present matter, it
> contains nothing to rebut the plaintiff's allegations concerning the
> original defendants' degree of control over the defendants or the
> commingling of Zhang's personal assets with those of Beta Pharma.
> Consequently, the court must assume the plaintiff's allegations to be
> true for purposes of this motion and find personal jurisdiction over
> the defendants as a result of this court's jurisdiction over the original
> defendants.  Therefore, the defendants' motion to dismiss is denied.

*Id*.

While I am not bound by Judge Bellis's opinion in *Wang*, my Connecticut colleague's reasoning is entirely persuasive, in a case which essentially mirrors the one before me: different plaintiffs, but on the defendants' side of the cases, same companies, same individual, same inter-company transfers of assets giving rise to the plausible (if not compelling) inference of intent to avoid paying potential adverse judgments.  I think that Judge Bellis's denial in *Wang* of the additional defendants' motion to dismiss the amended complaint against them is correct, and reach the same conclusion in the case at bar.

Moreover, this Court's conclusion that BP USA is the alter ego of the Original Defendants is also consistent with a prior ruling of the Court.  I have previously regarded Beta

26

Pharma as Zhang's alter ego. *See* Doc. 109. In denying the Original Defendants' earlier motion to quash subpoenas served on non-party banks, this Court concluded that the Plaintiffs' "allegations, if proven, would justify piercing BP's corporate veil to impose personal liability upon Zhang for any indebtedness BP bore to the Plaintiffs." *Id.* at 2. In connection with that motion, the Plaintiffs alleged that, "Defendant Zhang has exercised complete domination and control over the business and affairs of defendant BP, has operated BP without meaningful participation by any Board of Directors, has commingled BP's funds with his own funds, has exercised dominion and control over the funds raised by the stock sales alleged herein, and has treated BP as his alter ego." *Id.* In the instant motion—which involves piercing BP USA's corporate veil, rather than Beta Pharma's—the Plaintiffs alleged similar facts with respect to the Original Defendants' control over BP USA. Such allegations, similar to the previous motion, justify piercing BP USA's corporate veil for jurisdictional purposes.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it has personal jurisdiction over BP USA. Although that jurisdiction cannot be founded upon the Connecticut long arm statute, Plaintiffs have sufficiently alleged, and Defendants have not meaningfully denied, that BP USA is an alter ego of the Original Defendants. It follows that the Court has personal jurisdiction over BP USA by virtue of its established jurisdiction over the Original Defendants.

BP USA's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 232] is DENIED.

The foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
        September 23, 2019

                                            */s/ Charles S. Haight, Jr.*
                                            CHARLES S. HAIGHT, JR.
                                            Senior United States District Judge

28